**Case Nos.  22-2445 & 22-2446**

**UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT**

**PACE-O-MATIC, INC.**

*Plaintiff-Appellee,*

v.

**ECKERT SEAMANS CHERIN & MELLOTT, LLC, ET AL.,**

*Defendants,*

---

**GREENWOOD GAMING & ENTERTAINMENT, INC., D/B/A PARX
CASINO**

and

**HAWKE MCKEON & SNISCAK, LLP**

*Appellants.*

On Appeal from the United States District Court
for the Middle District of Pennsylvania
Case No. 1:20-cv-00292

---

**APPELLEE'S RESPONSE REGARDING APPELLATE JURISDICTION**

---

**HUSCH BLACKWELL LLP**

Michael Martinich-Sauter
Jeffrey B. Jensen
Michael Nolan
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Michael.martinich-
sauter@huschblackwell.com

**TABLE OF CONTENTS**

BACKGROUND………………………………………………………………...1

  I.  The Dispute Giving Rise to the Underlying Litigation………………...….1

  II. The Discovery Dispute Giving Rise to These Appeals…………………...3

ARGUMENT……………………………………………………………………7

  I.  The *Perlman* Doctrine Does Not Apply to Parx's Appeal……………….8

    A. The *Perlman* Doctrine does not apply, because the purportedly privileged materials are not in the possession of a disinterested third party…………….9

    B. The *Perlman* Doctrine does not apply, because Parx can contest the July 5 Order via the standard contempt route…………………………………...13

  II. The *Perlman* Doctrine Does Not Apply to HMS's Appeal…………….....15

  III. The Collateral-Order Doctrine Does Not Apply…………………………..…16

# TABLE OF AUTHORITIES

**Cases**                                                                                      **Page(s)**

*Burden–Meeks v. Welch,* 319 F.3d 897 (7th Cir. 2003) ......................................9, 11

*CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236 (3d Cir. 2021).....7

*Drummond Co. v. Terrance P. Collingsworth, Conrad & Sherer, LLP*, 816 F.3d
     1319 (11th Cir. 2016) ...................................................................................18

*Hernandez v. Tannien*, 604 F.3d 1095 (9th Cir. 2010).............................................18

*In re Air Crash at Belle Harbor, N.Y., on Nov. 12, 2001*, 490 F.3d 99 (2d Cir.
     2007) ............................................................................................................15

*In re Flat Glass Antitrust Litig.*, 288 F.3d 83 (3d Cir. 2002) ....................... 9, 10, 16

*In re Grand Jury (ABC Corp.)*, 705 F.3d 133 (3d Cir. 2012).......................... *passim*

*In re Grand Jury Proceedings*, 832 F.2d 554 (11th Cir. 1987)........................ 12, 13

*In re Grand Jury Subpoena*, 745 F.3d 681 (3d Cir. 2014) ......................................10

*In re Grand Jury Subpoenas*, 974 F.3d 842 (8th Cir. 2020)............................ 14, 16

*In re Naranjo*, 768 F.3d 332 (4th Cir. 2014) ........................................ 10, 12, 15, 16

*In re Sealed Case*, 141 F.3d 337 (D.C. Cir. 1998)............................................ 11, 16

*In re Vargas*, 723 F.2d 1461 (10th Cir. 1983) ................................................. 11, 16

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009) ........................... 17, 18

*Ott v. City of Milwaukee*, 682 F.3d 552 (7th Cir. 2012) ..........................................18

**Statutes**                                                                                   **Page(s)**

28 U.S.C. § 1291 .........................................................................................................7

**Other Authorities**                                                             **Page(s)**

C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE (2d ed.) .8

**Rules**                                                                         **Page(s)**

Pa. R. Professional Conduct 3.1...................................................................13

Pa. R. Professional Conduct 3.3...................................................................13

Pa. R. Professional Conduct 8.4...................................................................13

Pursuant to the Court's August 9, 2022 Order, Appellee Pace-O-Matic, Inc. ("POM") respectfully submits this statement regarding jurisdiction. For the reasons stated below, the Court lacks jurisdiction over the appeals filed by Greenwood Gaming & Entertainment, Inc. ("Parx") and Hawke McKeon & Sniscak, LLP ("HMS") and should dismiss these appeals.

## BACKGROUND

### I.    The Dispute Giving Rise to the Underlying Litigation.

These appeals arise from a case brought by POM against its former law firm, Eckert, Seamans, Cherin & Mellott, LLC ("Eckert").[1] POM designs and distributes electronic skill games in several states, including in Pennsylvania. In most jurisdictions—including Pennsylvania—whether POM can operate depends on whether its games are classified as "games of skill" or "games of chance." If classified as the former, POM can operate freely. If classified as the latter, POM's games would constitute gambling machines, and POM would effectively be foreclosed from participating in that market. Moreover, because most states apply substantially similar standards to distinguish between games of skill and games of chance, an adverse regulatory classification in one state could lead to POM's

---

[1] The underlying facts are set forth in more detail in POM's Second Amended Complaint. *See* Case No. 1:20-cv-292 (M.D. Pa.), ECF No. 243.

exclusion from other states as well.    For these reasons, proper regulatory classification is essential to POM's existence.

In late 2016, POM retained Eckert to represent it in one of these "bet the company" regulatory matters, helping the company defend the legality of its skill games in Virginia.    Unbeknownst to POM, from the very beginning of the representation, senior partners within Eckert were scheming to destroy POM on behalf of another client, Parx.    Eckert partners Mark Stewart and Kevin Skjoldal concocted a comprehensive plan to help Parx exclude POM from the Pennsylvania market.    Just a month into Eckert's representation of POM, these attorneys exchanged internal emails acknowledging the conflict.    Stewart noted that his work for Parx would be "adverse [to POM] in VA and PA."    He also indicated that his work for Parx would involve "adverse legislative action and potential litigation against [POM]."    In an internal email addressing the conflicts issue, Stewart emphasized "we will definitely be affirmatively going after" skill games like POM's. And Skjoldal predicted that their work for Parx would involve arguing that POM machines constituted unlawful "gambling device[s]."

Despite these known conflicts, Eckert never advised POM of them.    Eckert instead continued to represent both POM—in its efforts to ensure classification of its games as lawful games of skill—and Parx—in its efforts to cast POM's games as illegal gambling and drive POM from the market altogether.

2

In its work for Parx, Eckert implemented a sprawling, multi-faceted plan to destroy POM. On behalf of Parx, Eckert lawyers aggressively lobbied for legislation and executive action to ban POM from Pennsylvania. Eckert repeatedly pushed law enforcement officials to take regulatory and criminal actions against POM (Eckert's own client), POM games, and locations that hosted POM games. Eckert also orchestrated complex media initiatives intended to turn government officials and public opinion against POM.

POM only learned of Eckert's egregious conflict of interest in the fall of 2019, when Eckert—as counsel for Parx—filed dozens of lawsuits against venues hosting POM's games. In those lawsuits, Eckert—on behalf of Parx—claimed that POM games were illegal gambling machines and thus constituted public nuisances. POM promptly demanded that Eckert cease representing clients in matters directly adverse to POM. Eckert refused and, instead, dropped POM as a client. Shortly thereafter, POM filed this litigation.

## II.    The Discovery Dispute Giving Rise to These Appeals.

In addition to the public-nuisance litigation described above, Eckert also represented Parx in litigation directly adverse to POM in the Pennsylvania Commonwealth Court. In 2018, POM filed a lawsuit in the Commonwealth Court against the Pennsylvania State Police, seeking declaratory relief and an injunction

against the unlawful seizure of POM's games (the "Commonwealth Court Case").[2]
As filed, that litigation was solely between POM and the State.

In late 2019, at Eckert's urging, Parx interjected itself into the Commonwealth Court Case, first as an *amicus curiae* in support of the State, and later as an intervenor. Materials obtained in discovery suggest that Eckert believed it could argue for the illegality of POM's games better than the government could. However, by this point, POM had already raised Eckert's conflict, and Eckert knew that it could not publicly represent Parx in the Commonwealth Court without triggering additional scrutiny of its misconduct.

Thus, Eckert arranged for another law firm—HMS—to serve as Parx's publicly facing counsel of record in the Commonwealth Court Case. In reality, however, Eckert "quarterbacked" and "actively coordinate[d] Parx's litigation strategy," with certain key filings being "wholly authored" by Eckert. *See* Case No. 1:20-cv-292 (M.D. Pa.), ECF No. 166 (Magistrate's Memorandum), at 22, 24.[3]

While it was surreptitiously leading Parx's litigation directly against POM in the Commonwealth Court, Eckert responded to POM's federal lawsuit by denying that any conflict existed. In its Answer and Affirmative Defenses, Eckert asserted

---

[2] POM also filed a separate, but related, case in the Commonwealth Court against the Pennsylvania Department of Revenue.

[3] All ECF citations are to the docket in the district court proceedings below.

that "Eckert does not represent a party adverse to POM in litigation." ECF No. 9, at 6. Eckert further asserted that "Eckert is not counsel in any litigation where POM is an adverse party." *Id.* at 13. In another early filing, Eckert claimed that "Eckert is not representing parties in litigation adverse to POM." ECF No. 21, at 2. In the same filing, Eckert specifically denied that it had represented any party adverse to POM in the Commonwealth Court Case. *Id.* at 5 ("Eckert is not representing any party in those actions . . . .").[4]

As Magistrate Judge Saporito explained in detail, these representations were false. In fact, Eckert "advanced litigation positions directly adverse to the legal interests of its other client, POM." ECF No. 166, at 28. "[I]t actively and *clandestinely* managed and participated in the representation of Parx . . . against its other client, POM." *Id.* And "it did so with full knowledge that the conflict asserted by POM precluded its active and continuing representation of Parx." *Id.* at 29.

Eckert did not acknowledge these facts until POM served discovery seeking communications regarding the Commonwealth Court Case. In response to discovery on this topic, Eckert contended that the materials fell within the attorney-client privilege and the work-product doctrine. *See* ECF No. 44 (Eckert Motion for Protective Order). POM also served third-party subpoenas on Parx and HMS

---

[4] In addition, during a hearing before Magistrate Judge Saporito, "Eckert specifically took the position that it had not represented any party adverse to POM in the Commonwealth Court litigation." ECF No. 166, at 15.

seeking materials relating to the Commonwealth Court Case. Both Parx and HMS filed motions to quash the subpoenas, arguing that communications relating to the Commonwealth Court Case were privileged and protected work product. ECF Nos. 48; 52. POM also filed a motion to compel production of materials relating to the Commonwealth Court Case from Eckert, Parx, and HMS. *See* ECF Nos. 50; 51.

The four discovery motions were referred to Magistrate Judge Saporito. On November 16, 2021, Magistrate Judge Saporito overruled the privilege and work-product objections and compelled the production of 92 documents in Eckert's possession and 90 documents in HMS's possession. *See* ECF No. 166, at 33-35; *see also* ECF No. 167. Parx contended that none of the documents subject to the disclosure order were in its possession. Judge Saporito reasoned that the doctrine of judicial estoppel barred Eckert, Parx, and HMS from asserting privilege and work product as to these documents. ECF No. 166, at 15-32. Regarding Eckert, the Magistrate Judge emphasized the repeated misrepresentations described above.

With regard to Parx, the Magistrate Judge focused on "papers filed in the Commonwealth Court cases, in which Parx and its counsel there (HMS) have expressly represented that 'Eckert is not counsel in this case' and implicitly represented that Eckert played no substantial role in Parx's activities in those cases." *Id.* at 21. The Magistrate Judge found that those clear prior representations directly

6

contradicted Parx's newfound position that Eckert **did** represent Parx in the Commonwealth Court Case. *See id.* at 20-21.

With regard to HMS, the Magistrate Judge relied on both HMS's misrepresentations in the Commonwealth Court Case (noted above), as well as the fact that, "in papers filed in this case, HMS has mischaracterized its role in the Commonwealth Court litigation as having 'stepped in as conflict counsel,' and it has expressly represented that the purportedly privileged documents submitted for in camera review were merely 'preparatory to Eckert handing off the Parx representation to HMS.'" *Id.* at 21 (brackets omitted).

Eckert, Parx, and HMS all appealed the Magistrate Judge's decision to the District Judge. In a July 5, 2022 Order (the "July 5 Order"), the District Judge rejected the appeals and affirmed the Magistrate Judge's ruling. *See* ECF No. 222 (Memorandum); ECF No. 223 (Order). Parx and HMS filed these appeals seeking interlocutory review of the July 5 Order.

## ARGUMENT

"Generally, [the Court has] jurisdiction over only 'final decisions of the district courts of the United States.'" *CPR Mgmt., S.A. v. Devon Park Bioventures, L.P.*, 19 F.4th 236, 241 (3d Cir. 2021) (quoting 28 U.S.C. § 1291). Discovery orders compelling production of documents—like the July 5 Order at issue here— ordinarily do not constitute final, immediately appealable decisions. *In re Grand*

*Jury (ABC Corp.)*, 705 F.3d 133, 142 (3d Cir. 2012). This rule serves important interests. "Routine appeal from disputed discovery orders would disrupt the orderly progress of the litigation, swamp the courts of appeals, and substantially reduce the district court's ability to control the discovery process." 15B C. WRIGHT, A. MILLER, & E. COOPER, FEDERAL PRACTICE & PROCEDURE § 3914.23 (2d ed.).

A person "who seeks to present an objection to a discovery order immediately to a court of appeals must refuse compliance, be held in contempt, and then appeal the contempt order." *ABC Corp.*, 705 F.3d at 142-43 (quotation omitted). The requirement to go into contempt, "though at times a harsh one, was formulated to discourage appeals in all but the most serious cases." *Id.* at 143 (quotation omitted).

Here, neither Parx nor HMS has been held in contempt of the July 5 Order. Ordinarily, this would end the inquiry and dictate that the Court lacks jurisdiction over their appeals. However, Parx and HMS apparently rely on two narrow exceptions to the general rule: the *Perlman* Doctrine and the collateral-order doctrine. Because neither of these doctrines applies, the Court lacks jurisdiction.

**I.    The *Perlman* Doctrine Does Not Apply to Parx's Appeal.**

"Under [the] *Perlman* [Doctrine], a privilege holder may immediately appeal an adverse disclosure order when the traditional contempt route is unavailable to it because the privileged information is controlled by a disinterested third party who is likely to disclose that information rather than be held in contempt for the sake of an

8

immediate appeal." *ABC Corp.*, 705 F.3d at 138.  The *Perlman* Doctrine does not apply to Parx's appeal for two independent reasons.  First, the purportedly privileged materials at issue are not "controlled by a disinterested third party."  Second, under this Court's holding in *ABC Corp.*, Parx retains the ability to contest the July 5 Order via the standard contempt route.

> **A.**    **The *Perlman* Doctrine does not apply, because the purportedly privileged materials are not in the possession of a disinterested third party.**

This Court has explained that the *Perlman* Doctrine applies if "the privileged information is controlled by a disinterested third party who is likely to disclose that information rather than be held in contempt for the sake of an immediate appeal." *ABC Corp.*, 705 F.3d at 138.  "*Perlman* reflected concern that where the subject of the discovery order (characteristically the custodian of documents) and the holder of a privilege are different, the custodian might yield up the documents rather than face the hazards of contempt, and would thereby destroy the privilege." *In re Flat Glass Antitrust Litig.*, 288 F.3d 83, 90 n.9 (3d Cir. 2002) (quotation omitted).  "The idea behind *Perlman* is that someone who is neither a party to the suit nor a person aggrieved by the disclosure cannot be expected to put his own neck on the chopping block, standing in contempt of court just to help the privilege holder obtain appellate review." *Burden–Meeks v. Welch,* 319 F.3d 897, 899–900 (7th Cir. 2003).

9

But this rationale does not apply where the third party holding materials is not "disinterested," that is, where the third party has its own incentive to seek immediate review of a discovery order. "[W]here the petitioner asserts its own interests in the [materials], it has the requisite incentives to risk contempt." *Flat Glass Antitrust Litig.*, 288 F.3d at 90 n.9 (quotation omitted). For this reason, the *Perlman* Doctrine does not give rise to appellate jurisdiction where the third party has its own interest in opposing production of the purportedly privileged materials. Here, Eckert and HMS both have strong interests in opposing production of the materials at issue and thus are not "disinterested" within the meaning of *Perlman*.

**First**, both Eckert and HMS have contended that the documents at issue fall within the scope of the work-product doctrine and thus should not be produced. *See, e.g.*, ECF Nos. 192, at 2-3; 194, at 11. The work-product protection belongs to both the client **and** the lawyer. *See In re Grand Jury Subpoena*, 745 F.3d 681, 693 (3d Cir. 2014). Where a third party holding purportedly privileged materials "asserts its own interests in the work product, it has the requisite incentives to risk contempt." *Flat Glass Antitrust Litig.*, 288 F.3d at 90 n.9 (quotation and ellipsis omitted). Thus, where the custodian asserts its own work-product protection over the documents at issue, *Perlman* does not apply. *See id.*; *In re Naranjo*, 768 F.3d 332, 345 (4th Cir. 2014) (holding that *Perlman* did not apply because third party "argu[ed] that the subpoenaed documents are protected work product"); *In re Sealed Case*, 141 F.3d

10

337, 340 (D.C. Cir. 1998) (holding that *Perlman* did not apply where third party asserted work product as to documents at issue); *In re Vargas*, 723 F.2d 1461, 1466 (10th Cir. 1983) (same). Because both Eckert and HMS have asserted their own work-product protection over the documents at issue, the *Perlman* doctrine does not apply. *See id.*

**Second**, Eckert and HMS both have their own financial and litigation interests in avoiding disclosure and obtaining appellate review of the July 5 Order. Eckert is the defendant in the underlying litigation. *See Burden-Meeks*, 319 F.3d at 899 (explaining that *Perlman* applies where a discovery order is entered against "someone who is **neither a party to the suit** nor a person aggrieved by the disclosure" (emphasis added)). As the District Judge and Magistrate Judge have described in detail, the documents at issue are devastating to Eckert's litigation position. The documents make clear that Eckert litigated directly against its own client, POM, seeking to have POM's core business activity declared illegal under Pennsylvania law. ECF No. 166, at 28-29. Moreover, Eckert "did so with full knowledge that the conflict asserted by POM precluded its active and continuing representation of Parx in the Commonwealth Court litigation." *Id.*, at 29. To avoid detection of this conflict, Eckert arranged for HMS to serve as Parx's only counsel of record, with Eckert "quarterback[ing]" the litigation behind the scenes. *Id.* at 22. For these reasons, Eckert has strong litigation and financial interests in preventing POM from

11

accessing these materials and presenting them at trial, interests that are wholly separate from Parx's interest in protecting its privilege. And *Perlman* does not apply where the third party holding the documents has "a personal interest in nondisclosure of the material." *In re Grand Jury Proceedings*, 832 F.2d 554, 558 (11th Cir. 1987).

In a similar vein, courts have held that *Perlman* does not apply where the third-party custodian (including attorneys) is implicated in wrongdoing reflected in the documents at issue. *See, e.g.*, *Naranjo*, 768 F.3d at 345-46 ("The [third-party custodians] are not detached professionals who rendered disinterested services to the [privilege holders]. . . . In fact, given that the lawyers are alleged to have committed greater misdeeds than any attributed to the clients, the [custodians] might have a more substantial interest in keeping the documents confidential than do the [privilege holders]." (footnotes omitted)). Here, the documents at issue clearly implicate Eckert in serious misconduct, and thus Eckert has its own strong interest in avoiding disclosure of those documents.

Eckert has a further self-interest in seeking review of the July 5 Order, one that it shares with HMS. The District Judge and the Magistrate Judge both found that Eckert and HMS made serious misrepresentations to the courts in a way that undermines the integrity of the judicial process. *See generally* ECF Nos. 166; 222. If left uncontested, these judicial findings could create substantial risk of disciplinary action under the Pennsylvania Rules of Professional Conduct. *See, e.g.*, Pa. R.

Professional Conduct 3.1; 3.3(a); 8.4(c), (d).  As lawyers and law firms, the custodians of the documents at issue have a strong professional interest in challenging findings suggesting violations of the Rules of Professional Conduct. Because the custodians of the materials at issue have strong "personal interest in nondisclosure of the material," the *Perlman* Doctrine does not apply.  *Grand Jury Proceedings*, 832 F.2d at 558.

Eckert's and HMS's strong self-interest in preventing production of the documents at issue is also evident from the great lengths they have each taken to seek review of the July 5 Order.  Both Eckert and HMS filed motions to reconsider or, in the alternative, for certification under 28 U.S.C. § 1292(b).  *See* ECF Nos. 230 & 234.  HMS also filed a direct appeal in this matter.  And both Eckert and HMS have petitioned this Court under Federal Rule of Appellate Procedure 5 for interlocutory appeal.  Eckert and HMS are not the sorts of disinterested third parties who will produce privileged materials without a fight.  Instead, they have fought tooth and nail to avoid producing Parx's purportedly privileged materials.

## B.    The *Perlman* Doctrine does not apply, because Parx can contest the July 5 Order via the standard contempt route.

There is a second, independent reason why the *Perlman* Doctrine does not apply.  The *Perlman* doctrine enables a privilege holder to seek immediate appeal "when the traditional contempt route is unavailable to it."  *ABC Corp.*, 705 F.3d at 138.  But there is an essential corollary: where the privilege holder ***can*** obtain

13

appellate review by going into contempt, *Perlman* does not apply. *Id.* at 146-47. "The *sine qua non* of the *Perlman* exception is the inability of the privilege holder to obtain appellate review at the juncture when documents otherwise would be produced." *In re Grand Jury Subpoenas*, 974 F.3d 842, 844 (8th Cir. 2020).

In *ABC Corp.*, this Court faced a situation similar to the facts presented here. In an order to which both the privilege holder (ABC Corp.) and its outside counsel were parties, the district court compelled the production of certain purportedly privileged documents. 705 F.3d at 147. However, the documents at issue were in the possession of the privilege holder's outside counsel, not in the possession of ABC Corp. 705 F.3d at 147; *see also id.* at 163 (Vanaskie, J., concurring in part and dissenting in part) (explaining that "[outside counsel], rather than ABC, has physical custody of the documents"). As the Court explained, "[a]lthough the documents are in the physical possession of [outside counsel], they are ABC Corp.'s documents and are under its legal control." *Id.* at 147. "ABC Corp. is responsible for deciding whether to produce or withhold the documents, and could properly be held in contempt for directing the law firms to withhold them." *Id.* "If ABC Corp. wants immediate appellate review, it can take possession of the documents, defy the disclosure Order, and appeal any resulting contempt sanctions." *Id.* at 138. Because this contempt route remained open to ABC Corp., jurisdiction did not exist under the *Perlman* Doctrine. *Id.* at 147.

14

Similarly, here, the July 5 Order granted a motion to compel that was directed at Parx, as well as at Eckert and HMS. *See* ECF No. 167 (Magistrate's Order) (granting motion to compel), at 1; ECF No. 223, at 1 (affirming Magistrate's Order); *see also* ECF No. 50 (motion to compel). And while the Order specifies the production of certain documents, it does not specify **by whom** the documents at issue must be produced. ECF No. 167, at 2-7; ECF No. 223, at 1. As in *ABC Corp.*, to the extent that Parx claims it does not possess the documents at issue, "it can take possession of the documents, defy the disclosure Order, and appeal any resulting contempt sanctions." *ABC Corp.*, 705 F.3d at 138. Because the traditional contempt route remains available to Parx, the *Perlman* Doctrine does not apply. *ABC Corp.*, 705 F.3d at 138, 146-47.

## II.    The *Perlman* Doctrine Does Not Apply to HMS's Appeal.

The *Perlman* Doctrine also does not apply to HMS's appeal. As an initial matter, *Perlman* clearly does not permit HMS to raise arguments regarding the attorney-client privilege, which belongs to Parx rather than to HMS. *Perlman* permits an appeal only by ***the privilege holder***, not by the subpoenaed third party holding another person's privileged documents. *See, e.g.*, *Naranjo*, 768 F.3d at 344 ("*Perlman* does not permit an appeal by the subpoena-target."); *In re Air Crash at Belle Harbor, N.Y., on Nov. 12, 2001*, 490 F.3d 99, 106 (2d Cir. 2007) ("[T]he *Perlman* exception is relevant only to appeals brought by the holder of a

15

privilege . . . .").    At most, the *Perlman* Doctrine theoretically could apply to documents held Eckert, over which HMS claims its own work-product protection.

However, even to the extent that HMS purports to defend its own work-product protection, *Perlman* does not apply.  ***First***, HMS can contest the July 5 Order via the standard contempt route.  The July 5 Order ordered HMS to produce materials at issue in these appeals, pursuant to a third-party subpoena directed at HMS.  *See* ECF No. 167, at 4-7; ECF No. 223, at 1.  HMS could disobey this order, go into contempt, and thereby obtain appellate review.  Because the traditional contempt route remains available to HMS, the *Perlman* Doctrine does not apply.  *ABC Corp.*, 705 F.3d at 146-47; *see also Grand Jury Subpoenas*, 974 F.3d at 844.

***Second***, the materials at issue here are not controlled by a disinterested third party.  For the reasons described in Part I.A above, Eckert is not a disinterested third party within the meaning of the *Perlman*.  Thus, *Perlman* does not apply.  *See, e.g.*, *Flat Glass Antitrust Litig.*, 288 F.3d at 90 n.9; *Naranjo*, 768 F.3d at 345; *Sealed Case*, 141 F.3d at 340; *Vargas*, 723 F.3d at 1466.  Because the *Perlman* Doctrine does not apply, the Court does not have jurisdiction over HMS's appeal.

### III.    The Collateral-Order Doctrine Does Not Apply.

POM understands that Parx and HMS may also rely on the collateral-order doctrine.  "[T]he *Perlman* doctrine and the collateral order doctrine recognize separate exceptions to the general rule of finality under § 1291."  *ABC Corp.*, 705

F.3d at 146. The collateral-order doctrine also does not support appellate jurisdiction here. In *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100 (2009), the Supreme Court considered "whether disclosure orders adverse to the attorney-client privilege qualify for immediate appeal under the collateral order doctrine." *Id.* at 103. The Supreme Court unanimously held "that they do not." *Id.*[5]

The Supreme Court focused on the fact that a privilege holder seeking review of an adverse discovery ruling has ample alternate options. *Id.* at 109-112. In addition to post-judgment appeals, a privilege holder can seek appellate review by going into contempt, by seeking mandamus relief, or by pursuing an appeal under 28 U.S.C. § 1292(b). *Id.* These alternate options enable interlocutory appellate review where the legal system deems it necessary, without expanding the collateral-order doctrine, whose scope the Supreme Court intends to keep "narrow." *Id.* at 113. "Moreover, protective orders are available to limit the spillover effects of disclosing sensitive information." *Id.* at 112. For these reasons, the Court "conclude[d] that the collateral order doctrine does not extend to disclosure orders adverse to the attorney-client privilege." *Id.* at 114. While the holding of *Mohawk* applied only to the attorney-client privilege, courts have recognized that its reasoning applies with

---

[5] *Mohawk* does not impact the applicability of the *Perlman* Doctrine here. *Perlman* and the collateral-order doctrine constitute "separate exceptions to the general rule of finality," and *Mohawk* addressed only the collateral-order doctrine. *See ABC Corp.*, 705 F.3d at 146.

17

equal force to the work-product doctrine. *See, e.g.*, *Drummond Co. v. Terrance P. Collingsworth, Conrad & Sherer, LLP*, 816 F.3d 1319, 1324-25 (11th Cir. 2016); *Hernandez v. Tannien*, 604 F.3d 1095, 1098-99 (9th Cir. 2010). Thus, the collateral-order doctrine does not apply to Parx's and HMS's appeals.

The fact that Parx and HMS are third parties to the underlying litigation does not affect this analysis. *Ott v. City of Milwaukee*, 682 F.3d 552, 555 (7th Cir. 2012) (finding it "immaterial . . . that this case involves a discovery order directed at nonparties whereas *Mohawk Industries* involved parties to the case"). Both Parx and HMS have actively participated in the underlying litigation to oppose production of the materials at issue in these appeals. Like the parties discussed in *Mohawk*, non-parties can (in appropriate circumstances) obtain appellate review via several avenues: the contempt route; 28 U.S.C. § 1292(b); and a mandamus petition. *Compare Mohawk*, 558 U.S. at 109-112. Unlike parties, non-parties can also pursue appellate review under the *Perlman* Doctrine, where applicable. And just as in *Mohawk*, protective orders can mitigate any harms associated with delayed appellate review. *Id.* at 112. The Supreme Court's reasoning in *Mohawk* applies with equal force to third parties like Parx and HMS. For that reason, neither Parx nor HMS can rely on the collateral-order doctrine here.

POM respectfully requests that the Court dismiss Parx's and HMS's appeals for lack of jurisdiction.

Respectfully submitted,

**HUSCH BLACKWELL LLP**

*/s/ Michael Martinich-Sauter*
Michael Martinich-Sauter
Jeffrey B. Jensen
Michael Nolan
190 Carondelet Plaza, Suite 600
St. Louis, Missouri 63105
314-345-6464 (Telephone)
314-480-1505 (Facsimile)
Michael.martinich-sauter@huschblackwell.com

## CERTIFICATE OF SERVICE

I certify that on August 25, 2022, I caused the foregoing to be served on all counsel of record via the Court's e-filing system.

*/s/ Michael Martinich-Sauter*