# In the United States Court of Appeals for the Third Circuit

---

Docket Nos. 22-2445, 22-2446, 22-2902, 22-2958 & 22-2959

---

## PACE-O-MATIC, INC.

*vs.*

## ECKERT, SEAMANS CHERIN & MELLOTT, LLC; MARK S. STEWART; KEVIN M. SKJOLDAL

## APPEAL OF GREENWOOD GAMING AND ENTERTAINMENT, INC., d/b/a PARX CASINO

---

*On appeal from an opinion and order of the United States District Court for the Middle District of Pennsylvania dated July 5, 2022, certification of appeal granted August 11, 2022, at Docket No. 20-292, direct appeal filed August 4, 2022, at Docket No. 22-2446, and permission to appeal granted October 6, 2022, at Docket No. 22-2959*

---

## BRIEF OF GREENWOOD GAMING & ENTERTAINMENT, INC., d/b/a PARX CASINO

---

## GA BIBIKOS LLC

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc.
d/b/a Parx Casino*

February 16, 2023

**TABLE OF CONTENTS**

I.   INTRODUCTION ........................................................................... 1

II.  DISCLOSURE STATEMENT ........................................................ 6

III. RELATED CASES ......................................................................... 6

IV.  JURISDICTIONAL STATEMENT ............................................... 6

    A.   The Court's order granting permission to appeal renders the jurisdictional question moot. .......................................... 7

    B.   The Court has jurisdiction pursuant to the Perlman doctrine and collateral-order doctrine. ............................... 9

    C.   Mohawk Industries does not preclude an appeal from an adverse privilege ruling affecting a non-party. .................... 11

V.   STATEMENT OF ISSUES ON APPEAL ..................................... 13

VI.  STATEMENT OF THE CASE ...................................................... 14

    A.   Background ......................................................................... 14

    B.   Procedural History ............................................................. 19

VII. SUMMARY OF THE ARGUMENT ............................................. 21

VIII. ARGUMENT ............................................................................... 22

    A.   Judicial estoppel is not an exception to the attorney-client privilege. .................................................................... 23

        1.   The attorney-client privilege applies to the documents and protects them from disclosure. ........... 23

        2.   There are only a few recognized exceptions to the attorney-client privilege under Pennsylvania law, and none of them apply here. ................................... 26

        3.   The district court erred when it applied judicial estoppel as an exception to the privilege. .................... 28

B.   Even if judicial estoppel is an exception to the attorney-client privilege, it does not apply to Parx. ...........................32

  1.   Parx never made any inconsistent statements. ..........35

  2.   Parx did not engage in bad faith. ..............................39

C.   The district court erred in its application of judicial estoppel to Parx to require the disclosure of its privileged documents. ........................................................41

  1.   At the outset, the district court never ruled on or adopted any inconsistent statements, rendering judicial estoppel inapplicable.....................................41

  2.   The district court erred by imputing Eckert's statements or conduct to Parx. ...................................44

     a.   Parx is not bound by Eckert's allegedly inconsistent statements.....................................45

     b.   Parx is not bound by Eckert's alleged "bad faith." .................................................................46

     c.   Eckert reconciled any inconsistency in its statements..........................................................48

  3.   The district court's judicial estoppel "remedy" unjustifiably punishes Parx by compelling the disclosure of its privileged documents. ........................51

IX.  CONCLUSION.........................................................................58

ii

# TABLE OF AUTHORITIES

**Cases**

*BouSamra v. Excela Health*, 210 A.3d 967 (Pa. 2019) ...........................26

*Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008).................................................................................*passim*

*Coast Auto. Grp., Ltd. v. VW Credit, Inc.*, 34 F. App'x 818, 825, 2002 WL 121932, at *8 (3d Cir. 2002) .............................32, 33, 35

*Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. 2018).................................................................................38

*Commonwealth v. Stenhach*, 514 A.2d 114 (Pa. Super. 1986)...............27

*G-I Holdings, Inc. v. Reliance Ins.*, 586 F.3d 247, 261 (3d Cir. 2009).................................................................................32, 35

*Gillard v. AIG Ins. Co.*, 15 A.3d 44, 58 (Pa. 2011)..................................28

*Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) ..............45

*In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (E.D. Pa. Bankr. 2013) ...............................................................37

*In re Est. of McAleer*, 248 A.3d 416 (Pa. 2021) .....................................28

*In re Grand Jury Subpoena*, 745 F.3d 681 (3d Cir. 2014) ................10, 26

*In re Grand Jury*, 705 F.3d 133 (3d Cir.2012)...................................9, 12

*In re Investigating Grand Jury of Philadelphia Cnty.*, 593 A.2d 402, 407 (Pa. 1991) ...........................................................26

*In re Kasbee*, 466 B.R. 719, 723 (Bankr. W.D. Pa. 2010)......................50

*In re Prosser*, 534 F. App'x 126, 130, 2013 WL 3943548 (3d Cir. 2013) ...............................................................................43

*In re Search of Elec. Com.*, 802 F.3d 516, 529 (3d Cir. 2015).................10

*In re Teleglobe Commc'ns Corp.*, 493 F.3d 345 (3d Cir. 2007)........*passim*

*Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681 (W.D. Pa. 2011) ....................................................................................47

*Krystal Cadillac*, 337 F.3d at 324.........................................................35

*Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314 (3d Cir. 2003)....................................33

*Maleski v. Corp. Life Ins. Co.*, 646 A.2d 1, 4 (Pa. Cmwlth. 1994)......................................................................................26

*Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100, 110-11 (2009) ...................................................................................11

*Montrose Medical Group v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001)...............................................................................*passim*

*Morris v. Rumsfeld*, 420 F.3d 287, 289 (3d Cir. 2005)........................... 7

*Nationwide Mut. Ins. Co. v. Fleming*, 992 A.2d 65, 68 (Pa. 2010)......................................................................................29

*Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007) ...............................................................................24

*New Hampshire v. Maine,* 532 U.S. 742, 751 (2001) .......................41, 44

*Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998) ...................................................................... 8

*Perlman v. United States*, 247 U.S. 7 (1918) ......................................... 6

*Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154 (2010) ..........................42

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996)................................................33, 39

*Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978)........................28

*Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D. Pa. 2014) ....................................................................24

iv

*Smith v. BIC Corp.*, 869 F.2d 194 (3d Cir. 1989)....................................11

*Tarpey v. United States*, No. CV-17-94-B-BMM, 2020 WL 4464319, at \*2 (D. Mont. Aug. 4, 2020) ...........................................50

*United States v. Doe*, 429 F.3d 450, 452 (3d Cir. 2005) .........................22

*Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981) ........................... 3

## Statutes

28 U.S.C. § 1291...................................................................................... 9

28 U.S.C. § 1292(b). ........................................................................*passim*

42 Pa.C.S. § 5916 ....................................................................................28

42 Pa.C.S. § 5928 ....................................................................................28

## Other Authorities

1 Paul R. Rice, *Attorney Client Privilege in the United States* § 7:9 (2d ed. 1999)                                            24

## Rules

F.R.E. 501 ...............................................................................................23

Fed. R. Civ. Pro 26(b)(1)..........................................................................54

Fed. R. Civ. Pro. 45 .................................................................................54

## Constitutional Provisions

PA. CONST. art. V, § 10(c) ........................................................................28

Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx") requests that the Court reverse an order of the district court compelling two of Parx's law firms to disclose Parx's privileged documents in the underlying litigation, in which Parx is not a party, based solely on the doctrine of "judicial estoppel."

## I.   INTRODUCTION

This is a straightforward appeal that the Court should resolve in Parx's favor. The case involves the doctrine of judicial estoppel.  The district court invoked that doctrine to compel the disclosure of a non-party's privileged documents based on allegedly inconsistent statements that one of its law firms made as a party-defendant in the underlying matter. The district court erred by invoking judicial estoppel as an exception to the attorney-client privilege.  Even if judicial estoppel is an exception to the privilege, the doctrine does not apply to Parx in the scenario presented here, and the district court abused its discretion by concluding otherwise.

As described in more detail below, this is a dispute between Pace-O-Matic, Inc. ("POM") as plaintiff and Eckert, Seamans, Cherin & Mellot, LLC ("Eckert") as defendant.  Parx is not a party.  POM alleges that

Eckert breached fiduciary duties by representing Parx and POM simultaneously in different states in matters in which those clients have adverse interests. During discovery, POM subpoenaed Parx and Hawke McKeon & Sniscak ("HMS") (another law firm that had represented Parx) and served discovery requests on Eckert demanding production of Parx's privileged communications with Eckert and HMS.

The privileged nature of the Parx's documents is not in dispute. Parx, Eckert, and HMS invoked the attorney-client privilege and work-product immunity. Although a magistrate judge hearing the discovery dispute fully acknowledged that the documents contain privileged communications, he *sua sponte* invoked the doctrine of "judicial estoppel" to order Eckert and HMS to disclose Parx's privileged documents in their custody based on Eckert's alleged inconsistent statements in this litigation regarding its representation of Parx in matters adverse to POM. To that point, no one mentioned the doctrine of judicial estoppel.

After an appeal on this issue, the district court reversed and remanded to afford the parties and non-parties the opportunity to address judicial estoppel. After additional and extensive briefing demonstrating that judicial estoppel is a non-issue in all material

2

respects, the magistrate judge *again* invoked judicial estoppel and ordered that the privileged documents must be disclosed.    After yet another appeal, the district court adopted the magistrate judge's analysis in the opinion and order subject to this appeal.  The district court denied reconsideration but certified the issue for appeal.

The district court's application of judicial estoppel in this case to circumvent Parx's attorney-client privilege is unprecedented and the sanction is unduly severe.  The attorney-client privilege is the "oldest of the privileges for confidential communications known to the common law." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981). Under Pennsylvania privilege law, which applies in this diversity case, there are only a few exceptions to the attorney-client privilege and judicial estoppel is not one of them.

The analyses of both the magistrate judge and the district court should have ended the moment they concluded the documents at issue involved Parx's confidential communications with its law firms and found neither waiver nor any recognized exception to the privilege under Pennsylvania law. However, the magistrate judge and the district court seized on allegedly inconsistent statements made by Eckert – *long before*

3

*Parx ever appeared in this case to quash a subpoena and assert its privilege* – as a basis to punish *Parx* by ordering the disclosure of *its* documents despite their privileged nature and *without any evidence that Parx itself made inconsistent statements in bad faith.*

As described below, the district court erred. Of all the equitable doctrines in the jurisprudence, judicial estoppel is reserved for only the most egregious of cases involving clear attempts to defraud the court or harm its integrity in bad faith. The reason that the courts apply judicial estoppel only when absolutely necessary is that the penalty for playing "fast and loose" with the courts can be severe.

If ever there were a case in which judicial estoppel should *not* apply, this is it. As a threshold matter, judicial estoppel simply is not an exception to the attorney-client privilege that justifies the disclosure of otherwise privileged documents. Absent a waiver or an exception recognized under Pennsylvania law, neither of which are at issue here, the privilege analysis ends, and the Court should reverse without further analysis. The district court erred as a matter of law by applying judicial estoppel at all.

Even if there is some question about whether judicial estoppel can be an exception to the attorney-client privilege, the Court should ask itself one overarching question as it reviews its application to the circumstances in this case: Did *Parx* as the non-party holder of the privilege engage in the type of egregious behavior that justifies the application of judicial estoppel to order the disclosure of its privileged documents? The answer is no.

Parx only appeared in this case to quash a subpoena and to assert its privilege to protect documents in the possession of its law firms from disclosure. That is it. Parx never made any inconsistent statements to the court nor engaged in any bad faith. Parx is not bound by any alleged inconsistent statements or the perceived "bad faith" of one of its law firms that is a defendant in the underlying action. But for the unprecedented approach to the privilege analysis in this case, the documents at issue surely would be protected from disclosure, as they should be, and Parx would not be compelled to ask this Court for relief.

Accordingly, the Court should reverse, vacate the district court's order, and remand with instructions to grant the motions filed by Parx,

Eckert, and HMS to quash the subpoena and/or for a protective order to prevent the disclosure of Parx's privileged documents.

## II.   DISCLOSURE STATEMENT

Pursuant to Fed. R. App. Pro. 26.1 and LAR 26.1, Parx states that no publicly held corporation owns 10% or more of the company's stock.

## III.   RELATED CASES

The Court consolidated five appeals at Docket Nos. 22-2445, 22-2446, 22-2902, 22-2958 & 22-2959.  All the separate appeals collectively involve the same parties and non-parties and the same issues.

## IV.   JURISDICTIONAL STATEMENT

At the outset, the Court requested a jurisdictional analysis from the appellants.

The order on appeal involves an adverse privilege ruling affecting Parx as a non-party.  As such, Parx appealed as of right from the district court's opinion and order on August 4, 2022, pursuant to *Perlman v. United States*, 247 U.S. 7 (1918), because Parx is a non-party privilege holder subject to an adverse privilege ruling of the district court compelling third parties to disclose Parx's privileged documents. *See* JA001. That appeal is docketed at No. 22-2446. Parx also filed a precautionary petition for permission to appeal, which this Court granted

at Docket No. 22-2959, and consolidated with all other direct and permissive appeals. *See* JA063.

All the consolidated appeals involve the same order and the same question for this Court's review. The threshold question from the Court is whether it has jurisdiction. The answer is yes.

### A. The Court's order granting permission to appeal renders the jurisdictional question moot.

The Court granted permission to appeal the order subject to review. Section 1292(b) provides that this Court may hear an appeal upon certification from the district court that the order in question involves a controlling question of law over which there is substantial grounds for disagreement such that an immediate appeal of the interlocutory order will materially advance the outcome of the underlying litigation. *See* 28 U.S.C. § 1292(b). The Court may in its discretion permit an appeal if an application is made within ten days after the entry of such an order. *Id.*

Once an appellate court grants a petition for permission to appeal, the court has appellate jurisdiction. *Morris v. Rumsfeld*, 420 F.3d 287, 289 (3d Cir. 2005) ("In March 2004 this court granted permission for the interlocutory appeal. We have jurisdiction under 28 U.S.C. § 1292(b)."); *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir.

1998) ("Nonetheless, the district court did grant permission for an interlocutory appeal. Therefore, we have jurisdiction to hear this appeal pursuant to 28 U.S.C. § 1292(b).").

Here, Parx filed a motion with the district court for permission to appeal the adverse privilege ruling pursuant to 28 U.S.C. § 1292(b) as a precautionary measure to assure this Court's review of the novel application of judicial estoppel to circumvent Parx's privilege. *See* JA063. The district court agreed that the question of whether judicial estoppel applies to compel the disclosure of a non-party's privileged documents in the possession of its law firms is unprecedented and meets the standards for interlocutory review under 28 U.S.C. § 1292(b). *See* JA102.

In turn, Parx timely submitted a petition for permission to appeal on August 19, 2022, following the district court's certification order, explaining that the district court's decision to apply judicial estoppel in this manner is a controlling question of law over which there is substantial grounds for disagreement such that an immediate appeal of the interlocutory order will materially advance the outcome of the underlying litigation between the parties. This Court agreed and granted the petition, thereby exercising jurisdiction pursuant to 28 U.S.C. §

8

1292(b). As noted, the question involved in the appeal that this Court granted under 28 U.S.C. § 1292(b) is the same question involved in all consolidated direct appeals.

Accordingly, the Court has jurisdiction as a result of granting Parx's petition to appeal by permission.

### B. The Court has jurisdiction pursuant to the Perlman doctrine and collateral-order doctrine.

To the extent the Court disagrees that the order granting permission to appeal did not confer jurisdiction, the Court has jurisdiction over Parx's direct appeal from the district court's order pursuant to *Perlman v. United States*, 247 U.S. 7 (1918). This Court explained the *Perlman* doctrine as follows:

> Ordinarily, this Court has jurisdiction only over final decisions of district courts. 28 U.S.C. § 1291. When a district court orders a witness to testify or produce documents, the order is generally not immediately appealable; rather, the witness who wishes to object "must refuse compliance, be held in contempt, and then appeal the contempt order." *In re Grand Jury*, 705 F.3d 133, 143 (3d Cir.2012) (internal quotation marks and citation omitted). *However, under Perlman v. United States, 247 U.S. 7, 38 S.Ct. 417, 62 L.Ed. 950 (1918), a privilege holder may immediately appeal an adverse disclosure order when the privileged information is controlled by a "disinterested third party who is likely to disclose that information rather than be held in contempt for the sake of an immediate appeal." In re Grand Jury*, 705 F.3d at 138. Attorney is a disinterested third party controlling

9

allegedly privileged information. As such, this Court has jurisdiction to hear the appeal brought by Intervenors, the privilege holders.

*In re Grand Jury Subpoena*, 745 F.3d 681, 686–87 (3d Cir. 2014) (emphasis added). *See also In re Search of Elec. Com.*, 802 F.3d 516, 529 (3d Cir. 2015) (applying *Perlman* to exercise jurisdiction over order compelling disclosure of attorney-client and work-product privileged communications in possession of third parties).

Here, Parx is not a party to the underlying litigation. However, Parx is the privilege holder. The district court's order compels the production of Parx's privileged documents in the possession of a party to the litigation (Eckert) and another third-party law firm (HMS) based on judicial estoppel. Parx has no recourse other than an appeal.  As a non-party holder of the privilege, Parx may exercise the right to appeal an adverse privilege ruling when, as here, an order compels disclosure of its privileged documents that are in the custody of third-party law firms.

Alternatively, the Court has jurisdiction over Parx's direct appeal pursuant to the collateral-order doctrine. Under the collateral-order doctrine, this Court has jurisdiction over an appeal from an order that (1) conclusively determines an issue; (2) the issue is separate from the merits

10

of the case; and (3) will be effectively unreviewable after final judgment. *See, e.g.*, *Smith v. BIC Corp.*, 869 F.2d 194, 198–99 (3d Cir. 1989).

Here, the district court's order (1) conclusively determines that Eckert and HMS must disclose Parx's privileged communications; (2) resolves issues totally separate from the merits of the case since this Court can review the question of whether Parx's privileged documents may be disclosed in discovery without reaching the merits of POM's underlying claims against Eckert; and (3) will be effectively unreviewable because Parx is not a party in the underlying litigation and cannot take an appeal from a final judgment once the documents are disclosed.

Accordingly, the Court has jurisdiction pursuant either to the *Perlman* doctrine or collateral-order doctrine.

### C.    Mohawk Industries *does not preclude an appeal from an adverse privilege ruling affecting a non-party.*

As a final point, Parx acknowledges the Supreme Court's decision in *Mohawk Industries, Inc. v. Carpenter,* 558 U.S. 100, 110-11 (2009). However, that decision does not preclude a direct appeal under *Perlman* or the collateral-order doctrine.

Before *Mohawk*, a party subject to an adverse privilege ruling had the right to immediate appeal under the collateral-order doctrine. In

*Mohawk*, the Supreme Court clarified that an adverse privilege ruling directed to a party in litigation is not necessarily a collateral order subject to immediate review, reasoning that a party may vindicate its rights by appealing after a final judgment on the merits or seeking certification and permissive appeal under 28 U.S.C. § 1292(b).

*Mohawk* did not alter the *Perlman* doctrine or other potential avenues for appeal when a non-party privilege holder challenges an adverse privilege ruling that compels the disclosure of privileged documents in the possession of third parties. As this Court explained:

> We cannot say that the Supreme Court has abandoned that determination [*Perlman*] on the basis of a later case, *Mohawk*, that never cites, let alone discusses, *Perlman*. If and when that Court next hears a case involving the *Perlman* doctrine, it may well hold that the doctrine does not allow grand jury subjects to receive immediate appellate review of adverse privilege determinations. And, given the need for judicial efficiency in the criminal context, such a decision may be justifiable. We will not, however, intrude on the Supreme Court's prerogative to make that determination. We therefore conclude that the *Perlman* exception remains viable.

*In re Grand Jury*, 705 F.3d 133, 146 (3d Cir. 2012).

Here, *Mohawk* does not preclude a direct appeal. Parx is not a party to the underlying litigation attempting to appeal an adverse privilege

12

order and cannot otherwise vindicate its rights by appealing from the final judgment in the underlying litigation between the parties.

Accordingly, the Court has jurisdiction over the appeal pursuant to *Perlman*, the collateral-order doctrine, or 28 U.S.C. § 1292(b).

## V.  STATEMENT OF ISSUES ON APPEAL[1]

(1) In a case of first impression, did the district court commit an error of law when it invoked judicial estoppel as an exception to the attorney-client privilege under Pennsylvania law to require the disclosure of a non-party's privileged documents based on allegedly inconsistent statements the non-party's law firm made as a defendant in the case below? (*Suggested answer: yes.*)

(2) If judicial estoppel is an exception to the privilege, did the district court abuse its discretion when it applied that doctrine to a non-party to require the disclosure of its privileged documents even though the non-party did not make any inconsistent statements in bad faith? (*Suggested answer: yes.*)

---

[1] The district court certified the issue as follows: "whether judicial estoppel may be applied as an exception to or waiver of the attorney-client privilege of a non-party." Parx has restated that inquiry in order to focus on the principal issue in related parts. Parx raised and argued the issue at D.C. ECF Nos. 95, 96, 110, 130, 170, 171, 192, 232.

(3)    If judicial estoppel is an exception to the privilege, did the district court abuse its discretion when it applied that doctrine to a non-party to require the disclosure of its privileged documents based on allegedly inconsistent statements one of the non-party's law firms made as a defendant in the case below? (*Suggested answer: yes.*)

## VI.    STATEMENT OF THE CASE

Insofar as it relates to the merits of this appeal, the relevant background and procedural history are as follows.

### A.    *Background*

Parx is not a party in the underlying litigation between POM as plaintiff and Eckert as defendant. *See* JA157. In the case below, POM alleges that Eckert breached a fiduciary duty to POM by having certain Eckert attorneys in its Virginia office represent POM in Virginia while other Eckert attorneys in its Pennsylvania office represented Parx in Pennsylvania in matters in which Parx and POM had adverse interests. *See* JA 157-JA159.

Before Parx ever got involved in this case, Eckert made certain statements that the magistrate judge and district court later cited in concluding that the doctrine of judicial estoppel should apply. In its

14

pleadings, Eckert alleged that it "does not represent a party adverse to POM in litigation" and "is not counsel in any litigation where POM is an adverse party." *See* JA531. In a joint case-management plan, on which the magistrate judge and district court relied in substantial part (despite Local Rule 16 which states that "[t]he information in the case management form will not be deemed an admission by any party"), Eckert stated that it is not involved in litigation initiated by POM in Commonwealth Court. *See* JA 537.

In June 2020, POM served discovery requests on Eckert and a subpoena on HMS calling for documents relating to their representation of Parx in various state court proceedings, including two Pennsylvania Commonwealth Court cases involving POM on one side and various government agencies on the other, with several casinos, including Parx, as *amici* and prospective intervenors on the side of the government agencies. *See* JA215 & JA241. POM also served a subpoena *duces tecum* on Parx calling for documents relating to communications about conflicts, consent to concurrent representation, withdrawal of representation, and this litigation. *See* JA237.

15

Parx appeared before the district court for the limited purpose of moving to quash POM's subpoena calling for documents protected by the attorney-client privilege and to assert its privilege to prevent the disclosure of documents in the possession of Eckert and HMS. *See* District Court ECF 46 & JA137. Parx lodged objections based on confidentiality, privilege, and attorney work product. *See* JA249. Eckert and HMS asserted privilege on Parx's behalf with respect to Parx's privileged documents in their possession. *See* JA246 & JA259. The parties filed numerous motions and briefs supporting their respective positions, and the magistrate judge held oral argument on all motions as reflected on the district court docket. *See* JA131.

At oral argument, counsel for Eckert explained that Eckert already produced non-privileged documents demonstrating Eckert's involvement in the Commonwealth Court matter on behalf of Parx and other casinos and stated that there is "no question" Eckert was assisting Parx in the Commonwealth Court matter. *See* JA440.  Counsel also explained the distinction between entering a formal appearance on behalf of Parx in the case *versus* being part of a team of lawyers representing Parx in casino-related matters both on the policy and law side of the issue,

including advice on positions favorable to all casinos (not just Parx) in the Commonwealth Court cases. *See* J450-JA451.

After an *in camera* review, the magistrate judge quashed the subpoena directed to Parx in an opinion and order. *See* JA717. In the same opinion and order, however, the magistrate judge *sua sponte* applied the doctrine of judicial estoppel to order Eckert and HMS to disclose Parx's privileged documents in their custody based on alleged inconsistent statements of Eckert regarding its representation of Parx in matters adverse to POM. *See* JA763. The magistrate judge acknowledged that the documents at issue contain attorney-client communications. *See* JA763. The magistrate judge made no finding of waiver or any applicable exception to the privilege.

After the district court reversed and remanded to give Eckert, HMS, and Parx the opportunity to address the novel judicial estoppel issue, *see* JA785-JA796, the magistrate judge reached the same conclusion. *See* JA818-833. The magistrate judge again acknowledged that the documents contain attorney-client communications. *See* JA820.

As it relates to Parx, the magistrate concluded that Parx somehow made inconsistent statements about its pre-existing relationship with

17

Eckert based on an answer to a motion to disqualify that HMS filed in Commonwealth Court. *See* JA640. The magistrate judge implied based on that statement that Parx took the position that Eckert did not represent Parx in other matters, including matters in which Parx and POM have adverse interests. *See* J823-JA824. In the same answer to the motion, however, HMS stated that "[t]he various Casino Intervenors' litigation filings in this case were drafted by a group of lawyers from Hawke McKeon, Ballard, and Eckert." *See* JA636, JA872.

As the magistrate judge correctly concluded, the documents at issue involve lawyer-client communications regarding legal advice and representation. Based on an *in camera* review, the magistrate judge twice acknowledged (and the district court agreed) that "[t]he withheld documents—and presumably any information responsive to the interrogatory response as well—*involve communications between Stewart and other Eckert attorneys, on the one hand, and King, McKeon, and Parx on the other.*" *See* JA820 (emphasis added). (Adrian King and Kevin McKeon are lawyers for Parx.)

18

## B.   *Procedural History*

By order and opinion dated July 5, 2022, after further appeal from the magistrate judge's second decision, the district court agreed with the magistrate judge's judicial estoppel analysis. *See* J116. This is the order and opinion on appeal.

In a footnote, the district court stated that it "agrees with Judge Saporito's analysis that Parx has also presented inconsistent positions to the court." *See* JA127. This is the district court's only mention of Parx in connection with judicial estoppel. The district court also endorsed the sanction imposed by the magistrate judge to order the disclosure of Parx's privileged documents rather than preserving Parx's privilege and imposing some lesser sanction, such as estopping Eckert from taking the position that it did not simultaneously represent Parx in matters in which POM and Parx have adverse interests. *See* JA128-129.

Parx filed a motion for reconsideration or, in the alternative, for certification of the order for immediate appeal pursuant to 28 U.S.C. 1292(b) along with supporting briefs. *See* JA855. Parx argued that judicial estoppel is neither an exception to nor waiver of the attorney-client privilege and identified more than two dozen statements of record

19

in which Parx consistently acknowledged (contrary to the district court's findings and conclusions) that Eckert has long represented Parx in various matters, including matters in which Parx and POM are adverse to one another. *See* JA870-JA872.

Alternatively, Parx argued that the district court should certify the order to assure immediate appellate review, given that (a) Parx is not a party yet its privilege is at stake; (b) the unprecedented application of judicial estoppel as an exception to or waiver of a non-party's privilege merits immediate review; and (c) Parx has no recourse to prevent the harsh and irreparable sanction of disclosure even though lesser sanctions would remedy the perceived harm to the court without putting Parx's privilege at risk. *See* JA855.

On August 4, 2022, Parx also filed a direct appeal as of right from the opinion and order of the district court, docketed in this Court at No. 22-2446, pursuant to the *Perlman* and collateral order doctrines. On August 11, 2022, the district court denied reconsideration of its decision but certified the question presented below for immediate appeal. *See* JA102. Pursuant to 28 U.S.C. § 1292(b), Parx timely filed a petition

supporting interlocutory review of the certified order. *See* JA063. This Court granted the petition and consolidated all appeals.

## VII.  SUMMARY OF THE ARGUMENT

The district court committed an error of law when it invoked judicial estoppel as an exception to the attorney-client privilege under Pennsylvania law when no such judicial-estoppel exception exists. The Court should not endorse the application of judicial estoppel in a manner that creates an exception to the attorney-client privilege.

In addition, the district court abused its discretion when it applied judicial estoppel to Parx. Parx is not a party, appeared for the limited purpose of moving to quash a subpoena, and asserted its privilege to protect from disclosure documents in the possession of two of its law firms. Parx made no inconsistent statements to any court, let alone in bad faith. Even if judicial estoppel is an exception to the privilege under Pennsylvania law, it would be incongruous to apply that doctrine to Parx and order the disclosure of its privileged documents when Parx made no inconsistent statements in bad faith with the intent to play "fast and loose" with the district court.

21

The district court abused its discretion when it applied judicial estoppel to Parx based on Eckert's statements or conduct. Parx is not bound by anything Eckert said or did in its capacity as a party-defendant below. Eckert reconciled any perceived inconsistency to dispel any notions of bad faith. The district court also applied judicial estoppel *to punish Parx* and reward POM. That does not narrowly address the harm *to the court*. The district court could have imposed a lesser sanction and estopped Eckert from taking inconsistent positions in the underlying case to address any harm to the court that the allegedly inconsistent statements engendered rather than sanctioning Parx and rewarding POM by ordering the disclosure of Parx's privileged documents.

## VIII. ARGUMENT

The Court should reverse. The question of whether judicial estoppel is an exception to the attorney-client privilege under Pennsylvania law is subject to *de novo* review. *United States v. Doe*, 429 F.3d 450, 452 (3d Cir. 2005). The question of whether the district court properly applied judicial estoppel to Parx in this case is reviewed for an abuse of discretion. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). As described below, judicial-estoppel is not an exception

to the attorney-client privilege under Pennsylvania law. Even if judicial estoppel is an exception to privilege, that doctrine does not apply to Parx under the circumstances in this case.

### A.   *Judicial estoppel is not an exception to the attorney-client privilege.*

As a threshold matter, the district court erred when it applied judicial estoppel as an exception to the attorney-client privilege. Parx's documents are privileged, no exception applies, there is no waiver, and there is no such thing as a judicial estoppel exception to the attorney-client privilege under Pennsylvania law.

### 1.   The attorney-client privilege applies to the documents and protects them from disclosure.

The first question in the analysis is whether the documents are protected by the attorney-client privilege. The privileged nature of the documents is not in dispute.

When, as here, the federal court sits in its diversity jurisdiction, state privilege laws apply. *See* F.R.E. 501. The attorney-client privilege in Pennsylvania attaches when (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is a member of the bar of a court, or his subordinate; (3) the

23

communication related to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services or assistance in a legal matter, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and is not waived. *Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007) (affirmed by equally divided court at 605 Pa. 468, 992 A.2d 65 (2010)).

In turn, "legal advice" means "the interpretation and application of legal principles to guide future conduct or to assess past conduct." *See* 1 Paul R. Rice, *Attorney Client Privilege in the United States* § 7:9 (2d ed. 1999); *Serrano v. Chesapeake Appalachia*, LLC, 298 F.R.D. 271 (W.D. Pa. 2014) (communications about strengths/weaknesses of claim or defense, options, strategy, settlement constitute legal advice for purposes of apply attorney-client privilege).

First, Eckert and Parx have a long-standing attorney-client relationship. Parx repeatedly made that representation to the district court as soon as it appeared in this case and has maintained that position ever since. *See, e.g.*, JA870-JA872. Although Parx is not a party, Parx holds the privilege, not Eckert or HMS or other lawyers. Parx asserted

24

the privilege, and so did its law firms on behalf of Parx. *See* JA214, JA245, JA255. To the extent the magistrate judge or district court concluded that Parx does not have an attorney-client relationship with Eckert in order to assert privilege, that decision defies the record.

Second, the documents involve legal advice. The district court adopted the magistrate judge's finding that "[t]he withheld documents—and presumably any information responsive to the interrogatory response as well—*involve communications between Stewart and other Eckert attorneys, on the one hand, and King, McKeon, **and Parx** on the other.*" *See* JA763. These confidential documents and communications inevitably describe Parx's legal positions and strategies and there is no suggestion otherwise (indeed, if they did not involve privileged communications, the magistrate judge and district court would have no need to raise judicial estoppel to justify the disclosure).

Accordingly, the attorney-client privilege attached to the documents in question and protects them from disclosure absent waiver or an exception to privilege.

### 2. There are only a few recognized exceptions to the attorney-client privilege under Pennsylvania law, and none of them apply here.

The questions then become whether Parx waived the privilege or a recognized exception applies. The answer to both is "no."

Once the attorney-client privilege attaches to communications or documents, the burden shifts to the party seeking disclosure to demonstrate waiver or an exception to the privilege. *In re Investigating Grand Jury of Philadelphia Cnty.*, 593 A.2d 402, 407 (Pa. 1991) (burden of proof is upon party asserting that disclosure of information would not violate privilege).

Under Pennsylvania law, a client (and only the client) can waive privilege in certain circumstances, such as expressly waiving the privilege, failing to assert it, or failing to make others assert it. *See, e.g.*, *Maleski v. Corp. Life Ins. Co.*, 646 A.2d 1, 4 (Pa. Cmwlth. 1994). A third-party disclosure may also constitute a waiver in certain circumstances. *BouSamra v. Excela Health*, 210 A.3d 967 (Pa. 2019). Pennsylvania law also recognizes a crime-fraud exception, *In re Grand Jury Subpoena*, 745 F.3d 681 (3d Cir. 2014), and certain exceptions to privilege when lawyers

have evidence of criminal activity in their possession. *Commonwealth v. Stenhach*, 514 A.2d 114 (Pa. Super. 1986).

There is no waiver or exception to Parx's privilege that applies in this case. At the outset, Parx appeared in this case, asserted its privilege, and instructed its law firms to assert the privilege. *See* JA214, JA245, JA255. In turn, POM expressly *disclaimed* any desire to review privileged communications or documents reflecting communications between Parx and its law firms. *See* JA456 ("So I would agree with my colleague, Mr. Bibikos, that if Parx was getting advice from its lawyers, I shouldn't have access to that."); JA427 ("I want to make it super clear that I am not taking the position that all communications between Eckert and its client Parx are discoverable. That is not my position.").

In any event, POM never argued waiver of the privilege in any meaningful way, and both the magistrate judge and district court rejected without any analysis POM's attempt to claim that the crime-fraud exception somehow applied here. *See* JA797. Most importantly, neither the magistrate judge nor the district court ever made findings that Parx waived the privilege or that one of the exceptions to the attorney-client privilege applied.

Accordingly, the privilege attached to the documents without waiver or exception.

### 3. The district court erred when it applied judicial estoppel as an exception to the privilege.

Having determined that the privilege attached to the documents without waiver or exception, the question becomes whether the district court erred when it applied judicial estoppel as an exception to the privilege under Pennsylvania law to justify the order disclosing Parx's privileged documents. The answer is yes.

The attorney-client privilege is a matter of state law. *Samuelson v. Susen*, 576 F.2d 546, 549 (3d Cir. 1978). The Pennsylvania Supreme Court has exclusive authority to regulate the practice of law in the Commonwealth and make determinations regarding the attorney-client privilege and its exceptions. *In re Est. of McAleer*, 248 A.3d 416 (Pa. 2021) ("The authority to determine the scope of a common-law privilege appropriately rests with this Court under Article V, Section 10(c), of the Pennsylvania Constitution. PA. CONST. art. V, § 10(c); *Gillard v. AIG Ins. Co.*, 15 A.3d 44, 58 (Pa. 2011)."). In addition, the Pennsylvania General Assembly has enacted a statute governing the attorney-client privilege in both civil and criminal matters. *See* 42 Pa.C.S. §§ 5916 & 5928.

As noted, there are only a few exceptions to privilege, and judicial estoppel is not one of them. Neither the Pennsylvania Supreme Court nor the General Assembly have recognized or adopted exceptions to the privilege other than those identified above. Since before and after the General Assembly codified that privilege in 1887, *see Nationwide Mut. Ins. Co. v. Fleming*, 992 A.2d 65, 68 (Pa. 2010), the Pennsylvania Supreme Court has never suggested that judicial estoppel should be an exception to the privilege. The Court should not uphold a district court's order that essentially creates a new exception.

Despite research efforts, Parx is unaware of any situation in which a Pennsylvania court invoked judicial estoppel as an exception to the attorney-client privilege to justify the disclosure of otherwise privileged documents. Indeed, in multiple rounds of briefing, two appeals to the district court, reconsideration practice, and now proceedings before this Court, no one ever cited any binding or on-point authority recognizing judicial estoppel as an exception to the attorney-client privilege under Pennsylvania law.

More importantly, Parx also is unaware of any binding case law in which a court estopped a non-party client from asserting its privilege

based on its law firm's allegedly inconsistent statements made not in the course of representing the non-party but as a party-defendant in a separate and unrelated lawsuit. None of the parties to the case ever discussed judicial estoppel as a basis to circumvent Parx's attorney-client privilege under Pennsylvania law to justify the disclosure of privileged documents. The magistrate judge raised that issue *sua sponte*, *see* JA730, and after additional briefing and subsequent appeal, the district court later endorsed and upheld that ruling. *See* JA130.

The analyses of both the magistrate judge and district court should have ended once they determined that the privilege applied to the documents without waiver or exception. The magistrate judge and the district court went too far by evaluating whether Eckert's allegedly inconsistent statements in this case about its pre-existing relationship with Parx justified the application of judicial estoppel to order the disclosure of Parx's privileged documents.

Simply put, judicial estoppel should not apply as an exception to privilege. The point is not merely academic. By adopting a novel approach to the privilege analysis, the district court endorsed an extreme sanction fashioned by the magistrate judge. That sanction unjustifiably

30

punishes Parx as a non-party by ordering the disclosure of its privileged communications based on allegedly inconsistent statements one of its law firms made not in the course of representing Parx but as a party-defendant in an underlying dispute with another client, which is what this case involves. Given the lack of any indication that judicial estoppel is a proper basis to circumvent the attorney-client privilege, the district court overstepped its authority when it endorsed the magistrate judge's application of that doctrine as a novel way to order the disclosure of otherwise privileged documents.

Finally, there are practical concerns if the decision stands. The federal courts in every diversity case involving a dispute over the attorney-client privilege may be compelled to evaluate whether there any "judicial estoppel" circumstances that justify a waiver of the attorney-client privilege. Courts will be compelled to resolve fact disputes over alleged inconsistent statements, allegations of bad faith, and so forth, *even if* (as here) the privilege clearly applies without exception or waiver under state law. These questions would engender prolonged and ancillary fact-finding to determine whether some inconsistency in the record justifies the application of judicial estoppel to reject otherwise

meritorious privilege claims. The Court therefore should not endorse the application of judicial estoppel as a basis to circumvent privilege.

Accordingly, judicial estoppel is not an exception to the attorney-client privilege of a non-party that justifies the disclosure of a non-party's privileged documents. The Court should reverse.

### B.    Even if judicial estoppel is an exception to the attorney-client privilege, it does not apply to Parx.

If the Court gets past the dispositive argument above and concludes that judicial estoppel can be invoked as an exception to the attorney-client privilege, the question becomes whether the district court abused its discretion when applying judicial estoppel to Parx based on Eckert's alleged inconsistent statements so as to order the disclosure of Parx's privileged documents. The answer is "yes."

The purpose of judicial estoppel is to promote candor to the court by preventing parties from taking and maintaining inconsistent positions in litigation in bad faith. *See G-I Holdings, Inc. v. Reliance Ins.*, 586 F.3d 247, 261 (3d Cir. 2009); *Coast Auto. Grp. v. VW Credit, Inc.*, 34 F. App'x 818, 825, 2002 WL 121932, at *8 (3d Cir. 2002); *Montrose Medical Group v. Bulger*, 243 F.3d 773, 782 (3d Cir. 2001). As this Court explained:

> Judicial estoppel may be imposed only if: (1) the party to be estopped is asserting a position that is irreconcilably inconsistent with one he or she asserted in a prior proceeding; (2) the party changed his or her position in bad faith, *i.e.*, in a culpable manner threatening to the court's authority or integrity; and (3) the use of judicial estoppel is tailored to address the affront to the court's authority or integrity.

*Coast Auto.,* 34 F. App'x at 825, 2002 WL 121932, at *8; *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n.5 (3d Cir. 2008) (cleaned up).

There are additional guiding principles to keep in mind when evaluating whether judicial estoppel applies.

- Judicial estoppel is reserved for only the most egregious of cases and should be used sparingly. *Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. General Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003).

- Mere inconsistency is not enough. *Coast Auto.,* 34 F. App'x at 824-25, 2002 WL 121932, at *7 ("However, to invoke judicial estoppel, a court must do more than merely find that a party advanced inconsistent positions to the court.").

- The courts should not presume bad faith or improper motives based on inconsistencies. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 364 (3d Cir. 1996) ("While we by no means denigrate the importance of full disclosure or condone nondisclosure in bankruptcy proceedings, we are unwilling to treat careless or inadvertent nondisclosures as equivalent to deliberate manipulation when administering the 'strong medicine' of judicial estoppel.").

- Being hyper-technical is not bad faith. *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 377–78 (3d Cir. 2007), as amended (Oct. 12, 2007) ("In this limited context, that BCE was 'playing fast and loose' with the courts appears too strong

33

a statement. Perhaps it was being hyper-technical, and indeed up against the 'too close for cricket' line, but that is as far as we can conclude on the record before us.").

- Being sloppy is not bad faith. *In re Teleglobe Commc'ns Corp*, 493 F.3d at 377-78 ("This case looks more like a legitimate disagreement over the scope of any joint representation (mixed with a dose of sloppiness) than it does a bad faith attempt to mislead the courts.").

- The remedy must never go further than necessary to address the harm *to the court* (not the parties) engendered by the inconsistent positions. *Montrose*, 243 F.3d at 780.

With those principles in mind, the allegedly inconsistent statements that formed the basis for applying judicial estoppel should be examined. First, Eckert made the statements in question in this underlying case in which Eckert is a party-defendant. Eckert made the statements before POM served a subpoena on Parx and before Parx had counsel enter an appearance to assert the privilege and move to have the subpoena quashed. Second, Eckert said to the court that it does not represent Parx in litigation adverse to POM. *See* JA531, JA537. Then, after POM served discovery and subpoenas, Eckert invoked privilege and explained that it represents Parx in matters in which POM and Parx have adverse interests but not as counsel of record in litigation between Parx and POM. *See, e.g.*, JA439-JA450.

34

With that in mind, judicial estoppel simply does not apply to Parx. Parx never made any inconsistent statements, let alone ones that are irreconcilable, nor did it engage in any bad faith.

### 1.    Parx never made any inconsistent statements.

First, judicial estoppel does not apply unless the party or litigant to be charged actually makes an inconsistent statement to the court.

In all the salient cases on judicial estoppel cited above, the courts considered its application based on a party or litigant that actually made an inconsistent statement; none of them involved a non-party who made no inconsistent statements in the proceedings. *See, e.g.*, *G-I Holdings*, 586 F.3d at 261; *Coast Auto*, 34 F. App'x at 825, 2002 WL 121932, at *8; *Montrose*, 243 F.3d at 782; *Krystal Cadillac*, 337 F.3d at 324; *In re Teleglobe*, 493 F.3d at 377-78.

Here, Parx never made any inconsistent statements. Parx appeared to file a motion to quash a subpoena and assert its privilege. Parx consistently represented to the district court that it had a pre-existing attorney-client relationship with Eckert, including in matters adverse to POM, and Parx never suggested otherwise. Since the moment Parx received a subpoena in June 2020 and entered a limited appearance here

to quash the subpoena and assert its attorney-client privilege, Parx made dozens of statements before the district court expressly and implicitly confirming that Eckert represents Parx in various matters, including matters adverse to POM. *See, e.g.*, JA870-JA873.

The fact of the Eckert/Parx representation is and always has been a foregone conclusion. The record is devoid of any evidence in which Parx took a contrary position before the district court. The whole point of POM's lawsuit – filed before Parx ever received a subpoena – is that Eckert represented Parx and POM simultaneously in matters in which those clients were adverse to one another. The fact of Eckert's prior representation of Parx in matters adverse to POM goes without saying and provides the basis for the allegations by POM against Eckert. To the extent the magistrate judge or district court concluded otherwise, their conclusion is not supported by the record.

Moreover, Parx did not make any inconsistent statements in any court. The magistrate seemingly believed that Parx somehow made inconsistent statements about its pre-existing relationship with Eckert based on an answer to a motion to disqualify that HMS filed in Commonwealth Court while representing Parx. *See* JA640. However,

36

HMS stated in that answer that "***[t]he various Casino Intervenors'*** ***litigation filings in this case were drafted by a group of lawyers*** ***from Hawke McKeon, Ballard, and Eckert***."). *See* JA636, JA872 (emphasis added).

Finally, Parx never adopted any inconsistent statement. Parx acknowledged Eckert's statement and the distinction it drew between representation in general *versus* appearing as counsel of record. *See, e.g.*, JA454 (explaining that formal appearance by a lawyer is not required to assert attorney-client privilege). But acknowledging and understanding Eckert's distinction by no means detracts from Parx's unequivocal statements that it has long maintained an attorney-client relationship with Eckert and that Eckert assisted Parx in litigation matters in which Parx and POM were adverse to one another.

The district court's apparent reliance on *In re Berks Behavioral Health LLC*, 500 B.R. 711, 721 (E.D. Pa. Bankr. 2013), for a contrary proposition is misplaced. *In re Berks* involved an intentional father-son scheme to swear out affidavits in a bankruptcy proceeding about a sham agency relationship that directly contradicted prior sworn deposition testimony. Importantly, the court in *In re Berks* did not impose judicial

estoppel to circumvent privilege based on allegations that the party's lawyers (in the case or other lawyers) engaged in bad faith.

*Berks* is inapposite for one clear reason: the court in that case applied judicial estoppel against the party invoking a privilege ***based on the party's bad faith statements (not statements of counsel)***. Here, Parx never made any bad faith statements. There is no attempt here – intentionally or otherwise – to mislead the court as in *Berks*. To the contrary, everyone knows that Eckert and Parx have a longstanding attorney-client relationship and that Eckert assisted Parx and other casinos in matters adverse to POM. Parx never suggested otherwise.

This is not a situation in which Parx expressly disavowed an attorney-client relationship with Eckert before it appeared in this case only to switch gears later to assert the privilege. To the contrary, Parx asserted the privilege in unequivocal terms as soon as it had the opportunity to do so, *i.e.*, after POM served a subpoena. *See* JA251. As the privilege holder whose decision on privilege or waiver controls, *Commonwealth v. McCullough*, 201 A.3d 221 (Pa. Super. 2018), Parx's assertion of the privilege should render irrelevant any inconsistent statement Eckert may have made before Parx ever entered the fray.

Accordingly, judicial estoppel does not apply to Parx to require the disclosure of its privileged documents because Parx never made any inconsistent statements to the court.

### 2. Parx did not engage in bad faith.

Second, for purposes of judicial estoppel, "bad faith" requires an intent to play "fast and loose" with the court. *Ryan Operations*, 81 F.3d at 361. There is absolutely no bad faith here.

In this case, Parx received a subpoena in June 2020 calling for communications between Parx and Eckert. *See* JA237. Parx acknowledged Eckert's pre-existing and longstanding representation. *See* JA870-JA873. Parx lodged objections to the subpoena based on privilege. *See* JA251. Parx produced a privilege log. *See* JA254. Parx briefed the privilege, work-product, and other legal issues involved in this discovery dispute. *See* JA131-JA154. Parx argued before the district court and voluntarily submitted documents for *in camera* review as requested. *See* JA409-JA475. The magistrate judge then quashed the subpoena directed to Parx. *See* JA717. That is it. But for the novel application of judicial estoppel to justify the disclosure of Parx's privileged documents, Parx would no longer be involved in this case.

In the end, there is no evidence that Parx engaged in the type of behavior that justifies the harsh remedy of ordering the disclosure of its privileged documents in the underlying case. Parx is a non-party recipient of a third-party subpoena protecting its privileged materials and separately asking that its lawyers assert the privilege on its behalf (as is their duty) to avoid waiver. There is nothing suggesting that Parx took any inconsistent positions with the intent to harm the court.

At a minimum, the Court should err on the side of caution and give every benefit of the doubt to Parx given that Parx is a non-party, has been thrust into this dispute between one of its law firms and another of its clients, Parx's attorney-client privilege is at stake, and judicial estoppel, if applicable, is an extraordinary doctrine that engenders harsh results. The Court should not endorse the disclosure of privileged documents based on a novel application of judicial estoppel when there is no evidence that the non-party privilege holder played "fast and loose" with the court.

Accordingly, the Court should reverse because Parx never made any inconsistent statements in bad faith to justify the application of judicial estoppel to require the disclosure of Parx's privileged documents.

40

### C. *The district court erred in its application of judicial estoppel to Parx to require the disclosure of its privileged documents.*

Again, the analysis should end. Judicial estoppel does not apply because Parx did not make any inconsistent statements let alone any statements in bad faith with the intent to harm the court. If this Court gets past that analysis, the question becomes whether the district court erred in its application of judicial estoppel to Parx – based on statements and conduct of Eckert – to order the disclosure of Parx's privileged documents. Again, the answer is yes.

### 1. At the outset, the district court never ruled on or adopted any inconsistent statements, rendering judicial estoppel inapplicable.

As a matter of law, the court erred by applying judicial estoppel even though Eckert never prevailed on any inconsistent statement. That is a threshold requirement in this Circuit.

Judicial estoppel only applies if a court adopted a prior position. *See, e.g.*, *New Hampshire v. Maine,* 532 U.S. 742, 751 (2001); *Reed Elsevier, Inc. v. Muchnick*, 559 U.S. 154, 170 (2010) ("We agree that some statements in the parties' submissions to the District Court and the Court of Appeals are in tension with their arguments here. But we

41

decline to apply judicial estoppel. "[T]hat doctrine typically applies when, among other things, a 'party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.'") (cleaned up).

"[I]n our Circuit judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *Chao*, 517 F.3d at 186 n.5 ("Not only must the court find that a party adopted inconsistent positions, but it should also consider whether the party succeeded in convincing a tribunal to accept its position and whether the party would derive an unfair advantage in the absence of estoppel.").

The rationale for this threshold requirement makes sense. Lawyers are trained to argue in the alternative, carefully parse words and phrases, and in some instances assert seemingly inconsistent positions in order to fully represent their clients to the best of their ability. Indeed, the procedural rules often absolve lawyers from judicial estoppel when they take inconsistent positions in pleadings. *In re Prosser*, 534 F. App'x 126, 130, 2013 WL 3943548 (3d Cir. 2013) ("Such alternative pleading,

42

which is explicitly permitted by Federal Rule of Civil Procedure 8(d), is not barred by judicial estoppel.").

Thus, until the court is compelled to expend time and effort reaching a factual or legal ruling that adopts a particular argument or position, or otherwise resolves an issue in a case, the parties and counsel should have some leeway in what they say and how they say it, even if seemingly inconsistent at times. As noted in the case law cited above, the courts account for that by requiring more than a mere inconsistency. When the court has expended time and resources to reach a conclusion on a particular issue or position, then the court has an interest in maintaining the integrity of the process by preventing parties from taking contrary positions later in bad faith when it suits their needs.

Here, the district court never adopted Eckert's inconsistent statement. Eckert made an allegation in preliminary pleadings. That is it. The district court did not dismiss the case based on Eckert's position. The district court did not rule in favor of Eckert on the merits of its prior allegation. The district court did not grant a motion based on Eckert's allegation. Before making any ruling, Eckert already had clarified its statement that it represented Parx and POM in matters in which those

clients are adverse to one another. Unless the district court ruled on or adopted Eckert's inconsistent statement, judicial estoppel does not apply. *See Chao*, 517 F.3d at 186 n.5 (citing *New Hampshire,* 532 U.S. at 751).

Finally, although there may be cases in which the court could apply judicial estoppel in the absence of a ruling on a prior position or statement, *G-I Holdings*, *supra*, this is not one of them. Judicial estoppel against Parx might make sense if Parx disavowed its attorney-client relationship with Eckert, the court then adopted or ruled on that issue, and then Parx invoked that relationship to assert privilege later.  That is not the case here.  Short of that, Parx should be given the benefit of the doubt as the holder of the attorney-client privilege particularly when it made no inconsistent statements, it unequivocally asserted privilege as early as it could, and the district court circumvented that privilege based on statements of Eckert that the district court never adopted.

Accordingly, the district court erred by applying judicial estoppel without ever having ruled on or adopted Eckert's inconsistent statement.

### 2.    The district court erred by imputing Eckert's statements or conduct to Parx.

Beyond that threshold problem, the district court seized on Eckert's allegedly inconsistent statements (that the district court *presumed* were

made in bad faith) and attributed those statements and conduct *to Parx* (without any evidence) in order to justify the disclosure of its privileged documents.   The district court erred because Parx is not a party and Eckert does not represent Parx in this case.

### a.   Parx is not bound by Eckert's allegedly inconsistent statements.

First, the district court treated Eckert's alleged inconsistent statements essentially as judicial admissions binding on Parx.  But Parx is not bound by Eckert's statements.

These so-called "judicial admissions" rarely occur and only ever occur if a lawyer makes unequivocal statements on the client's behalf in the proceeding in which the lawyer represents the client. *Glick v. White Motor Co.*, 458 F.2d 1287, 1291 (3d Cir. 1972) (judicial admissions must be "unequivocal" and only binding "for the purpose o*f the case in which the admissions are made*") (emphasis added).

Here, there is no way Parx could have made any judicial admission in this proceeding based on Eckert's alleged inconsistent statements. Parx is not a party in the underlying case. *See* JA157.  Eckert does not represent Parx in this case, as Parx was merely a third-party recipient of a subpoena who then retained its own counsel. *See* JA131 (Bibikos

appearance for Parx).  Eckert therefore did not make any statements in this proceeding as counsel for Parx, and Parx is not even a party.

Moreover, by the time Parx appeared to quash a subpoena and assert privilege, Eckert already had made the allegedly inconsistent statements in its answer and joint case management plan.  *See e.g.,* JA183 (answer dated June 13, 2022); JA137 (appearance for Parx filed July 20, 2022). That statement cannot be imputed to Parx as a separately represented entity that is not involved and is not represented by Eckert here.  Eckert's alleged inconsistent statements therefore are not judicial admissions of Parx in this case and therefore cannot be attributed to Parx for purposes of judicial estoppel or otherwise.

The district court erred by concluding that Parx should be estopped from asserting its privilege based on the allegedly inconsistent statements made by Eckert as a defendant in the underlying case in which Parx is not even a party.

> **b.    Parx is not bound by Eckert's alleged "bad faith."**

The district court also suggested that Parx should be bound by what it perceived as Eckert's bad faith.  Again, the court erred.

Courts have refused to apply judicial estoppel against a litigant based on the alleged bad-faith conduct of others. In *Killmeyer v. Oglebay Norton Co.*, 817 F. Supp. 2d 681 (W.D. Pa. 2011), a defendant in a wrongful death action argued that the widow of a decedent failed in bad faith to list her wrongful death claims in the bankruptcy schedule such that the bankruptcy trustee should be estopped from pursuing the claim on behalf of the estate. The court disagreed:

> The trustee and plaintiff's creditors should not be denied the benefit of a cause of action, and potential recovery, due to plaintiff's failure to disclose. Therefore, plaintiff's conduct will not be used to estop the trustee, who has "made no false or inconsistent statement under oath in a prior proceeding and is not tainted or burdened by the debtor's misconduct."

*Id.* at 692 (emphasis added).

Although the context is different, the principles in *Killmeyer* apply equally here. Parx has not made any bad-faith inconsistent statements to the district court in the course of this prolonged discovery proceeding as a recipient of a third-party subpoena defending against the disclosure of its privileged materials. Again, everyone knows that Eckert and Parx have a longstanding attorney-client relationship and that Eckert assisted Parx and other casinos in the Commonwealth Court litigation. Parx has

maintained that position since it received the subpoena in June 2020. *See* JA780-JA783.

Parx disputes that Eckert or anyone here engaged in bad faith, but the point is academic. As in *Killmeyer*, Parx should not be denied the benefit of that attorney-client privilege based on allegedly bad-faith inconsistent statements of Eckert. As in *Killmeyer*, the alleged inconsistent statements of Eckert should not be used to prevent Parx from asserting its privilege when Parx has made no inconsistent statements about the attorney-client relationship with Eckert.

Accordingly, Parx is not bound by any alleged bad faith of others in this case.

### c. Eckert reconciled any inconsistency in its statements.

In any event, Eckert explained and clarified its statements such that the Court should reject any notions that Eckert engaged in bad faith or that such conduct should be imputed to Parx. On this point, *In re Teleglobe* is instructive.

In *In re Teleglobe*, a controlling corporation first said, in bankruptcy court, that it may have had a joint representation agreement with the debtor and used that to invoke privilege and produce certain common-

interest documents. The controlling corporation later explained it did not have a joint-representation agreement with the debtor and maintained that position throughout the case. The debtor argued that judicial estoppel prevented the controlling corporation from taking the position that it never had a joint-representation agreement with the debtor. This Court disagreed:

> This case looks more like a legitimate disagreement over the scope of any joint representation (mixed with a dose of sloppiness) than it does a bad faith attempt to mislead the courts. BCE's position throughout has been that it has turned over the documents that arose out of a BCE/Teleglobe joint representation. It told the Bankruptcy Court—in equivocal terms—that there *may* have been a BCE/Debtors joint representation (and if so, it agreed to turn over any such documents). In front of the Special Master, BCE's counsel specifically stated that its attorneys did not jointly represent the Debtors, and it has maintained that position since. In this limited context, that BCE was "playing fast and loose" with the courts appears too strong a statement. Perhaps it was being hyper-technical, and indeed up against the "too close for cricket" line, but that is as far as we can conclude on the record before us.

*Id.*; *Tarpey v. United States*, No. CV-17-94-B-BMM, 2020 WL 4464319, at *2 (D. Mont. Aug. 4, 2020) (citing *Teleglobe* with approval). *See also, e.g.*, *In re Kasbee*, 466 B.R. 719, 723 (Bankr. W.D. Pa. 2010) ("[W]hen a party making a judicial admission subsequently provides a timely explanation as to the error, the trial court must accord the explanation due weight.").

Here, the district court's decision rests almost entirely on the fact that Eckert made a statement in preliminary papers that it did not represent Parx in litigation matters adverse to POM. *See* JA531, JA537. Eckert later explained that it did not represent Parx as counsel of record in such matters but conceded – unequivocally – that it represented Parx in matters adverse to POM even if not as counsel of record. *See, e.g.*, JA439-JA450. In addition, counsel for Eckert explained that Eckert produced non-privileged documents demonstrating Eckert's involvement in Commonwealth Court cases on behalf of Parx and other casinos and that there is "no question" Eckert assisted Parx in that court. *See* JA440. Eckert has maintained that position.

As in *Teleglobe*, perhaps Eckert could have stated the distinction more clearly from the outset, but characterizing the perceived inconsistency as a bad-faith attempt to dupe the courts is a bridge too far. Certainly, Eckert's statements do not warrant a penalty *against Parx*, having appeared long after Eckert made the allegedly inconsistent statement, always represented to the district court that it has an attorney-client relationship with Eckert, maintained that same position

50

from the moment it appeared in court, and properly invoked the privilege to protect disclosure of indisputably privileged documents.

Accordingly, the Court should lean on the lessons of *Teleglobe* and decline to apply judicial estoppel in this case, particularly when judicial estoppel is not an exception to privilege, the basis for applying the doctrine here is thin, and the penalty only punishes a non-party by ordering the disclosure of its otherwise privileged documents.

### 3.    The district court's judicial estoppel "remedy" unjustifiably punishes Parx by compelling the disclosure of its privileged documents.

Having determined that Parx did not make any inconsistent statements (let alone any in bad faith) and that Parx is not bound by Eckert's statements or conduct, the question becomes whether the judicial estoppel remedy imposed by the magistrate judge and adopted by the district court goes too far. The answer is yes.

The judicial estoppel "remedy" should only go as far as necessary to address the harm *to the court* engendered by a party's conduct, not to reward another party. This Court's discussion in *Montrose* is instructive:

> The difficulty with the District Court's reasoning is that ***judicial estoppel may not be used to punish litigants for how they treat other litigants or third parties; its only legitimate purpose is to remedy an affront to the court's***

***integrity***. *See, e.g.*, *Ryan Operations*, 81 F.3d at 360 ("Judicial estoppel 'is intended to protect the courts rather than the litigants.'" (*quoting Fleck v. KDI Sylvan Pools, Inc.*, 981 F.2d 107, 121–22 (3d Cir.1992))). Because the court's opinion contains no hint that it invoked judicial estoppel to respond to a threat to its own authority, the sanction was not tailored to address the harm in this case.

*Id.* (emphasis added).

With that principle in mind, the district court erred by invoking judicial estoppel to order the disclosure of Parx's privileged documents. *If* judicial estoppel is an exception to privilege *and* the Court here believes Parx made inconsistent statements or should be charged with Eckert's statements *and* the Court finds bad faith (all of which Parx disputes for the reasons set forth above), then any sanction should address the harm to the court. There are far more appropriate and narrowly tailored remedies that the district court could have and should have imposed to address any affronts.

First, the district court could estop Eckert from taking the position that it did not represent Parx in matters adverse to POM while Parx and POM were Eckert's clients. The fact of Eckert's representation of Parx in the Commonwealth Court cases or other matters in which the POM and Parx are adverse may just as easily be established by the entries in the

52

privilege log without getting into the substance of the privileged communications on a fact issue that is not in dispute.

Second, the court could deem the fact of Eckert's simultaneous representation of Parx and POM in matters adverse to one another admitted for summary judgment or trial. That remedy, in turn, possibly reduces the issues for trial and obviates the need for POM to review Parx's privileged documents to establish a fact that no one contests. Taking that contested fact off the table addresses the court's interests by forgoing the need for discovery or trial on a contested issue.

Now consider the sanction imposed below. The district court ordered Eckert and HMS to disclose Parx's privileged documents. That is a harsh remedy to impose on a party, let alone a non-party who appeared to protect its privileged documents and took no inconsistent positions regarding its attorney-client relationship. *Montrose*, 243 F.3d at 784 (judicial estoppel "is often the harshest remedy" that a court can impose for inequitable conduct" and "judicial estoppel is an inappropriate sanction here because its effects would be borne not by any wrongdoers, but by innocent third parties").

53

Indeed, no one is entitled to Parx's privileged documents in discovery under Rule 26 or Rule 45. *See* Fed. R. Civ. Pro 26(b)(1) (scope of discovery limited to "any ***nonprivileged*** matter") (emphasis added); Fed. R. Civ. Pro. 45 (court must quash subpoena that calls for "disclosure of ***privileged or other protected matter***, if no exception or waiver applies") (emphasis added). In other words, POM would never have access to these documents absent waiver or exception. Yet, the district court ordered Eckert and HMS to hand them over to POM based on Eckert's allegedly inconsistent statements made as a defendant below.

In short, the district court eschewed alternatives and punished *Parx* by ordering the disclosure of its documents. Far from narrowly addressing a harm to the court, the district court went further by giving POM an unwarranted advantage in its case against Eckert (and in any cases in which POM and Parx have adverse interests) by giving POM access to all confidential documents and communications that inevitably describe Parx's legal positions and strategies even though POM otherwise has no right to the documents in litigation under Pennsylvania privilege law and Rule 26 or Rule 45 or other discovery rules.

54

Giving POM access to Parx's privileged documents is not addressing the perceived harm to the court engendered by Eckert's allegedly inconsistent positions. Rather, the application of judicial estoppel here unjustifiably eviscerates the privilege of a non-party that appeared to protect its privilege and never waived it. The fact that both the magistrate judge and the district court expressly acknowledged the privileged communications within the documents should dictate against a remedy that orders their disclosure.

In other words, the remedy is overbroad. It bears repeating that POM disclaimed any right to access to the legal advice Parx receives from its lawyers. *See* JA456 ("So I would agree with my colleague, Mr. Bibikos, that if Parx was getting advice from its lawyers, I shouldn't have access to that."); JA427 ("I want to make it super clear that I am not taking the position that all communications between Eckert and its client Parx are discoverable. That is not my position.").

A final point is important for the Court's consideration regarding the application of judicial estoppel and the sanction imposed. As noted, the magistrate judge quashed a subpoena directed to Parx based on the attorney-client privilege but disavowed the same attorney-client

55

privilege based on judicial estoppel to order Eckert and HMS to disclose privileged documents in their possession. The district court upheld that order. But how can this be?

The magistrate judge did not apply judicial estoppel to Parx regarding the Parx subpoena. The magistrate judge granted the motion and quashed the subpoena that called for Parx's privileged documents. If the magistrate judge quashed the subpoena directed to Parx based on privilege without judicially estopping Parx from asserting the privilege, then the privilege should also apply to the documents in the possession of Eckert and HMS without judicially estopping Parx from asserting the privilege. The rationale for applying judicial estoppel as an exception to privilege to punish Parx in one situation but not another is inherently inconsistent and reflects a selective application of that doctrine to reach a desired result. That is not how judicial estoppel should work and certainly should not justify the harsh sanction Parx must endure.

In the end, the sanction that the district court imposed does not address the harm to the court. It punishes Parx. Without relief from this Court, Parx must endure the disclosure of its privileged communications based on the actions or statements of others. Surely the district court

could have fashioned far more appropriate remedies as outlined above, all of which would avoid the untenable result of ordering the disclosure of a non-party's privileged communications. It would be incongruous to impose the extraordinarily harsh penalty of judicial estoppel on Parx under the circumstances of this case. The district court erred by doing so.

## IX. CONCLUSION

WHEREFORE, the Court should reverse, vacate the district court's order, and remand with instructions to grant the motions filed by Parx, Eckert, and HMS to quash the subpoena and/or for a protective order to prevent the disclosure of Parx's privileged documents.


February 16, 2023                              Respectfully submitted,

                                               **GA BIBIKOS LLC**

                                               /s George A. Bibikos
                                               George A. Bibikos (PA 91249)
                                               5901 Jonestown Rd. #6330
                                               Harrisburg, PA 17112
                                               (717) 580-5305
                                               gbibikos@gabibikos.com

                                               *Counsel for Greenwood Gaming*
                                               *& Entertainment, Inc., d/b/a*
                                               *Parx Casino*

58

## CERTIFICATIONS

In accordance with Fed. R. App. Pro. 32(a)(7)(B), I certify that the attached contains 11,413 words as calculated by the word-count feature of Microsoft Word. The text of the electronic brief and hard copies are identical. The electronic brief has been checked for viruses using Apple MacOS XProtect.

/s George A. Bibikos
George A. Bibikos

**CERTIFICATE OF SERVICE**

I hereby certify that on February 16, 2023, I caused a copy of the

foregoing to be served via ECF on the following counsel of record:

Robert S. Tintner, Esq.
Peter C. Buckley, Esq.
Abraham C. Reich, Esq.
Fox Rothschild LLP
2000 Market St., 10th Floor
Philadelphia, PA 19103
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
areich@foxrothschild.com
*Counsel for Eckert, Seamans, Cherin & Mellot, LLC*

George W. Westervelt, Jr., Esq.
706 Monroe St
P.O. Box 549
Stroudsburg, PA 18360-0549
geowwest@ptd.net
*Counsel for Pace-O-Matic, Inc.*

Omobolanle A. Adeniran, Esq.
Jeffrey Jensen, Esq.
Michael Nolan, Esq.
Michael M. Sauter, Esq.
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
bola.adeniran@huschblackwell.com
jeff.jensen@huschblackwell.com
michael.martinich-sauter@huschblackwell.com
michael.nolan@huschblackwell.com
*Counsel for Pace-O-Matic, Inc.*

Dennis Whitaker, Esq.
Melissa A. Chapaska, Esq.
Hawke McKeon & Sniscak
100 North Tenth Street
Harrisburg, PA 17101
dawhitaker@hmslegal.com
machapaska@hmslegal.com
*Counsel for Hawke McKeon & Sniscak*

/s George A. Bibikos
George A. Bibikos