# IN THE UNITED STATES COURT OF APPEALS
# FOR THE THIRD CIRCUIT

---

**Nos. 22-2445, 22-2446, 22-2902, 22-2958 & 22-2959 (Consolidated)**

**Pace O Matic, Inc.**
*Appellees*
**v.**
**Eckert Seamans Cherin & Mellott LLC, et al**
*Appellants*

---

**On appeal from the United States District Court, Middle District of Pennsylvania at No. 20-292 (The Honorable Jennifer Wilson)**

---

## PRINCIPAL BRIEF OF
## APPELLANT HAWKE, MCKEON & SNISCAK, LLP

---

Dennis A. Whitaker, I.D. #53975
Melissa A. Chapaska, I.D. # 319449
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA 17101
(717) 236-1300
(717) 236-4841 (facsimile)
*Counsel for Appellant Hawke, McKeon & Sniscak, LLP*

Date: February 16, 2023

## CORPORATE DISCLOSURE

Appellant Hawke, McKeon & Sniscak, LLP ("HMS") is a limited liability partnership. HMS has no parent corporation, and no publicly held corporation owns 10% or more of its stock.

# TABLE OF CONTENTS

**CORPORATE DISCLOSURE** ...................................................................... **2**

**TABLE OF AUTHORITIES** ....................................................................... **5**

**STATEMENT OF JURISDICTION** ............................................................. **7**

**STATEMENT OF THE ISSUES** .................................................................. **9**

**STATEMENT OF RELATED CASES AND PROCEEDINGS** ..................... **10**

**STATEMENT OF THE CASE** ..................................................................... **11**

    I.     Rulings Presented for Review ................................................................ 11

    II.    Procedural History ............................................................................... 11

    III.   Statement of Facts ............................................................................... 13

**SUMMARY OF ARGUMENT** ..................................................................... **18**

**ARGUMENT** ............................................................................................... **20**

    I.     Judicial estoppel may not be applied as an exception to or waiver of the attorney-client privilege of a non-party................................................. 20

        A.    Judicial estoppel may not be used to waive the attorney-client privilege of a non-party. ................................................................... 21

        B.    Judicial estoppel is not an exception to the attorney-client privilege of a non-party. ................................................................... 22

    II.    The district court's application of judicial estoppel to bar HMS from asserting privilege claims was an abuse of discretion because HMS did not take inconsistent positions, HMS has not engaged in bad faith, and more tailored remedies exist. ...................................................... 25

A.    The statements HMS made in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx in its Petition to Intervene in the Commonwealth Court litigation are not inconsistent with Eckert's statements to the district court and as to whether Eckert has an attorney-client relationship with Parx. ........................................................................................ 26

B.    Even if the positions taken by Eckert on its relationship with Parx could be deemed inconsistent and attributed to Parx through HMS, Eckert has not prevailed on either in any court. ....... 30

C.    Neither HMS' positions on behalf of Parx nor Eckert's positions, even if deemed inconsistent, were taken in bad faith. ....... 32

D.    There are more tailored and appropriate remedies than compelling the disclosure of Parx's privileged communications. .... 34

**CONCLUSION**.................................................................................. 37

**COMBINED CERTIFICATIONS OF COUNSEL** ........................................... 38

## TABLE OF AUTHORITIES

**Cases**

*BouSamra v. Excela Health*,
210 A.3d 967 (Pa. 2019) ...................................................................................22

*C.L. Grimes v. Vitalink Communications Corp.*,
17 F.3d 1553 (3d Cir.), *cert. denied,* 513 U.S. 986 (1994) .................................20

*Chao v. Roy's Constr., Inc.*,
517 F.3d 180 (3d Cir.2008) ................................................................................25

*G–I Holdings, Inc. v. Reliance Ins. Co.*,
586 F.3d 247 (3d Cir. 2009) ................................................................. 25, 30, 34

*Haines v. Liggett Group Inc.*,
975 F.2d 81 (3d Cir. 1992) .................................................................................25

*Holt-Orsted v. City of Dickson*,
641 F.3d 230 (6th Cir. 2011) ...............................................................................8

*In re Grand Jury*,
705 F.3d 133 (3d Cir. 2012) .................................................................................8

*In re Investigating Grand Jury*,
593 A.2d 402 (Pa. 1991) ....................................................................................23

*In re O'Brien*,
188 F.3d 116 (3d Cir. 1999) ...............................................................................20

*Klein v. Stahl GMBH & Co.*,
185 F.3d 98 (3d Cir. 1999) ........................................................................... 20, 25

*Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. GMC*,
337 F.3d 314 (3d Cir. 2003) ...............................................................................25

*Levy v. Senate of Pennsylvania*,
65 A.3d 361 (Pa. 2013) .................................................................................. 24, 35

*Livingstone v. North Belle Vernon Borough*,
91 F.3d 515 (3d Cir. 1996) .................................................................................20

*Loutzenhiser v. Doddo*,
260 A.2d 745 (Pa. 1970) ....................................................................................23

*Mohawk Industries, Inc. v. Carpenter*,
  558 U.S. 100 (2009) ..................................................................................8

*Montrose Med. Group Participating Sav. Plan v. Bulger*,
  243 F.3d 773 (3d Cir. 2001) ............................................................ 20, 25

*Nationwide Mut. Ins. v. Fleming*,
  924 A.2d 1259 (Pa. Super. 2007) ...........................................................21

*Perlman v. United States*,
  247 U.S. 7 (1918) ......................................................................................7

*Pittsburgh Hist. & Landmarks Found. v. Ziegler*,
  200 A.3d 58 (Pa. 2019) ......................................................... 23, 24, 35

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
  81 F.3d 355 (3d. Cir. 1996) ....................................................................32

*Smith v. BIC Corp.*,
  869 F.2d 194 (3d Cir. 1989) .....................................................................7

*Tucker v. Fischbein*,
  237 F.3d 275 (3d Cir. 2001) ...................................................................20

*Upjohn Co. v. United States*,
  449 U.S. 383 (1981) ...............................................................................24

*Wilson v. O'Brien*,
  621 F.3d 641 (7th Cir. 2010) ....................................................................8

**Statutes**

28 U.S.C. § 1292(b) ................................................................. 7, 13, 17

28 U.S.C. § 1332 ........................................................................................7

42 Pa. C.S. § 5928 ............................................................................ 21, 22

**Rules**

Fed. R. Evid. 501 ....................................................................................21

**STATEMENT OF JURISDICTION**

The District Court had diversity jurisdiction under 28 U.S.C. § 1332. This Court has appellate jurisdiction under 28 U.S.C. § 1292(b) by virtue of this Court's order granting Hawke, McKeon & Sniscak, LLP's ("HMS") petition for appeal pursuant to 28 U.S.C. § 1292(b), (JA99-101), therefore this court exercises jurisdiction over this appeal pursuant to 28 U.S.C. § 1292(b).

Alternatively, this Court has jurisdiction over HMS's direct appeal from the district court's order pursuant to the collateral order doctrine because the July 5 Order: 1) conclusively determines that HMS must disclose Parx's privileged communications; 2) resolves issues totally separate from the merits of the case since this Court can review the question of whether Parx's privileged documents may be disclosed in discovery without reaching the merits of POM's underlying claims against Eckert; and, 3) will be effectively unreviewable after judgment because once the privileged documents are released, the issue will be mooted. *See, e.g., Smith v. BIC Corp.*, 869 F.2d 194, 198–99 (3d Cir. 1989). While orders compelling disclosure of privileged information are not generally subject to review under the collateral order doctrine, *Perlman v. United States*, 247 U.S. 7 (1918) provides a basis HMS's appeal here. Under *Perlman*, a privilege holder may immediately appeal an adverse disclosure order when the privileged information is controlled by a "disinterested third party who is likely to disclose that information rather than be

held in contempt for the sake of an immediate appeal." *In re Grand Jury*, 705 F.3d 133, 138 (3d Cir. 2012). Accordingly, *Perlman* provides the basis for HMS's appeal. The Third Circuit's decision in *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) further supports the conclusion that HMS, a non-party subpoena recipient, should likewise be entitled to appeal. *Mohawk Industries, Inc.* holds that parties may not appeal orders adverse to the attorney-client privilege, because they can vindicate their rights by appealing from the final judgment. *Id.* However, non-litigants, by contrast, cannot necessarily appeal from a final judgment. *See Holt-Orsted v. City of Dickson*, 641 F.3d 230, 238 (6th Cir. 2011) (stating that although *Mohawk Industries, Inc.* narrows *Perlman* when the privilege holder is a litigant, non-litigants do not have recourse in a final judgment) (citing *Wilson v. O'Brien*, 621 F.3d 641, 643 (7th Cir. 2010)). At a minimum, *Perlman* thus continues to afford jurisdiction in appeals by non-litigants, like HMS.

## STATEMENT OF THE ISSUES

(1)    May judicial estoppel be applied as an exception to or waiver of the attorney-client privilege of a non-party?

This issue was raised in the briefs submitted by HMS in support of HMS's appeal of the magistrate judge's February 16, 2021 Order and Memorandum, and November 16, 2021 Order and Memorandum, and was ruled on by the district court in the July 5, 2022 order. (JA102-113).

*(Suggested answer: No.)*

(2)    If judicial estoppel applies to override attorney-client privilege, did the district court abuse its discretion when it applied that doctrine to HMS even though HMS did not make any inconsistent statements in bad faith and more tailored remedies exist?

This issue was raised in the briefs submitted by HMS in support of HMS's appeal of the magistrate judge's February 16, 2021 Order and Memorandum, and November 16, 2021 Order and Memorandum, and was ruled on by the district court in the July 5, 2022 order. (JA102-113).

*(Suggested answer: Yes.)*

## STATEMENT OF RELATED CASES AND PROCEEDINGS

This case has not been before this Court previously. This Court consolidated the instant appeals at Docket Nos. 22-2445, 22-2446, 22-2902, 22-2958 & 22-2959. All appeals involve the same participants and issues. HMS is not aware of any other related cases currently pending before this Court.

## STATEMENT OF THE CASE

### I.      Rulings Presented for Review

HMS seeks review of the district court's memorandum and order, entered July 5, 2022 ("July 5 Order"), and asks this court to decide the question certified by the district court if judicial estoppel may be applied as an exception to or waiver of the attorney-client privilege of a non-party, and if judicial estoppel may be so applied, did the district court abuse its discretion in applying it to HMS.

### II.     Procedural History

Appellee (Plaintiff below) Pace-O-Matic, Inc. ("POM"), initiated action in February 2020 against Appellant (Defendant below), Eckert, Seamans Cherin & Mellot, LLC ("Eckert"), for an alleged breach of fiduciary duty. On or about June 4, 2020, POM served HMS with a subpoena commanding HMS produce certain documents and communications related to HMS's representation of Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx"). (JA327-330). By letter dated June 13, 2020, HMS timely objected to the subpoena. (JA263-265). The dispute was assigned to Magistrate Judge Joseph F. Saporito, Jr. for disposition of the motions. (JA539-568).

In December 2020, the documents at issue were provided to Magistrate Judge Saporito for *in camera* review. Magistrate Judge Saporito issued his memorandum and order on February 16, 2021 in which he concluded that judicial estoppel should

apply. (JA696-754). On March 2, 2021, Eckert, HMS, and Parx filed separate appeals of Magistrate Judge Saporito's decision, limited to his application of judicial estoppel. (JA755-763). By order dated March 6, 2021, the district court found that Magistrate Judge Saporito erred by raising the issue of judicial estoppel *sua sponte* and remanded the matter for further consideration. (JA764-775). Following briefing by the parties and an additional *in camera* review of the documents at issue, Magistrate Judge Saporito, by memorandum and order dated November 16, 2021 ("November 16 Memorandum"), again ordered release of the documents based on judicial estoppel. (JA776-818).

On November 30, 2021, HMS, Parx, and Eckert filed appeals of Magistrate Judge Saporito's decision. (JA819-827). The district court in its July 5 Order and accompanying Opinion denied HMS's appeal and affirmed Magistrate Judge Saporito's November 16, 2021 order. (JA023-037). On July 19, 2022, Eckert, Parx, and HMS sought reconsideration, or, in the alternative, certification for interlocutory appeal of the July 5 Order. (JA828-858). In addition, HMS and Parx each filed a direct appeal to this court from the July 5 Order. (JA822-827).

By order dated August 11, 2022, the district court denied HMS, Parx, and Eckert's motions for reconsideration, but certified the question of whether judicial estoppel may be applied as an exception to or waiver of the attorney-client privilege of a non-party for interlocutory appeal. (JA102-113). By order dated October 6,

2022, this Court granted HMS, Parx, and Eckert's petitions for appeal pursuant to 28 U.S.C. § 1292(b). (JA99-101).

### III. Statement of Facts

HMS is not a party to the underlying litigation pending before the district court between POM and Eckert. HMS is the law firm that represented Parx[1] and other casinos in seeking intervention in litigation POM commenced in the Commonwealth Court of Pennsylvania (the "Commonwealth Court litigation") regarding the legality under Pennsylvania law of POM's slot machine-like devices. POM seeks a declaration in the Commonwealth Court litigation that its devices are legal games of skill, not illegal gambling devices. (JA626-627).

On February 18, 2020, POM commenced the underlying action against Eckert in the district court, alleging breach of fiduciary duty because Eckert, which was representing POM in Virginia, was acting adversely to POM in Pennsylvania, including in the Commonwealth Court litigation. Among other examples, POM cited

---

[1] Eckert is Parx's usual counsel, but HMS in the person of Mr. McKeon has appeared for the Parx companies on multiple occasions for well over a decade, particularly in Pennsylvania's Commonwealth Court and Supreme Court. *See, e.g., SugarHouse HSP Gaming, L.P. v. Pennsylvania Gaming Control Board*, 162 A.3d 353 (Pa. 2017); *SugarHouse HSP Gaming, LP v. Pennsylvania Gaming Control Bd.*, 136 A.3d 457 (Pa. 2016); *Greenwood Gaming and Entertainment, Inc. v. Com., Dept. of Revenue,* 90 A.3d 699 (Pa. 2014); *Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*, 2013 WL 3984742 (Pa. Cmwlth. 2013); *Bensalem Racing Ass'n v. Pa. State Harness Racing Comm'n*, 19 A.3d 549 (Pa. Cmwlth. 2011); *Greenwood Gaming and Entertainment, Inc. v. Pennsylvania Gaming Control Bd.*, 15 A.3d 884 (Pa. 2011); (JA626-627).

in its complaint the fact that Eckert attended a hearing in the Commonwealth Court litigation in January 2020 and collaborated with HMS and the casinos' other counsel of record in opposing POM. Eckert's answer filed in March 2020 responded among other defenses that "Eckert does not represent a party adverse to POM in litigation, and POM agreed to a prospective waiver" (JA524); however, Eckert later learned in a September 2020 deposition of one Mr. Lisk, a former Eckert partner who had been representing POM in Virginia, that although Lisk told Eckert's management and its Pennsylvania lawyers who had long represented Parx in Pennsylvania that he had secured a conflict waiver from POM allowing Eckert to be adverse to POM in Pennsylvania, Lisk never actually secured the waiver. *See* (JA626-631; JA636-39).

This appeal arises from a subpoena, issued by POM to HMS in June 2020, which commands HMS to produce: (1) any document that reflects communications between HMS and Eckert relating to the Commonwealth Court cases; (2) any document HMS received from Eckert for use or reference relating to the Commonwealth Court cases; (3) any communications between HMS attorney Kevin J. McKeon or any other HMS employee and any person at Eckert relating to either the Commonwealth Court cases or the POM/Eckert litigation; and (4) any communications or documents relating to any potential or actual conflict between Eckert and POM. (JA241-245).

By letter directed to POM's counsel, HMS objected to the subpoena on the basis that, *inter alia*, the documents sought are protected by the attorney-client privilege. (JA263-265). On July 20, 2020, HMS filed a Motion for a Protective Order and/or Motion to Quash Subpoena with the district court, as well as a privilege log listing the date, sender, recipient, subject matter, and basis for privilege of each identified communication. (JA272-274). Parx and Eckert likewise submitted privilege logs in support of their respective motions seeking to protect Parx's privileged communications from disclosure.

By order issued February 16, 2021, Magistrate Judge Saporito denied motions filed by the Eckert and Parx seeking the protection of Parx's privileged communications, as well as HMS's motion for protective order, concluding *sua sponte* that the doctrine of judicial estoppel bars HMS, Parx, and Eckert from claiming attorney-client privilege protection. (JA696-754).

HMS, Parx, and Eckert all appealed to the district court which, after review, remanded to Magistrate Judge Saporito to allow for briefing on and further consideration of the judicial estoppel issue. (JA764-775). In the November 16 Memorandum, Magistrate Judge Saporito again found that Eckert was estopped from claiming attorney-client privilege protection "based on its express statements in pleadings and other papers before this court that it does not represent an adverse party, such as Parx, and it is not otherwise 'involved' in the POM Commonwealth

15

Court cases." (JA744).  The November 16 Memorandum also concluded that Parx was estopped from claiming the attorney-client privilege "based on its papers filed in the Commonwealth Court cases, in which Parx and its counsel of record there (HMS) have expressly represented that 'Eckert is not counsel in this case' and implicitly represented that Eckert played no substantial role in Parx's activities in those cases." (JA744-745).  The November 16 Memorandum further concluded that HMS was likewise estopped from making its attorney-client privilege claims, reasoning that "HMS has mischaracterized its role in the Commonwealth Court litigation as having 'step[ped] in as conflict counsel,' and it has expressly represented that the purportedly privileged documents submitted for in camera review were merely 'preparatory to Eckert handing off the Parx representation to HMS.'" *Id.*

HMS appealed Magistrate Judge Saporito's November 16, 2021 Order to the district court, arguing that judicial estoppel cannot be applied to override Parx's attorney-client privilege. (JA825-827). The district court in the July 5 Order denied HMS's appeal, affirmed Magistrate Judge Saporito's November 16, 2021 order, and required HMS to turn over Parx's attorney-client privileged documents and communications. (JA023-037). On July 19, 2022, Eckert, Parx, and HMS sought reconsideration, or, in the alternative, certification for interlocutory appeal of the July 5 Order. (JA828-858). By order dated August 11, 2022, the district court denied

16

HMS, Parx, and Eckert's motions for reconsideration, but granted the request to certify the question of whether judicial estoppel may be applied as an exception to or waiver of the attorney-client privilege of a non-party for interlocutory appeal, reasoning, *inter alia*, "that there are grounds for difference of opinion on this issue since no controlling precedent has applied judicial estoppel in this manner" and that "the law is far from clear on this issue." (JA112). This Court granted HMS, Parx, and Eckert's petitions for appeal pursuant to 28 U.S.C. § 1292(b). (JA99-101). HMS submits this brief in support of its appeal.

## SUMMARY OF ARGUMENT

The district court's July 5 Order erroneously invokes judicial estoppel against HMS, preventing HMS from asserting Parx's attorney-client privilege over the subject documents and mandating that HMS disclose to POM communications and documents protected by Parx's attorney-client privilege as a remedy for allegedly inconsistent statements. The district court erred, for two reasons.

First, the district court's application of judicial estoppel as an exception to or waiver of the attorney-client privilege of a non-party is contrary to Pennsylvania law. Under Pennsylvania law, courts can only compel disclosure of privileged communications based on waiver or a recognized exception. Waiver of the privilege can only be effectuated by the client or by virtue of disclosure to a third party. Judicial estoppel by a court in litigation to which the client is not a party is not a recognized method of waiver of the privilege. Nor is judicial estoppel a recognized exception to the attorney-client privilege. The application of judicial estoppel as an exception to attorney-client privilege is contrary to  Pennsylvania law because it eliminates the necessary predictability of the privilege and is contrary to the purpose and policy of attorney-client privilege protection. The district court's application of judicial estoppel to compel HMS's disclosure of Parx's privileged communications as a sanction is clear legal error.

Second, even if Pennsylvania law permitted invocation of judicial estoppel as an exception to or waiver of the attorney-client privilege of a non-party, the district court abused its discretion in applying judicial estoppel under the facts and circumstances here. HMS did not take inconsistent positions and did not prevail on the positions it took. Moreover, even if HMS had taken inconsistent positions, more appropriate and tailored sanctions exist that would avoid the release of Parx's privileged communications directed by the July 5, 2022 Order.

HMS respectfully asks the Court to reverse the July 5 Order on the basis that the district court erred in applying judicial estoppel as an exception to or waiver of the attorney-client privilege of a non-party in contravention of Pennsylvania law, or in the alternative, because the district court's application of judicial estoppel to bar HMS from asserting attorney-client privilege claims on behalf of Parx is an abuse of discretion.

**ARGUMENT**

*Standard of review:*

This Court exercises plenary review over a discovery order regarding claims of attorney-client privilege. *Tucker v. Fischbein*, 237 F.3d 275, 288 (3d Cir. 2001) (citing *Livingstone v. North Belle Vernon Borough*, 91 F.3d 515, 524 (3d Cir. 1996)). The district court's application and interpretation of state law is subject to plenary review. *C.L. Grimes v. Vitalink Communications Corp.,* 17 F.3d 1553, 1557 (3d Cir.), *cert. denied,* 513 U.S. 986 (1994).

The application of judicial estoppel is reviewed for an abuse of discretion. *Klein v. Stahl GMBH & Co.*, 185 F.3d 98, 108 (3d Cir. 1999). "[A] court 'abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts[.]'" *Montrose Med. Group Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001) (quoting *In re O'Brien*, 188 F.3d 116, 125 (3d Cir. 1999)).

## I.   Judicial estoppel may not be applied as an exception to or waiver of the attorney-client privilege of a non-party.

The July 5, 2022 order compels HMS to disclose Parx's privileged communications based on the magistrate judge's finding that the parties took inconsistent positions in defending POM's lawsuit against Eckert and in litigating the present discovery dispute. See (JA31-34; JA802-803). In so holding, the district court did not address the threshold question of whether the application of judicial estoppel can operate as an exception to or waiver of the attorney-client privilege

20

under Pennsylvania law even though, as the district court recognized, "no controlling precedent has applied judicial estoppel in this manner." (JA112 (citations omitted)).

Pennsylvania law provides that:

> In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client.

42 Pa. C.S. § 5928. Under Pennsylvania law, courts can only compel disclosure of privileged communications based on waiver or a recognized exception. *See* Fed. R. Evid. 501; *see also, Nationwide Mut. Ins. v. Fleming*, 924 A.2d 1259, 1264 (Pa. Super. 2007).

Had the district court looked to state law for the applicable legal principles on issues of privilege, as it was required to do in this diversity jurisdiction case, *see* Fed. R. Evid. 501, it would have been constrained to conclude that judicial estoppel cannot be used to waive a client's claim of privilege and is not a recognized exception to attorney-client privilege under Pennsylvania law.

### A. Judicial estoppel may not be used to waive the attorney-client privilege of a non-party.

This case does not implicate waiver of the attorney-client privilege, except to the extent the district court deemed the application of judicial estoppel to have constituted a waiver of Parx's confidential privilege. The issue of waiver of the

21

attorney-client privilege was not raised before the district court. The communications at issue reflect communications among Parx, HMS, and Eckert for purposes of providing legal services and advice to Parx related to the Commonwealth Court litigation, and are therefore privileged. Pennsylvania law is clear that a waiver of privilege can only be effectuated "by the client," 42 Pa. C.S. § 5928, or as the result of the disclosure of privileged communications to a third party, *see BouSamra v. Excela Health*, 210 A.3d 967, 977 (Pa. 2019). Parx, the client, has asserted and has not waived its privilege as to these communications, and there is no basis in the record to find that the privileged communications at issue were disclosed to a third party.  Therefore, privilege has not been waived, and the district court's application of judicial estoppel cannot operate as a waiver of Parx's claim of attorney-client privilege.

### B.    Judicial estoppel is not an exception to the attorney-client privilege of a non-party.

The district court's application of judicial estoppel to override the attorney-client privilege is contrary to Pennsylvania law, and the policy and purpose of attorney-client privilege protection.

Judicial estoppel is not a recognized exception to attorney-client privilege under Pennsylvania law. Pennsylvania law recognizes several exceptions to the privilege, including the crime-fraud exception, the defense of the attorney's integrity

22

or competence exception, the fiduciary exception, and the joint representation/common interest exception. Under the crime-fraud exception, communications between attorney and client are not privileged when the advice of counsel is sought in furtherance of the commission of criminal or fraudulent activity. *See In re Investigating Grand Jury*, 593 A.2d 402, 406–07 (Pa. 1991). In circumstances in which an attorney's integrity is questioned, there is an exception to allow disclosure of communications between the attorney and client to allow the attorney to rebut "the client's attack on his integrity or professional competence." *Loutzenhiser v. Doddo*, 260 A.2d 745, 748 (Pa. 1970). The fiduciary exception provides that "the attorney-client privilege cannot be invoked by a trustee of a trust against the beneficiary of a trust where the legal advice was obtained to guide trust management, given that trustees are tasked with providing beneficiaries with information regarding the management of the trust." *Pittsburgh Hist. & Landmarks Found. v. Ziegler*, 200 A.3d 58, 61 n.2 (Pa. 2019). Finally, the joint representation/common interest exception provides that "the attorney-client privilege cannot be invoked by one client against another client where the clients have been represented jointly by an attorney or where the clients have pursued a common defense through separate counsel." *Id.* No Pennsylvania court has recognized judicial estoppel as an exception to attorney-client privilege, none of

23

these exceptions was raised below, and judicial estoppel is not captured by any of the above recognized exceptions.

Moreover, the application of judicial estoppel as an exception to attorney-client privilege is inconsistent with Pennsylvania law because it eliminates the necessary predictability of the privilege. *See Ziegler*, 200 A.3d at 60 (refusing to adopt the Fifth Circuit's qualified attorney-client privilege exception as inconsistent with Pennsylvania law, recognizing that Pennsylvania case law "emphasiz[es] predictability in the application of the attorney-client privilege."). To find that judicial estoppel could be used to sanction a party by compelling the production of a non-party client's privileged communications would require attorneys and clients to speculate whether a court in the future may order disclosure of their privileged communications as a sanction in a future litigation to which neither is a party. Such uncertainty runs counter to the attorney-client's privilege's goals, which require that "the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected." *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 371 (Pa. 2013) (quoting *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981)) ("[a]n uncertain privilege ... is little better than no privilege at all.").

In short, the district court's invocation of the extraordinary remedy of judicial estoppel as a basis for compelling HMS to reveal privileged communications with its client Parx as punishment for HMS's allegedly inconsistent statements is contrary

24

to Pennsylvania law. Attorney-client communications are "[w]orthy of maximum protection." *Haines v. Liggett Group Inc.*, 975 F.2d 81, 90 (3d Cir. 1992).

> **II.     The district court's application of judicial estoppel to bar HMS from asserting privilege claims was an abuse of discretion because HMS did not take inconsistent positions, HMS has not engaged in bad faith, and more tailored remedies exist.**

"Judicial estoppel 'is often the harshest remedy' that a court can impose for inequitable conduct" and is to be reserved for the most egregious cases. *Montrose*, 243 F.3d at 784 (quoting *Klein*, 185 F.3d at 108, 110*); see Krystal Cadillac–Oldsmobile GMC Truck, Inc. v. GMC*, 337 F.3d 314, 324 (3d Cir. 2003). Judicial estoppel "is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G–I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009). To apply judicial estoppel against a party, a court must find that the party (1) adopted "irreconcilably inconsistent positions;" (2) "in bad faith;" and (3) a showing that estoppel addresses the harm and "no lesser sanction [is] sufficient.'" *G-I Holdings, Inc.,* 586 F.3d at 262 (quoting *Chao v. Roy's Constr., Inc.*, 517 F.3d 180, 186 n. 5 (3d Cir.2008)). Additionally, "judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *Id.*

Had the district court given any consideration to the substance of Magistrate Judge Saporito's findings as to HMS, it would have found that (1) the statements HMS made in Commonwealth Court in response to POM's motion to disqualify

HMS from representing Parx in its Petition to Intervene in the Commonwealth Court litigation are not inconsistent with Eckert's statements to this court as to whether Eckert has an attorney-client relationship with Parx; even if the positions taken on the issue by Eckert could be deemed inconsistent and attributed to HMS, Eckert has not prevailed on either; (2) neither HMS' positions nor Eckert's positions, even if deemed inconsistent, were taken in bad faith; and (3) POM will not be harmed if the privilege is sustained and more tailored remedies exist.

**A. The statements HMS made in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx in its Petition to Intervene in the Commonwealth Court litigation are not inconsistent with Eckert's statements to the district court and as to whether Eckert has an attorney-client relationship with Parx.**

Magistrate Judge Saporito's conclusion that HMS made representations in Commonwealth Court in response to POM's motion to disqualify HMS from representing Parx that are inconsistent with representations Eckert made to the district court is unsupportable. *See* (JA802-803).[2] In finding that HMS be estopped from asserting privilege claims Magistrate Judge Saporito reasoned that: "in papers filed in this case, HMS has mischaracterized its role in the Commonwealth Court litigation as having 'step[ped] in as conflict counsel,' and it has expressly

---

[2] The district court affirmed Magistrate Judge Saporito's conclusions without discussion as to HMS. *See* (JA31-34).

26

represented that the purportedly privileged documents submitted for *in camera* review were merely 'preparatory to Eckert handing off the Parx representation to HMS.'" (JA803). The record before the district court does not support this finding of inconsistency.

First, Eckert never made inconsistent statements. When Eckert stated in pleadings that it did "not represent a party adverse to POM in litigation," that it "is not counsel in any litigation where POM is an adverse party," and that Eckert "is not involved in [POM's Commonwealth Court] case," *see* (JA510), Eckert was *not* telling the district court that it was not involved at all.  Indeed, POM and everyone else involved has known since before POM filed its complaint in the district court that Eckert continued to be involved representing Parx in matters adverse to POM, but that Eckert did not enter its appearance in the Commonwealth Court litigation on behalf of Parx. After all, Eckert's behind-the-scenes involvement in the Commonwealth Court litigation was specifically called out in POM's complaint in the district court. (JA481-495). Accordingly, Eckert's statements that it did not represent a party adverse to POM in litigation was not an attempt to mislead, but instead highlighted a crucial distinction – because Eckert was still representing Parx in an advisory role, Eckert's communications in that advisory role were privileged in that Eckert and Parx had a continuing attorney client relationship. Given this context, Eckert's statements cannot be viewed as an attempt at subterfuge, and its

statements are not irreconcilable. The statement that Eckert did not enter its appearance on behalf of Parx in the Commonwealth Court litigation is fully consistent with Eckert's assertion that its communications with Parx concerning the Commonwealth Court litigation are protected by the attorney client privilege.

Second, HMS made no inconsistent statements. As to the Commonwealth Court litigation, Magistrate Judge Saporito found that "Parx and its counsel of record there (HMS) have expressly represented that 'Eckert is not counsel in this case' and implicitly represented that Eckert played no substantial role in Parx's activities in those cases." (JA803). But the evidence demonstrates that HMS was transparent with the Commonwealth Court concerning Eckert's role. In defending against POM's attempt to disqualify HMS in Commonwealth Court, HMS expressly represented that Eckert, while not counsel of record, had significant involvement as part of the lawyer group representing Parx and the other casinos seeking to intervene in developing strategy and even writing the first drafts of pleadings:

> *Although Eckert did not sign the amicus brief filed in this case in December 2019 or otherwise enter its appearance* in this case, Mr. Stewart and Eckert believed in December 2019 and continued to believe thereafter that Eckert had obtained a conflict waiver from POM. Accordingly, *Eckert continued to participate in the casino group that was addressing POM's illegal slot machines in Pennsylvania, and assisted in creating first drafts of filings or editing the first drafts created by other casino group lawyers for filings in this case.* It was not until September

28

> 2020, that Eckert learned definitively in a deposition of Mr. Lisk, the former Eckert partner who represented POM in the Commonwealth of Virginia, that although Mr. Lisk had represented to Mr. Stewart and others at Eckert that POM had given a conflict waiver, POM had not given a conflict waiver.

(JA617 (Answer to POM Application to Disqualify, filed in Pennsylvania Commonwealth Court) (emphasis added)).

Contrary to Magistrate Judge Saporito's conclusion, the statement that "Eckert is not counsel in this [*i.e.*, the Commonwealth Court] case" is merely a statement of objective fact – Eckert did not enter an appearance. HMS's explanation of Eckert's role in the litigation, however, can only be seen as a frank acknowledgement of Eckert's substantial involvement, not an "implicit representation" to the contrary. Thus, there is no inconsistency in HMS's representations on behalf of Parx to the Commonwealth Court about Eckert's role as one of the lawyers advising Parx and the other casinos, on one hand, and the assertion of attorney-client privilege in this court as to communications among Parx and its lawyers, on the other.

Contrary to the magistrate judge's conclusion, references to "conflict counsel" on the record, while perhaps inartfully stated, were meant only to convey the general idea that Eckert chose to not be a signatory to the amicus brief because of its awareness of POM's allegation of a conflict, resulting in a larger litigation role for

HMS. Read through a lens not predisposed to find a basis for judicial estoppel, the statements cited in the November 16 Memorandum convey exactly the opposite of the conclusion erroneously drawn. The statements are not inconsistent with the idea that Eckert, Ballard and HMS were working together and that upon becoming aware of the conflict Eckert handed off representation as counsel of record to Ballard and HMS.

> **B.** **Even if the positions taken by Eckert on its relationship with Parx could be deemed inconsistent and attributed to Parx through HMS, Eckert has not prevailed on either in any court.**

Even if HMS had taken an inconsistent position in responding to POM's application to disqualify HMS in the Commonwealth Court litigation (it did not) HMS did not prevail.[3] "[J]udicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." *G-I Holdings* at 262. As described above, it should be clear that Eckert, and Parx through HMS, did not mislead this court or the Commonwealth Court and never intended to do so. Hence Magistrate Judge Saporito's finding of bad faith lacks any basis in fact or in law, and the exception to the rules stated above does not apply here.

---

[3] The Commonwealth Court deemed POM's motion to disqualify HMS to be moot because HMS withdrew as counsel in the case.

30

To the extent the district court held Parx and HMS accountable for the perceived infractions of Eckert, there is no inconsistency, and even if there were, Eckert has not to date prevailed on the merits. As to consistency, Eckert correctly stated in pleadings in this case that "Eckert does not represent a party adverse to POM in litigation." (JA503 at ¶ 18). Parx was not at the time, and has not yet, been granted status as a "party" in the Commonwealth Court litigation; Eckert has never entered an appearance on behalf of Parx in that litigation. Moreover, at argument before Magistrate Judge Saporito in this discovery dispute, Eckert conceded that Eckert was part of the attorney group advising the casinos adverse to POM, based on the belief as of the time of that representation in late 2019 and early 2020 that POM had waived any associated conflict. (JA605-606). As to Eckert having already prevailed on the merits against POM in this proceeding by taking a position contrary to the position it has taken in the present discovery dispute, Eckert has not prevailed. The present status is that Eckert has now acknowledged that, contrary to Mr. Stewart's and Eckert's leadership's understanding that former Eckert partner Lisk had obtained an informed, advanced conflict waiver that consented to Eckert representing clients in matters adverse to POM in Pennsylvania, Mr. Lisk did not actually discuss a conflict waiver with POM.  (JA185-187). Contrary to the district court's conclusion, Eckert's mistake cannot support a finding of judicial estoppel. *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.,* 81 F.3d 355, 362 (3d. Cir.

1996) ("[T]he doctrine of judicial estoppel does not apply 'when the prior position was taken because of a good faith mistake rather than as a part of a scheme to mislead the court.'").

### C. Neither HMS' positions on behalf of Parx nor Eckert's positions, even if deemed inconsistent, were taken in bad faith.

There is zero basis to conclude that Eckert took contrary positions in bad faith, or that HMS through its representation of Parx in Commonwealth Court "aided and abetted" a fraud on the court. Indeed, the record demonstrates the opposite – that HMS's positions asserted on behalf of Parx, and its representation of Eckert's role in pleadings to the Commonwealth Court were in fact made in good faith. During the entire time the emails and other communications Magistrate Judge Saporito cites were exchanged, HMS had a good faith belief that Eckert had obtained the appropriate waivers to allow Eckert to take positions adverse to POM in Pennsylvania, and had chosen to do so through the casino lawyer group rather than on-the-record representation. Moreover, HMS candidly disclosed to the Commonwealth Court Eckert's substantial ongoing involvement in the casino lawyer group during late December 2019 and into 2020. POM's unsolicited letter to the court, the basis for the incorrect conclusions about HMS's inconsistency of positions vis-à-vis Eckert, provides insight into HMS's good faith in working with Eckert as part of the lawyer group representing Parx and the other casinos. *See*

(JA481-495). Mr. McKeon's declaration filed in opposition to POM's application to

disqualify HMS in the Commonwealth Court litigation states:

> Mr. Stewart represented to me in December 2019 and
> again in February 2020 after POM sued Eckert in federal
> district court, that Mr. Stewart (a) believed Eckert had
> obtained a conflict waiver from POM concerning Eckert's
> anticipated adverse representation against POM's interests
> in Pennsylvania, and (b) that Mr. Stewart had no access to
> any information that Eckert lawyers representing POM in
> the Commonwealth of Virginia may have obtained. He
> stated that Eckert had a conflict screen in place between
> its lawyers working on POM's matters in Virginia and Mr.
> Stewart and other Eckert lawyers working on Parx matters,
> such that neither the Eckert POM lawyers nor the Eckert
> Parx lawyers had access to their respective clients'
> information.

(JA630 at ¶ 12); *see* (JA626-629 at ¶¶ 1-11 (explaining background of HMS

involvement in the Commonwealth Court litigation)); (JA689-695 (HMS's

Response to POM's Letter to the Court)). Similarly, the HMS's pleading to which

the declaration is attached candidly admits Eckert's involvement. (JA613-621).

Again, to the extent the district court attributes vicarious liability to HMS and

thus Parx for the perceived arguable bad faith of Eckert, the declarations and

evidence on the record make it clear that Eckert was acting in good faith. Mr. Stewart

and Eckert's leadership reasonably believed that former Eckert partner Lisk had

obtained an informed, advanced conflict waiver that consented to Eckert

representing clients in matters adverse to POM in Pennsylvania and did not learn to

the contrary that Mr. Lisk never actually discussed a conflict waiver with POM until

Lisk's deposition in September 2020. (JA636-39). For the district court to find that

both HMS and Eckert made inconsistent statements in bad faith was an abuse of

discretion.

### D. There are more tailored and appropriate remedies than compelling the disclosure of Parx's privileged communications.

The third element of judicial estoppel requires a showing that "estoppel ...

address[es] the harm and ... no lesser sanction [is] sufficient.' *G-I Holdings* at 262.

The district court reasoned that "only two feasible alternatives … might address the

harm to POM (1) To enter default judgment against Eckert; or (2) To judicially estop

Eckert from denying POM's allegation that it has represented a party adverse to

POM in litigation." (JA129). However, the district court concluded that "neither of

these alternatives is a lesser sanction; either would be categorically determinative of

the outcome on the merits of this litigation." *Id*. The district court's reasoning fails.

While the alternatives identified by the district court may not be a "lesser sanction"

for Eckert, that is certainly not true for HMS or Parx, and there are certainly more

tailored remedies that would avoid punishing HMS and Parx for Eckert's

wrongdoing.

34

Here, POM seeks "information and documents reflecting communications concerning the Commonwealth Court cases exchanged between Eckert" and HMS in order to prove that Eckert was involved in activities adverse to POM in Pennsylvania. Eckert has conceded that it was involved in such activities, however, has explained why it reasonably believed Eckert was permitted to do so because of waivers Mr. Lisk told his former partners POM had provided, and has represented that its actions adverse to POM's interests in Pennsylvania have ceased. (JA636-639). Given this, even assuming that other elements that give rise to judicial estoppel were present here (they are not), compelling disclosure of documents protected by the attorney-client privilege is neither necessary nor appropriate. In support of the application of judicial estoppel instead of a more tailored remedy, the district court reasoned that "[f]orcing POM to rely only on privilege logs to litigate this case would be akin to asking counsel to litigate the central issue in this case blindfolded." (JA128). Not so. As Pennsylvania courts have aptly reasoned, "application of the attorney-client privilege does not actually result in the loss of evidence in the truth-determining process because 'the client would not have written or uttered the words absent the safeguards of the attorney-client privilege.'" *Ziegler*, 200 A.3d at 80 (quoting *Levy*, 65 A.3d at 371). However, disclosure will disadvantage Parx, allowing POM to rummage through privileged communications, allegedly to prove a point that is no longer contested, while improperly advantaging POM by providing

it access to Parx's privileged documents that would prove useful to POM in its Commonwealth Court litigation. The district court's invocation of judicial estoppel to destroy Parx's right to attorney-client privilege protection when other more tailored remedies exist is a clear abuse of discretion.

**CONCLUSION**

For these reasons, HMS respectfully requests this Court reverse the July 5, 2022 order of the district court on the basis that judicial estoppel may not be applied as an exception to or waiver of the attorney-client privilege of a non-party, or in the alternative, because the district court's application of judicial estoppel to bar HMS from asserting attorney-client privilege claims on behalf of Parx is an abuse of discretion.

Respectfully submitted,

*/s/ Dennis A. Whitaker*
Dennis A. Whitaker, I.D. #53975
Melissa A. Chapaska, I.D. # 319449
Hawke McKeon & Sniscak, LLP
100 North Tenth Street
Harrisburg, PA  17101
(717) 236-1300
(717) 236-4841(fax)
dawhitaker@hmslegal.com
machapaska@hmslegal.com

*Counsel for Appellant Hawke, McKeon & Sniscak, LLP*

**Combined Certifications of Counsel**

1. <u>Bar Membership:</u> The undersigned certifies that Dennis A. Whitaker and Melissa A. Chapaska are members of the bar of this Court.

2. <u>Word Count:</u> The undersigned certifies that the foregoing brief uses a proportionally spaced, 14-point Times New Roman typeface, and that the text of the brief contains 6,416 words according to the word count provided by Microsoft Word.

3. <u>Service:</u> The undersigned certifies that the foregoing brief was served by the Court's electronic filing system on the date below on all counsel of record in this case.

4. <u>Identical Text:</u> The undersigned certifies that the text of the electronically-filed brief is identical to the text of the 7 hard copies that will be delivered within 5 days of this electronic filing to the Clerk of the Court.

5. <u>Virus Check:</u> The undersigned certifies that he caused virus detection to be performed on the electronically-filed copy of this brief using ESET NOD32 Antivirus and that no virus was detected.

*/s/ Dennis A. Whitaker*

Dated: February 16, 2023