# In the United States Court of Appeals for the Third Circuit

Case Nos. 22-2445, 22-2446, 22-2902, 22-2958 & 22-2959

———————————

PACE-O-MATIC, INC.,

*Plaintiff-Respondent*,

— v. —

ECKERT SEAMANS CHERIN & MELLOTT, LLC,
MARK S. STEWART, AND KEVIN M. SKJOLDAL,

*Defendants-Appellants*.

———————————

On Appeal from July 5, 2022 Order of the United States District Court
for the Middle District of Pennsylvania, at Case No. 1:20-cv-00292, as certified by
the District Court on August 11, 2022, with permission granted on October 6, 2022

**BRIEF FOR DEFENDANTS-APPELLANTS,
ECKERT SEAMANS CHERIN & MELLOTT, LLC, MARK S.
STEWART, AND KEVIN M. SKJOLDAL**

ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2766/2854 (telephone)
(215) 299-2150 (facsimile)

*Counsel for Defendants-Appellants Eckert Seamans Cherin & Mellot, LLC,
Mark S. Stewart, and Kevin M. Skjoldal*

Dated:  February 16, 2023

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................iv

STATEMENT OF JURISDICTION................................................................. 1

STATEMENT OF THE ISSUES......................................................................... 2

STATEMENT OF RELATED CASES ................................................................ 5

STATEMENT OF THE CASE............................................................................ 6

I.      ECKERT REPRESENTS POM IN VIRGINIA PURSUANT TO AN
        ADVANCE CONFLICT WAIVER ................................................... 9

II.     POM SUES ECKERT FOR BREACH OF FIDUCIARY DUTY .............. 10

III.    IN DISCOVERY, POM PURSUES PRIVILEGED ATTORNEY-
        CLIENT COMMUNICATIONS BETWEEN ECKERT AND ITS NON-
        PARTY CLIENT, PARX. ............................................................. 11

IV.     ECKERT, PARX, AND HMS APPEAL THE JULY 5 ORDER ................ 16

SUMMARY OF THE ARGUMENT .................................................................. 17

ARGUMENT .................................................................................................. 19

I.      THE DISTRICT COURT ERRED BY CRAFTING A NOVEL AND
        ERRONEOUS LEGAL RULE PERMITTING JUDICIAL ESTOPPEL
        TO BE INVOKED TO NULLIFY THE ATTORNEY-CLIENT
        PRIVILEGE HELD BY A NON-PARTY. ................................................ 19

        A.      Standard of Review ........................................................... 19

        B.      The Law Affords Zealous Protection to Privileged
                Communications Between a Client and Counsel, and Courts
                Narrowly Construe Implied Waivers of that Privilege. ..................... 19

        C.      Judicial Estoppel Is an Extraordinary Remedy to Be Used
                Sparingly. ................................................................. 21

        D.      The District Court Violated This Court's Cautionary Principles
                and Instead Crafted an Unprecedented Legal Rule that Weakens

the Protections Afforded by the Attorney-Client Privilege and Expands the Scope of Judicial Estoppel..............................................21

II.    THE DISTRICT COURT ABUSED ITS DISCRETION BY APPLYING THE DOCTRINE OF JUDICIAL ESTOPPEL TO OVERRIDE THE ATTORNEY-CLIENT PRIVILEGE OF A NON-PARTY NOTWITHSTANDING THAT NO COURT HAD EVER ACCEPTED ANY OF THE PURPORTEDLY INCONSISTENT STATEMENTS AT ISSUE...................................................................25

    A.    Standard of Review .........................................................25

    B.    Numerous Decisions from This Court Have Refused to Apply Judicial Estoppel on the Grounds that the Earlier of the Purportedly Inconsistent Statements at Issue Was Not Accepted by a Court. .........................................................26

    C.    Because No Court Ever Accepted Any of the Purportedly Inconsistent Statements at Issue, the District Court Abused Its Discretion by Applying the Doctrine of Judicial Estoppel to Override the Attorney-Client Privilege of Parx, a Non-Party............29

III.    THE DISTRICT COURT ABUSED ITS DISCRETION BY APPLYING THE DOCTRINE OF JUDICIAL ESTOPPEL TO OVERRIDE THE ATTORNEY-CLIENT PRIVILEGE OF A NON-PARTY NOTWITHSTANDING THAT MORE TAILORED REMEDIES WERE AVAILABLE TO IT...................................................32

    A.    Application of Judicial Estoppel Is Appropriate Only Where Its Use Is Tailored to Address the Purported Harm Caused by the Estopped Party and No Lesser Sanction Would Be an Adequate Remedy.........................................................32

    B.    Because More Tailored Remedies Were Available, Including Sanctions that Would Not Primarily and Disproportionately Penalize the Non-Party Privilege Holder, the District Court Abused Its Discretion by Applying the Doctrine of Judicial Estoppel to Override the Attorney-Client Privilege of Parx, a Non-Party. .........................................................33

CONCLUSION .......................................................................38

ii

CERTIFICATE OF COMPLIANCE ................................................................... 39

CERTIFICATES OF BAR MEMBERSHIP ......................................................... 40

CERTIFICATE OF SERVICE ............................................................................ 41

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ahdab v. Gonzales*,
  189 F. App'x 73 (3d Cir. 2006) ........................................................19

*Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*,
  910 F.2d 1540 (7th Cir. 1990) .......................................27, 35, 36, 37

*BouSamra v. Excela Health*,
  653 Pa. 365 (2019)........................................................................24

*Cedrone v. Unity Sav. Ass'n*,
  103 F.R.D. 423 (E.D. Pa. 1984)......................................................20

*Chao v. Roy's Constr., Inc.*,
  517 F.3d 180 (3d Cir. 2008) ..........................................................28

*Chore-Time Equip., Inc. v. Big Dutchman, Inc.*,
  255 F. Supp. 1020 (W.D. Mich. 1966) ............................................19

*Danise v. Saxon Mortg. Servs. Inc.*,
  738 F. App'x 47 (3d Cir. 2018) .................................................24, 25

*G-I Holdings, Inc. v. Reliance Ins. Co.*,
  586 F.3d 247 (3d Cir. 2009), *as amended* (Dec. 4, 2009) ..........*passim*

*Haines v. Liggett Grp. Inc.*,
  975 F.2d 81 (3d Cir. 1992), *as amended* (Sept. 17, 1992) ..........20, 22

*Klein v. Stahl GMBH & Co. Maschinefabrik*,
  185 F.3d 98 (3d Cir. 1999) ........................................................*passim*

*Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*,
  337 F.3d 314 (3d Cir. 2003) ...........................................21, 22, 23, 30

*Mahmood v. Narciso*,
  549 F. App'x 99 (3d Cir. 2013) ......................................................25

*Maxus Liquidating Tr. v. YPF S.A.* (*In re Maxus Energy Corp.*),
No. 16-11501 (CTG), 2022 WL 17169282 (Bankr. D. Del. Nov.
22, 2022) .................................................................................................20

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*,
243 F.3d 773 (3d Cir. 2001) ...........................................................*passim*

*New Hampshire v. Maine*,
532 U.S. 742 (2001)................................................................................24, 26

*Nupson v. Schnader Harrison Segal & Lewis LLP*,
No. 18-CV-2505, 2021 WL 1293557 (E.D. Pa. Apr. 7, 2021)...................20, 22

*Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*,
No. 1:20-cv-00292-JPW (M.D. Pa., filed Feb. 18, 2020) .................................5

*POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania,
Department of Revenue, and City of Philadelphia*,
No. 418 MD 2018 (Pa. Commw. Ct., filed June 8, 2018)................................5

*POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of
Liquor Control Enforcement*,
503 MD 2018 (Pa. Commw. Ct., filed July 20, 2018) .......................................5

*Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*,
81 F.3d 355 (3d Cir. 1996) ...........................................................*passim*

*Scarano v. Cent. R. Co. of N. J.*,
203 F.2d 510 (3d Cir. 1953) ................................................................27, 29

*In re Sealed Case*,
107 F.3d 46 (D.C. Cir. 1997)....................................................................24

*Stone Hedge Properties v. Phoenix Capital Corp.* (*In re Stone Hedge
Properties*),
191 B.R. 59 (Bankr. M.D. Pa. 1995) ........................................................36, 37

*Sullivan v. Borough of Atl. City Highlands*,
Civil Action No. 19-19510(MAS)(ZNQ), 2020 WL 6525465
(D.N.J. Nov. 5, 2020)..............................................................................27

*In re Teleglobe Commc'ns Corp.*,
493 F.3d 345 (3d Cir. 2007), *as amended* (Oct. 12, 2007)...............9, 10, 20, 22

*Troll Co. ApS, v. Russ Berrie & Co., Inc.*,
 290 F.3d 548 (3d Cir. 2002) .......................................................................22, 27, 29

*U.S. v. Kepner*,
 843 F.2d 755 (3d Cir. 1988) ......................................................................36

*United States v. Jicarilla Apache Nation*,
 564 U.S. 162 (2011)...................................................................................23

*United States v. Pelullo*,
 399 F.3d 197 (3d Cir. 2005), *as amended* (Mar. 8, 2005)..........................27, 29

*United States v. Soto-Beniquez*,
 356 F.3d 1 (1st Cir. 2003)..........................................................................25, 30

*Upjohn Co. v. United States*,
 449 U.S. 383 (1981) ...................................................................................9, 23

**Statutes**

28 U.S.C. § 1292(b) ........................................................................................2, 15, 16

28 U.S.C. §1332(a)(1)......................................................................................1

**Other Authorities**

Fed. R. App. P. 26(a)(1)(C) .............................................................................2

M.D. Pa. L.R. 16.3 ..........................................................................................13

**STATEMENT OF JURISDICTION**

Plaintiff-Appellee, Pace-O-Matic, Inc. ("POM"), alleges that it is "a corporation organized and existing under the laws of the State of Wyoming with a principal place of business [in] Georgia."   JA159.[1]   Defendant-Appellant Eckert Seamans Cherin & Mellott, LLC is a limited liability company organized and existing under the laws of the Commonwealth of Pennsylvania with a principal place of business in Pennsylvania.  *Id*.  Defendants-Appellants Mark S. Stewart and Kevin M. Skjoldal (individually, "Stewart" and "Skjoldal" but collectively with Eckert Seamans Cherin & Mellott, LLC, "Eckert") are residents of the Commonwealth of Pennsylvania.  JA160.  POM alleges that the District Court has jurisdiction over POM's suit against Eckert pursuant to 28 U.S.C. §1332(a)(1) because "the amount in controversy exceeds the sum of $75,000 exclusive of interest and costs" and because "this action is between citizens of different states."  *Id*.

On July 5, 2022, the District Court entered an Order and a Memorandum (JA039 and JA023; collectively, the "July 5 Order") requiring Eckert and non-party

---

[1] "JA" refers to the Joint Appendix filed on February 15, 2023.  Within each citation to the Joint Appendix, the number of the page cited follows the "JA" prefix.

Citations to "DE:x:y" or "DE:x, ¶ z" refer to entries on the district court docket— "x" refers to the number of the docket entry in question, "y" refers to the relevant page number identified in the stamped ECF line at the top of that filing, and "z" refers to the relevant paragraph within the filing.

Hawke McKeon & Sniscak LLP ("HMS") to produce to POM certain privileged communications exchanged between Eckert and/or HMS, on one hand, and non-party Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino ("Parx"), on the other. JA023; JA036; JA039. On July 19, 2022, Eckert moved for reconsideration of the July 5 Order, or, alternatively, for certification of the July 5 Order pursuant to 28 U.S.C. § 1292(b). JA849.

On August 11, 2022, the District Court issued an order certifying the July 5 Order for immediate interlocutory appeal pursuant to 28 U.S.C. § 1292(b) but denied reconsideration. JA113.

On August 22, 2022, Eckert timely filed with this Court a petition for permission to appeal the District Court's July 5 Order pursuant to 28 U.S.C. § 1292(b).[2] JA041. On October 6, 2022, this Court granted Eckert's petition. JA100. This Court has jurisdiction to review the District Court's July 5 Order under 28 U.S.C. § 1292(b).

<b><u>STATEMENT OF THE ISSUES</u></b>

1.     Whether the District Court erred by crafting a novel legal rule permitting the doctrine of judicial estoppel to be invoked to nullify the attorney-

---

[2] August 21, 2022 was a Sunday. Accordingly, pursuant to Federal Rule of Appellate Procedure 26(a)(1)(C), Eckert's petition was timely filed on Monday, August 22, 2022.

client privilege held by a non-party—specifically, by requiring the disclosure of the non-party's privileged communications with a party in the case.

Raised:  Eckert raised and preserved this issue in Eckert's Brief in Support of Its Appeal of Judge Saporito's February 16, 2021 Order and Memorandum, DE:94:2, and in Eckert's Brief in Support of Its Appeal of Judge Saporito's November 16, 2021 Order and Memorandum.  DE:169:2.

Ruled Upon:  The District Court ruled on this issue in its July 5 Order.  JA013-19.

2.     Whether the District Court abused its discretion by applying the doctrine of judicial estoppel to override the attorney-client privilege of a non-party notwithstanding that no court had *ever* accepted any of the purportedly inconsistent statements at issue.

Raised:  Eckert raised and preserved this issue in Eckert's Brief in Support of Its Appeal of Judge Saporito's February 16, 2021 Order and Memorandum, DE:94:10; in Eckert's Brief on Judicial Estoppel Issue Concerning Judge Saporito's February 16, 2021 Order and Memorandum, DE:129:9-11; and in Eckert's Brief in Support of Its Appeal of Judge Saporito's November 16, 2021 Order and Memorandum.  DE:169:9.

Ruled Upon:  The District Court ruled on this issue in its July 5, 2022 Order. JA029-30; JA032 n.6.

3.    Whether the District Court abused its discretion by applying the doctrine of judicial estoppel to override the attorney-client privilege of a non-party notwithstanding that more tailored remedies were available to it, including sanctions that would not primarily and disproportionately penalize the non-party privilege holder rather than the estopped party itself.

Raised:  Eckert raised and preserved this issue in Eckert's Brief on Judicial Estoppel Issue Concerning Judge Saporito's February 16, 2021 Order and Memorandum, DE:129:13-14, and in Eckert's Brief in Support of Its Appeal of Judge Saporito's November 16, 2021 Order and Memorandum.  DE:169:5, 8.  *See also* DE:231:2, 5-7 (Brief of Defendants in Support of Their Motion for Reconsideration, noting that Eckert preserved remedy argument).

Ruled Upon:  The District Court ruled on this issue in its July 5 Order.  JA030; JA035-36.

**STATEMENT OF RELATED CASES**

The only prior proceedings in this case that have been before this Court are the petitions for permission to appeal that were filed on August 22, 2022 by Eckert (JA041), Parx (JA001), and HMS (JA020), and that were granted by the Court on October 6, 2022. JA099. The case numbers assigned to those petitions are 22-8038, 22-8039, and 22-8040, respectively. JA041; JA001; JA020.

The ongoing litigation before the District Court is captioned *Pace-O-Matic, Inc. v. Eckert Seamans Cherin & Mellott, LLC*, No. 1:20-cv-00292-JPW (M.D. Pa., filed Feb. 18, 2020). JA131.

POM alleges that its claims against Eckert arise from purported breaches of Eckert's fiduciary duties relating to certain litigation POM commenced in the Commonwealth Court of Pennsylvania in 2018. JA166. The Commonwealth Court cases in question are captioned as *POM of Pennsylvania, LLC v. Pennsylvania State Police, Bureau of Liquor Control Enforcement*, 503 MD 2018 (Pa. Commw. Ct., filed July 20, 2018) and *POM of Pennsylvania, LLC v. Commonwealth of Pennsylvania, Department of Revenue, and City of Philadelphia*, No. 418 MD 2018 (Pa. Commw. Ct., filed June 8, 2018) (collectively, the "Commonwealth Court Litigation"). JA166. Eckert is neither a party nor counsel of record in the Commonwealth Court Litigation. Non-party HMS was previously counsel of record for non-party Parx in connection with the Commonwealth Court Litigation, and Parx

had, through its counsel HMS, moved to intervene in the Commonwealth Court Litigation. JA006. HMS has since withdrawn as counsel to Parx in those matters.

## STATEMENT OF THE CASE

This case presents the Court with an issue of first impression for the Third Circuit: Whether, as below, a District Court may apply judicial estoppel "as an exception to or waiver of the attorney-client privilege of a non-party." JA113. As the District Court itself acknowledged, neither this Court nor the Supreme Court has *ever* "applied judicial estoppel in this manner." JA112 (citation omitted). The District Court, however, did precisely that when it ordered Eckert and HMS to produce their privileged communications with their client Parx, which is not a party to the litigation below.

POM is a former client of Eckert. JA157. In this case, POM alleges that Eckert breached the fiduciary duties that it owed to POM by concurrently representing POM and Parx, one of POM's purported or potential competitors. JA157-59. Parx is not a party to the litigation filed by POM against Eckert. JA157. Nor is HMS, although it previously represented Parx in other matters involving POM. *Id.*; JA006. Nonetheless, during the litigation below POM propounded on Eckert discovery requests seeking production of privileged attorney-client communications between Parx and its counsel at Eckert and HMS. JA007. POM

also issued subpoenas directly to Parx and HMS seeking production of the same privileged materials. *Id.*

The discovery sought by POM consists of confidential, privileged materials as well as Eckert's work product. Accordingly, and consistent with its duty to protect the confidentiality of its privileged communications with its client, Eckert declined to produce the privileged materials sought by POM, and instead produced privilege logs describing the materials withheld and the bases for withholding them. *Id.*; JA013; JA017. Eckert also moved for a protective order to protect its client's privilege; Parx and HMS likewise moved to quash POM's subpoenas seeking the privileged materials. JA246; JA249; 259.

When POM moved to compel production of the same privileged records, it did not raise estoppel or otherwise offer any basis to eviscerate Parx's attorney-client privilege. JA304; DE:51:1-15. Nonetheless, the Magistrate Judge did, *sua sponte* invoking the doctrine of judicial estoppel based on the finding that Eckert and Parx "adopted irreconcilably inconsistent positions" regarding whether Eckert represented Parx in connection with the Commonwealth Court Litigation. JA824. On that basis, the Magistrate Judge ordered Eckert and HMS to produce Parx's privileged communications with its counsel. JA833; JA836-38. Moreover, the Magistrate Judge did so notwithstanding his acknowledgement that Eckert's and

Parx's purportedly inconsistent statements had not been accepted by *any* court. JA832.

After further proceedings below, the District Court eventually affirmed the Magistrate Judge's ruling in the July 5 Order. JA013-19. The District Court expressly or tacitly endorsed most of the Magistrate Judge's findings and legal conclusions, including the finding that no court had actually accepted any of the purportedly inconsistent statements at issue. *See* JA032 n.6 ("the statements that Appellants *expected* the court to accept were fundamentally irreconcilable") (emphasis added).

Thereafter, Eckert requested that, in lieu of forcing it to produce Parx's privileged communications, the District Court instead impose a remedy the Magistrate Judge had deemed a *greater* sanction—*i.e.*, "judicially estop[ping] Eckert 'from denying POM's allegation that [Eckert] has represented a party adverse to POM in litigation.'" JA107; JA108; JA833. The District Court rejected that request, too, and thus denied Eckert's motion for reconsideration. JA107-08.

The July 5 Order is erroneous and unprecedented. By holding that the doctrine of judicial estoppel "may be applied as an exception to or waiver of the attorney-client privilege of a non-party," the District Court fundamentally altered the law governing the attorney-client privilege and weakened the centuries-old protection afforded to communications between clients and their counsel. To make matters

8

worse, the District Court imposed that extraordinarily harsh remedy notwithstanding that no court had *ever* accepted or otherwise relied upon any of the purportedly inconsistent statements at issue. The District Court compounded those errors by choosing, from among several available sanctions, the only one that primarily and disproportionately penalizes Parx—Eckert's non-party client—rather than even Eckert itself.

The District Court's Order thus upends the well-settled understanding of the attorney-client privilege in this Circuit and, absent reversal, will sow the sort of unpredictability that the United States Supreme Court decried in *Upjohn Co. v. United States*, 449 U.S. 383, 393 (1981). Reversal is necessary to protect Eckert's proper assertion of the attorney-client privilege and the rights of its non-party client, Parx, and to clarify that a District Court should not invoke judicial estoppel—*sua sponte* or otherwise—to obliterate the protections afforded to a non-party by the attorney-client privilege, "the oldest of the common-law privileges." *In re Teleglobe Commc'ns Corp.*, 493 F.3d 345, 359 (3d Cir. 2007), *as amended* (Oct. 12, 2007).

I.    **ECKERT REPRESENTS POM IN VIRGINIA PURSUANT TO AN ADVANCE CONFLICT WAIVER**

Beginning in December 2016, Eckert represented POM in Virginia. JA183. Eckert represented POM subject to an advance conflict waiver and other representational limitations, including the inability to represent POM in Pennsylvania. *Id.*; JA199. Eckert also properly disclosed to POM its concurrent

representation of one or more gaming clients with interests adverse to POM. JA199. Notwithstanding those limitations and prior disclosures, in October 2019, POM began to voice concerns about Eckert's representation of its gaming clients in Pennsylvania. JA184.

Eckert discussed those concerns with POM and sought confirmation of the prior advance conflict waiver that POM had provided. *Id*. In response, POM not only refused to acknowledge its prior advance conflict waiver, but also took the position that Eckert had to limit its representation of Eckert's other, pre-existing clients in order to satisfy POM's concerns. Because of POM's refusal to acknowledge its prior advance conflict waiver and POM's insistence that Eckert withdraw from certain engagements in Pennsylvania, Eckert was left with no alternative but to withdraw as POM's counsel in Virginia in early 2020. *Id*.

## II.    POM SUES ECKERT FOR BREACH OF FIDUCIARY DUTY

POM commenced this action by filing a Complaint against Eckert in the District Court on February 18, 2020. *See* DE:1. POM's Complaint included two counts. DE:1:11-15. In the first count, POM requested a declaratory judgment "that Eckert has breached its fiduciary duty to POM" by purportedly representing Parx "in matters . . . directly and materially adverse to POM," that "Eckert is enjoined from representing . . . Parx . . . on matters adverse to POM," and that "Eckert is prohibited from using . . . information acquired from its representation of POM in any

representation of any other client," and an "order requiring Eckert to disgorge all fees paid by POM."    DE:1:12, 13.    In the second count, POM requested compensatory and punitive damages for Eckert's purported "breach of its fiduciary duty" to POM.  DE:1:14.

Following the exchange of initial written discovery and the entry of a stipulated permanent injunction, POM filed an Amended Complaint against Eckert. *See* JA157 (the "Amended Complaint").  Following the resolution of a motion to dismiss the Amended Complaint, Eckert answered the Amended Complaint.[3]  *See* ECF 210.  POM later filed a Second Amended Complaint, which Eckert thereafter moved to dismiss.  *See* DE:234; DE:254.  Eckert's motion to dismiss the Second Amended Complaint is pending.  *See* DE:254.

### III.    IN DISCOVERY, POM PURSUES PRIVILEGED ATTORNEY-CLIENT COMMUNICATIONS BETWEEN ECKERT AND ITS NON-PARTY CLIENT, PARX.

During the litigation below, POM propounded on Eckert an interrogatory and a request for production of documents that sought materials and information

---

[3] When Eckert answered the Amended Complaint, it effectively withdrew the affirmative defense that the Magistrate Judge and the District Court found to be inconsistent with another of Eckert's statements regarding its representation of Parx Casino.  *Compare* DE:9:13 (Eckert's Answer to initial Complaint pleading, as an affirmative defense, that "Eckert is not counsel in any litigation where POM is an adverse party") *and* JA157 (Eckert's Answer to the Amended Complaint, which does not plead the affirmative defense in question).

protected from disclosure by, *inter alia*, the attorney-client privilege and the work-product doctrine.  JA007.  POM also issued subpoenas directly to Parx and HMS seeking production of the same privileged materials.  *Id.*

In response, Eckert filed a motion for a protective order.  *Id.*  Parx and HMS likewise filed motions to quash POM's subpoenas and for a protective order.  *Id.*  POM, meanwhile, filed a motion to compel production of the privileged materials at issue.  *See id.*; JA304.  Substantial briefing and argument followed.  *See* DE:44; DE:45; DE:48-DE:56; DE:59-63; 70; DE:75-77.  POM did not invoke the doctrine of judicial estoppel in its motion to compel.  JA304; DE:51:1-15.

On February 16, 2021, the Magistrate Judge issued his initial memorandum and order resolving the discovery motions filed by Eckert, POM, and non-parties Parx and HMS.  *See* JA717; JA730 (collectively, the "February 16 Order").  In the February 16 Order, the Magistrate Judge noted that Eckert withheld the documents sought by POM on the grounds that they are protected from disclosure by the attorney-client privilege and the work-product doctrine.  JA763 & n.12.  Indeed, the Magistrate Judge explicitly acknowledged that "[t]he withheld documents—and presumably any information responsive to the interrogatory . . . as well—involve communications between Stewart and other Eckert attorneys, on the one hand, and [Adrian] King[ and Kevin] McKeon[, two non-Eckert attorneys representing Parx], and Parx on the other."  JA763.  Notwithstanding that finding, the Magistrate Judge

12

ruled that Eckert must produce many of those privileged communications between it and Parx and/or HMS. JA766; JA769-71.

The primary basis for that ruling was the Magistrate Judge's *sua sponte* invocation of judicial estoppel based on Eckert's adoption of purported "irreconcilably inconsistent positions" regarding the scope and nature of the work it performed for Parx Casino. JA766. *See also* JA765 (finding that Eckert "is estopped from asserting attorney-client privilege with respect to [certain] documents based on its express statements in pleadings and other papers before this court that it does not represent an adverse party, such as Parx, and it is not otherwise 'involved' in the POM Commonwealth Court cases.")[4] (citations omitted).

Eckert, Parx and HMS objected and requested that the District Court reverse and vacate only that portion of February 16 Order that applied judicial estoppel and found an implied waiver of the attorney-client privilege. JA776; JA779; JA782; *see also* DE:94:2; DE:96:5; DE:98:6. The District Court concluded that the Magistrate Judge had erred by invoking the doctrine of judicial estoppel *sua sponte* and remanded the matter back to the Magistrate Judge for further consideration. JA786.

---

[4] The second allegedly inconsistent statement was contained in the parties' Joint Case Management Plan. JA762. Yet Local Rule 16.3 of the Rules of Court of the United States District Court for the Middle District of Pennsylvania states that "[t]he information in the case management form will not be deemed an admission by any party." M.D. Pa. L.R. 16.3.

13

After further briefing—but neither after a hearing nor any requests for additional evidence—the Magistrate Judge issued another Memorandum and Order on November 16, 2021 (the "November 16 Order"), again "reach[ing] the same conclusion for essentially the same reasons." JA806.  The Magistrate Judge reached that conclusion—*i.e.*, that Eckert "is estopped from asserting [non-party *Parx's*] attorney-client privilege . . . based on [*Eckert's*] express statements in *pleadings* and other papers before *this* court," JA822 (emphasis added), notwithstanding his acknowledgement that Eckert's purportedly inconsistent statements had not been accepted by any court.  JA832.

Eckert timely appealed the November 16 Order to the District Court on the bases that the record did not support the invocation of judicial estoppel and that even if it had, the court nonetheless erred by imposing as remedies the waiver of the attorney-client privilege belonging to Parx, a non-party to this action, and the compelled production of privileged communications between Parx and its counsel. JA840; *see also* DE:169:1-13.  Parx and HMS also appealed the November 16 Order. JA843; JA846.

On July 5, 2022, the District Court entered the July 5 Order denying Eckert's, Parx's, and HMS's appeals, affirming the November 16 Order, and requiring Eckert and HMS to produce to POM many of Parx's privileged documents and communications with its counsel.  JA003; JA019.  In its decision, the District Court

agreed with the Magistrate Judge's judicial estoppel analysis and concluded that it is "fundamentally inconsistent for Eckert to state that it does not represent Parx in the Commonwealth Court litigation, but to nevertheless assert the attorney-client privilege as to Parx with respect to documents created during the course of the Commonwealth Court litigation . . . ." JA032. The District Court concluded that *Eckert's* purportedly "inconsistent" positions "were adopted in bad faith," JA034, and therefore that "there are no lesser sanctions available than the invocation of the judicial estoppel doctrine" and the compelled production, without redactions, of *Parx*'s privileged communications with its counsel. JA035. In reaching that conclusion, the District Court tacitly acknowledged that no court had accepted any of the purportedly inconsistent statements at issue or otherwise relied upon them in any way in rendering a decision. *See* JA032 n.6 ("the statements that Appellants *expected* the court to accept were fundamentally irreconcilable") (emphasis added).

The District Court considered the potential alternative remedy of "judicially estop[ping] Eckert from denying POM's allegation that it has represented a party adverse to POM in litigation," but rejected it on the grounds that it "would be categorically determinative of the outcome on the merits of this litigation." *Id*.

On July 19, 2022, Eckert filed a motion for reconsideration or, alternatively, for certification of the District Court's July 5 Order pursuant to 28 U.S.C. § 1292(b). JA849. In its motion, Eckert sought reconsideration only with respect to the extreme

15

remedy imposed by the District Court, and requested that the Court "consider an[]
alternative remedy proposed by both [the Magistrate Judge and the District Court],
*i.e.*, 'to judicially estop Eckert from denying POM's allegation that it has represented
a party adverse to POM in litigation.'"  DE:231:2.  Parx and HMS also moved for
reconsideration, or in the alternative, certification of the July 5 Order pursuant to 28
U.S.C. § 1292(b).  JA864; JA873.

## IV.    ECKERT, PARX, AND HMS APPEAL THE JULY 5 ORDER

On August 4, 2022, Parx and HMS filed direct appeals from the District
Court's July 5 Order.   JA001; JA020.  Those appeals were assigned case numbers
22-2445 and 22-2446 by this Court.

By Order dated August 11, 2022, the District Court denied Eckert's, Parx's
and HMS's motions for reconsideration but certified the July 5 Order for
interlocutory appeal pursuant to 28 U.S.C. §1292(b).  JA113.

On August 22, 2022, Eckert timely filed with this Court a petition for
permission to appeal the District Court's July 5 Order pursuant to 28 U.S.C. §
1292(b).  JA041.  On the same date, Parx and HMS likewise petitioned this Court
for permission to appeal under 28 U.S.C. § 1292(b).  JA063; JA084.  POM filed a
response to Appellants' petitions on September 9, 2022.

On October 6, 2022, this Court granted Appellants' petitions, and these
consolidated appeals proceeded.  JA100.

## SUMMARY OF THE ARGUMENT

*First*, the District Court committed an error of law by holding that the doctrine of judicial estoppel may be applied as an exception to or waiver of the attorney-client privilege of a non-party. For good reason, this Court has *never* endorsed such an application of judicial estoppel. Rather, this Court has cautioned that because judicial estoppel "is often the harshest remedy" a court can use to sanction, *Klein v. Stahl GMBH & Co. Maschinefabrik*, 185 F.3d 98, 110 (3d Cir. 1999) (citation omitted), it is to be used sparingly, "employed only when a party's inconsistent behavior would otherwise result in a *miscarriage of justice*." *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 784 (3d Cir. 2001) (emphasis added) (citation and internal quotation marks omitted). The District Court failed to heed these cautionary principles. Instead, it dramatically expanded the scope of the doctrine by invoking it—*sua sponte*, no less—to punish a non-party privilege holder, even when other, more appropriately tailored remedies were available. In so doing, the District Court also weakened the attorney-client privilege, the oldest and most sacrosanct evidentiary privilege recognized by the common law. The District Court thus committed a clear error of law. This Court should reverse to reaffirm the cautionary principles set forth in *Klein*, *Montrose*, and the Court's myriad decisions protecting confidences between clients and their counsel.

17

*Second*, the District Court abused its discretion in applying judicial estoppel to the facts at bar because—as both the Magistrate Judge and the District Court acknowledged—no court ever accepted any of the purportedly inconsistent statements at issue or otherwise relied upon them in rendering any decision. *See, e.g.*, *G-I Holdings, Inc. v. Reliance Ins. Co.*, 586 F.3d 247, 262 (3d Cir. 2009), *as amended* (Dec. 4, 2009) ("[I]n our Circuit judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position.") (citations omitted). Not a single case cited by the District Court or the Magistrate Judge supports the application of judicial estoppel where that prerequisite is so completely lacking as it is here. By nonetheless applying judicial estoppel to eviscerate Parx's attorney-client privilege, the District Court misapplied the law and abused its discretion.

*Third*, the District Court abused its discretion by applying judicial estoppel on these facts because in so doing it chose a remedy that primarily and disproportionately penalizes *Parx*—Eckert's non-party client—rather than Eckert itself. The District Court thereby ignored this Court's command that "[j]udicial estoppel may be imposed only if [its use] is tailored to address the affront to the court's authority or integrity." *Montrose*, 243 F.3d at 777-78 (holding that "judicial estoppel is an inappropriate sanction here because its effects would be borne not by

18

any wrongdoers, but by innocent third parties.").  The District Court thus misapplied the law of judicial estoppel and abused its discretion.

Accordingly, the District Court's July 5 Order should be reversed and vacated.

## ARGUMENT

I.    **THE DISTRICT COURT ERRED BY CRAFTING A NOVEL AND ERRONEOUS LEGAL RULE PERMITTING JUDICIAL ESTOPPEL TO BE INVOKED TO NULLIFY THE ATTORNEY-CLIENT PRIVILEGE HELD BY A NON-PARTY.**

   A.    **Standard of Review**

This Court reviews questions of law *de novo*.  *See, e.g., Ahdab v. Gonzales*, 189 F. App'x 73, 75 (3d Cir. 2006) ("Purely legal questions are reviewed de novo.") (citing *Kamara v. Att'y Gen. of the U.S.,* 420 F.3d 202, 211 (3d Cir. 2005)).  As the District Court acknowledged, "whether judicial estoppel may be applied as an exception to or waiver of the attorney-client privilege of a non-party" is "a controlling *question of law*."  JA111 (emphasis added).  Thus, the first issue presented in this appeal is subject to *de novo* review.

   B.    **The Law Affords Zealous Protection to Privileged Communications Between a Client and Counsel, and Courts Narrowly Construe Implied Waivers of that Privilege.**

"It generally is acknowledged that the attorney-client privilege is so sacred and so compellingly important that the courts must, within their limits, guard it jealously." *Chore-Time Equip., Inc. v. Big Dutchman, Inc.*, 255 F. Supp. 1020, 1021 (W.D. Mich. 1966).  Accordingly, "[d]ocuments within the scope of the attorney-

19

client privilege are 'zealously protected.'" *Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 90 (3d Cir. 1992), *as amended* (Sept. 17, 1992) (quoting 8 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 2017 (1970)). *See also Cedrone v. Unity Sav. Ass'n*, 103 F.R.D. 423, 427 (E.D. Pa. 1984) ("[T]he general rule in the attorney-client privilege area is that 'all professional communications are sacred.'") (quoting *Moore v. Bray*, 10 Pa. 519, 524 (1849)).

One facet of the "zealous[] protect[ion]" afforded to privileged attorney-client communications is that "[i]n discovery disputes, implied waivers are construed narrowly." *In re Teleglobe*, 493 F.3d at 378 (citing *In re Lott,* 424 F.3d 446, 453 (6th Cir. 2005)). Indeed, courts in Pennsylvania—whose law governs the attorney-client privilege issues in this diversity jurisdiction case—"have not adopted [the rule of] subject-matter waiver." *Nupson v. Schnader Harrison Segal & Lewis LLP*, No. 18-CV-2505, 2021 WL 1293557, at *15 (E.D. Pa. Apr. 7, 2021) (quoting *Bagwell v. Pa. Dep't of Educ.*, 103 A.3d 409, 419 (Pa. Cmwlth. Ct. 2014)). *See also, e.g.*, *Maxus Liquidating Tr. v. YPF S.A., (In re Maxus Energy Corp.)*, No. 16-11501 (CTG), 2022 WL 17169282, at *4 (Bankr. D. Del. Nov. 22, 2022) ("[T]he Third Circuit has explained that a court should not lightly order the production of otherwise privileged materials.") (citing *Haines*, 975 F.3d at 90).

20

**C.    Judicial Estoppel Is an Extraordinary Remedy to Be Used Sparingly.**

"[J]udicial estoppel is an 'extraordinary remed[y].'" *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 365 (3d Cir. 1996) (quoting *Oneida Motor Freight, Inc. v. United Jersey Bank*, 848 F.2d 414, 424 (3d Cir. 1988)). Because it "is often the harshest remedy" a court can use to sanction, *Klein*, 185 F.3d at 110 (citation omitted), it "is to be used sparingly." *Krystal Cadillac-Oldsmobile GMC Truck, Inc. v. Gen. Motors Corp.*, 337 F.3d 314, 324 (3d Cir. 2003). *See also Montrose*, 243 F.3d at 784 (judicial estoppel should "be employed only when a party's inconsistent behavior would otherwise result in a *miscarriage of justice*.") (emphasis added).

**D.    The District Court Violated This Court's Cautionary Principles and Instead Crafted an Unprecedented Legal Rule that Weakens the Protections Afforded by the Attorney-Client Privilege and Expands the Scope of Judicial Estoppel.**

By holding that the doctrine of judicial estoppel "may be applied as an exception to or waiver of the attorney-client privilege of a non-party," JA113—and by ordering Eckert and HMS, on that basis, to produce *Parx's* privileged communications with its counsel, JA124—the District Court altered the law governing the attorney-client privilege and weakened the centuries-old protection afforded to communications between clients and their attorneys. The District Court's decision is unprecedented. Indeed, even the District Court acknowledged

21

that this Court has never "applied judicial estoppel in this manner." JA112. Eckert concurs. Its counsel searched for but found no decision from *any* federal court (nor from any Pennsylvania court) invoking judicial estoppel to eviscerate the attorney-client privilege held by a non-party.

Rather, this Court's precedents broadly support the longstanding protections afforded by the attorney-client privilege and caution against hyperaggressive privilege waiver theories. *See, e.g.*, *Haines*, 975 F.2d at 90 ("Documents within the scope of the attorney-client privilege are zealously protected.") (citation and internal quotation marks omitted); *In re Teleglobe*, 493 F.3d at 378 ("In discovery disputes, implied waivers are construed narrowly.") (citation omitted). *See also Nupson*, 2021 WL 1293557, at *15 (Pennsylvania courts "have not adopted [the rule of] subject-matter waiver.") (citation and internal quotation marks omitted). The July 5 Order contravenes these guiding principles regarding the sanctity of attorney-client communications and upends the well-settled law in this area.

The July 5 Order also constitutes an unprecedented expansion of the doctrine of judicial estoppel, "an extraordinary remed[y]," *Ryan*, 81 F.3d at 365 (citation and internal quotation marks omitted), that "is to be used sparingly," *Krystal Cadillac*, 337 F.3d at 324, and which is "appropriately applied in a narrow category of cases." *Dam Things from Denmark, a/k/a Troll Co. ApS, v. Russ Berrie & Co., Inc.*, 290 F.3d 548, 559 (3d Cir. 2002). Here, the District Court rejected these cautionary

22

precedents and instead invoked judicial estoppel—*sua sponte*, no less—to obliterate the attorney-client privilege held by a non-party.  By ordering the production of *Parx's* privileged communications with counsel as a sanction for *Eckert's* purported "presentat[ion of] irreconcilable positions in th[is] litigation," JA124, the District Court applied judicial estoppel in a manner that was hardly "sparing[.]"  *Krystal Cadillac*, 337 F.3d at 324.  As the District Court conceded in a subsequent order, "no controlling precedent has applied judicial estoppel in this manner."  JA112.  Indeed, on at least one occasion, this Court has reversed a lower court's order that, *inter alia*, applied judicial estoppel "inappropriate[ly insofar as] its effects would be borne not by any wrongdoers, but by innocent third parties."  *Montrose*, 243 F.3d at 778.  The July 5 Order suffers from the same infirmity.

Absent reversal, the District Court's July 5 Order will sow the sort of unpredictability that the United States Supreme Court decried in *Upjohn Co. v. United States*, when it rejected the narrow scope of the privilege test "adopted by the court below" because of "its unpredictability."  *Id.* at 393, 396-97 (citations omitted).  *See also United States v. Jicarilla Apache Nation*, 564 U.S. 162, 183 (2011) ("We have said that for the attorney-client privilege to be effective, it must be predictable.")  (citing *Jaffee v. Redmond,* 518 U.S. 1, 18 (1996); *Upjohn,* 449 U.S., at 393).  Where such predictability is lacking, "the interest of 'full and frank communication' between client and counsel would be

23

undermined." *In re Sealed Case*, 107 F.3d 46, 49 (D.C. Cir. 1997) (quoting *Upjohn*, 449 U.S. at 389). *See also BouSamra v. Excela Health*, 653 Pa. 365, 391 (2019) ("Courts have consistently recognized that the purpose of the attorney-client privilege is 'to foster the free and open exchange of relevant information between the lawyer and client.'") (quoting *Gillard v. AIG Ins. Co.*, 609 Pa. 65 (2011)).

Barring reversal, the lack of predictability that will follow—and the attendant inhibition of candid and effective communication between client and counsel—will be particularly acute because it will turn on the application of *another* relatively unpredictable doctrine: judicial estoppel. As the Magistrate Judge and the District Court acknowledged, "there is no rigid test for determining whether judicial estoppel is appropriately applied." JA121 (citing *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001)). Accordingly, to determine whether its communications with counsel will be protected by the privilege, a client will, under the rule devised by the District Court, need to consider the probability that a court might someday determine that the client's *attorney* has, in the course of subsequent litigation *against the attorney only*, run afoul of an equitable doctrine whose applicability is "always factually-driven," *Danise v. Saxon Mortg. Servs. Inc.*, 738 F. App'x 47, 49 (3d Cir. 2018) (citation and internal quotation marks omitted), and "probably [is] not reducible to any general formulation of principle." *New Hampshire*, 532 U.S. at 750 (citations omitted). The unprecedented legal rule created by the District Court thus places an

24

impossible burden on privilege holders. Absent reversal, it will inject new uncertainty into attorney-client relationships and will inhibit full and frank communication with counsel. It is unmoored from this Court's precedents, erroneous, and should be reversed.

## II. THE DISTRICT COURT ABUSED ITS DISCRETION BY APPLYING THE DOCTRINE OF JUDICIAL ESTOPPEL TO OVERRIDE THE ATTORNEY-CLIENT PRIVILEGE OF A NON-PARTY NOTWITHSTANDING THAT NO COURT HAD EVER ACCEPTED ANY OF THE PURPORTEDLY INCONSISTENT STATEMENTS AT ISSUE.

### A.    Standard of Review

"[T]his Court reviews a district court's application of judicial estoppel for abuse of discretion." *Danise*, 738 F. App'x at 49 (citing *McNemar v. Disney Store, Inc.*, 91 F.3d 610, 613 (3d Cir. 1996)). *See also Klein*, 185 F.3d 98 at 108 (same) (citing *McNemar*, 91 F.3d at 613). A "court 'abuses its discretion when its ruling is founded on an error of law or a misapplication of law to the facts.'" *Montrose*, 243 F.3d at 780 (quoting *In re O'Brien,* 188 F.3d 116, 122 (3d Cir. 1999)). A court also abuses its discretion where, for instance, its decision is "'clearly unreasonable.'" *Mahmood v. Narciso*, 549 F. App'x 99, 101 (3d Cir. 2013) (quoting *United States v. Starnes,* 583 F.3d 196, 214 (3d Cir. 2009)). *See also United States v. Soto-Beniquez*, 356 F.3d 1, 30 (1st Cir. 2003) ("An abuse of discretion 'occurs when a material factor deserving significant weight is ignored, when an improper factor is relied upon, or when all proper and no improper factors are assessed, but the court makes

25

a serious mistake in weighing them.'") (quoting *Indep. Oil & Chem. Workers, Inc. v. Procer & Gamble Mfg. Co.*, 864 F.2d 927, 929 (1st Cir. 1988)).

**B.    Numerous Decisions from This Court Have Refused to Apply Judicial Estoppel on the Grounds that the Earlier of the Purportedly Inconsistent Statements at Issue Was Not Accepted by a Court.**

"[C]ourts [determining whether to apply judicial estoppel] regularly inquire whether the party [to be estopped] has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled." *New Hampshire*, 532 U.S. at 750 (citation and internal quotation marks omitted).    The reason for this consideration is that "[a]bsent success in a prior proceeding, a party's later inconsistent position introduces no 'risk of inconsistent court determinations,' *United States v. C.I.T. Constr. Inc.,* 944 F.2d 253, 259 (C.A.5 1991), and thus poses little threat to judicial integrity."    *Id.* at 750-51 (citations omitted).

Numerous decisions from this Court have refused to apply judicial estoppel on the grounds that the earlier of the purportedly inconsistent statements at issue was not accepted by a court.  *See, e.g.*, *Montrose*, 243 F.3d at 782 (embracing "consensus view among our sister circuits [by holding] that judicial estoppel is inappropriate unless the earlier position was accepted by a court or agency.") (footnote omitted); *id*. at 784 (concluding "that a change of position simply cannot evidence bad faith

vis-a-vis a court unless the initial statement was accepted or adopted.") (footnote omitted); *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005), *as amended* (Mar. 8, 2005) ("Inasmuch as Pelullo cannot show that this Court accepted the government's representation in denying his motion to file a supplemental brief, there is 'no risk of inconsistent court determinations' and 'little threat to judicial integrity.'") (quoting *New Hampshire*, 532 U.S. at 751); *Dam Things from Denmark*, 290 F.3d at 559 n.16 ("Dam's affidavit during the *Scandia* litigation would not properly be the subject of judicial estoppel because the statements were not adopted by the court in the course of the litigation, and therefore bad faith is not evidenced."); *Scarano v. Cent. R. Co. of N. J.*, 203 F.2d 510, 513 (3d Cir. 1953) ("A plaintiff *who has obtained relief* from an adversary by asserting and offering proof to support one position may not be heard later in the same court to contradict himself in an effort to establish against the same adversary a second claim inconsistent with his earlier contention.") (emphasis added).[5]

---

[5] Numerous other Circuit Courts (and District Courts within this Circuit) have embraced this rule. *See, e.g.*, *Astor Chauffeured Limousine Co. v. Runnfeldt Investment Corp.*, 910 F.2d 1540, 1548 (7th Cir. 1990) ("We agree with those courts that limit judicial estoppel to taking a position inconsistent with one underlying a prior judgment. *The offense is not taking inconsistent positions so much as it is winning, twice*, on the basis of incompatible positions.") (emphasis added) (citations omitted); *Sullivan v. Borough of Atl. City Highlands*, Civil Action No. 19-19510(MAS)(ZNQ), 2020 WL 6525465, at *7 (D.N.J. Nov. 5, 2020) ("Plaintiff did not convince the District Court to accept his previous position and this finding

In *GI Holdings, Inc. v. Reliance Ins. Co.*, this Court refused even to consider the three judicial estoppel factors articulated in *Chao v. Roy's Constr., Inc.*, 517 F.3d 180 (3d Cir. 2008), and instead "rejected [outright the appellant's judicial estoppel] contention[]" because the "District Court [in *GI Holdings*] never accepted [the estopped party's] prior position," and "in our Circuit judicial estoppel is generally not appropriate where the defending party did not convince the District Court to accept its earlier position." 586 F.3d at 251, 262 (citations omitted). The Court added that it did "not mean to suggest that where no court has accepted an initial position, judicial estoppel can never apply. We will apply it to neutralize threats to judicial integrity however they may arise." *Id*. In support, the Court cited *Krystal Cadillac*, in which it "applied judicial estoppel even though no court had ever relied on the debtor's initial position," but the "creditors *almost certainly had* relied on it, [thereby] *undermining the bankruptcy process* by weakening their bargaining position." *Id.* (emphasis added) (citing *Krystal Cadillac*, 337 F.3d at 320-21, 324-25).

---

weighs against applying judicial estoppel. Therefore, as the Court cannot make a finding of bad faith, the Court declines to apply judicial estoppel.").

**C.    Because No Court Ever Accepted Any of the Purportedly Inconsistent Statements at Issue, the District Court Abused Its Discretion by Applying the Doctrine of Judicial Estoppel to Override the Attorney-Client Privilege of Parx, a Non-Party.**

The District Court acknowledged that no court ever accepted any of the purportedly inconsistent statements at issue or otherwise relied upon them in any way in rendering a decision.  *See* JA032 n.6 ("the statements that Appellants *expected* the court to accept were fundamentally irreconcilable") (emphasis added).  The Magistrate Judge made the same finding.  JA832 ("[T]he representations at issue have not previously been accepted by this or the state court . . . .").  Accordingly— and consistent with this Court's decisions in *Montrose*, *Pelullo*, *Dam Things from Denmark*, *Scarano*, and numerous other cases—judicial estoppel is inapplicable.  *See, e.g.*, *Montrose*, 243 F.3d at 783 ("there can be no bad faith for judicial estoppel purposes if the earlier statement was never accepted by a court or agency."); *Dam Things from Denmark*, 290 F.3d at 559 n.16 (document "would not properly be the subject of judicial estoppel because the statements were not adopted by the court in the course of the litigation, and therefore bad faith is not evidenced."); *GI Holdings, Inc.*, 586 F.3d at 251, 262 ("reject[ing] outright the appellant's judicial estoppel] contention[]" because the "District Court never accepted [the estopped party's] prior position").  By concluding otherwise, the District Court "founded [its ruling] on an error of law or a misapplication of law to the facts'" and therefore abused its discretion. *Montrose*, 243 F.3d at 780 (quoting *In re O'Brien,* 188 F.3d at 122).  The

July 5 Order also constitutes an abuse of discretion because "the court ma[d]e[] a serious mistake in weighing the[]" factors relevant to the judicial estoppel analysis. *Soto-Beniquez*, 356 F.3d at 30 (citation and internal quotation marks omitted).

*GI Holdings* and *Krystal Cadillac* do not support a different result. In *Krystal Cadillac,* the estopped debtor-plaintiff benefitted from, and its creditors were harmed by, the first of the debtor's two inconsistent statements, *i.e.*, its failure to list, on a bankruptcy disclosure statement, a claim it subsequently attempted to litigate. 337 F.3d at 324-25. Its creditors were harmed because they relied on that omission in agreeing to "very substantial compromises of claims against Krystal." *Id.* at 325. Here, by contrast, neither POM nor any other entity surrendered any claim—much less a literal financial claim—in reliance on any purportedly inconsistent statement made by Eckert. Thus, the element of detrimental reliance present in *Krystal Cadillac* is absent here. *See GI Holdings*, 586 F.3d at 262 (noting that in *Krystal Cadillac*, "creditors almost certainly had relied on it, [thereby] *undermining the bankruptcy process* by *weakening their bargaining position*.") (emphasis added) (citing *Krystal Cadillac*, 337 F.3d at 324-25). Accordingly, *Krystal Cadillac* is inapt.

Nor does *GI Holdings* support the District Court's decision. In *GI Holdings*, this Court noted that "it will apply [judicial estoppel] to neutralize threats to judicial integrity however they may arise," 586 F.3d at 262, but declined to apply judicial

30

estoppel in that case because "G–I has provided no evidence of a threat to judicial integrity *other than Hartford's inconsistent positions*." *Id.* (emphasis added). That is precisely the case here, as the District Court identified "no evidence of a threat to judicial integrity other than" Eckert's purportedly inconsistent statements about whom it represented and when. *See* JA127-28 ("Judge Saporito did not err in concluding that these *inconsistent positions* were adopted in bad faith. Indeed, in making inconsistent representations to the court . . . .") (emphasis added). Accordingly, judicial estoppel is inapplicable in this case for the same reasons it was inapplicable in *GI Holdings*. *See* 586 F.3d at 262:

> G–I has provided no evidence of a threat to judicial integrity other than Hartford's inconsistent positions. We believe applying judicial estoppel here presents a greater threat to judicial integrity. *We do not preclude arguments not accepted by the District Court in part to ensure that the order in which a party presents its claims does not determine the outcome of a case.*

(Emphasis added).

Because no court ever accepted any of the purportedly inconsistent statements at issue or otherwise relied upon them in any way in rendering a decision, the District Court abused its discretion in applying judicial estoppel. Accordingly, the July 5 Order should be reversed.

31

**III.  THE DISTRICT COURT ABUSED ITS DISCRETION BY APPLYING THE DOCTRINE OF JUDICIAL ESTOPPEL TO OVERRIDE THE ATTORNEY-CLIENT PRIVILEGE OF A NON-PARTY NOTWITHSTANDING THAT MORE TAILORED REMEDIES WERE AVAILABLE TO IT.**

    **A.  Application of Judicial Estoppel Is Appropriate Only Where Its Use Is Tailored to Address the Purported Harm Caused by the Estopped Party and No Lesser Sanction Would Be an Adequate Remedy.**

A court applying judicial estoppel "must 'ensure that the sanction is tailored to address the harm identified.'" *Klein*, 185 F.3d at 11 (quoting *Republic of the Philippines v. Westinghouse Elec. Corp.,* 43 F.3d 65, 73 (3d Cir. 1994)).  This Court reaffirmed that principle in *Montrose*, observing that "[j]udicial estoppel may be imposed only if [its use] is tailored to address the affront to the court's authority or integrity."  243 F.3d at 777-78 (holding that "judicial estoppel is an inappropriate sanction here because its effects would be borne not by any wrongdoers, but by innocent third parties.").  Similarly, a court may not employ judicial estoppel unless "no lesser sanction would adequately remedy the damage done by the litigant's misconduct." *Id.* at 779-80 (citing *Klein*, 185 F.3d at 108).  Accordingly, application of judicial estoppel is inappropriate where "its use would create rather than defeat a miscarriage of justice," *id.* at 780 (footnote omitted), or where its application otherwise "would be unduly harsh and inequitable." *Ryan*, 81 F.3d at 365.

32

**B.** **Because More Tailored Remedies Were Available, Including Sanctions that Would Not Primarily and Disproportionately Penalize the Non-Party Privilege Holder, the District Court Abused Its Discretion by Applying the Doctrine of Judicial Estoppel to Override the Attorney-Client Privilege of Parx, a Non-Party.**

The District Court acknowledged that other sanctions were available to it, such as "judicially estop[ping] Eckert from denying POM's allegation that it has represented a party adverse to POM in litigation." JA129. Indeed, even after the Court issued the July 5 Order, Eckert affirmatively moved the Court, in its reconsideration motion, to select that remedy. JA851 ("defendants ask the Court to . . . apply what . . . defendants consider to be the more appropriate and tailored remedy . . . : to judicially estop Eckert from denying POM's allegation that it has represented a party adverse to POM in litigation.") (internal quotations omitted).

The District Court refused to select that lesser remedy, reasoning that all alternatives were inappropriate because they "would be categorically determinative of the outcome on the merits," JA129, and because "[f]orcing POM to rely only on privilege logs to litigate this case would be akin to asking counsel to litigate the central issue in this case blindfolded . . . ." JA128. The Court also reasoned, somewhat paradoxically, that eviscerating *Parx's* attorney-client privilege is appropriate because otherwise it would be "unclear how POM could prove its breach

of fiduciary duty claim."[6]   JA128.   The District Court cited no authority for the proposition that it could invoke judicial estoppel to nullify a non-party's attorney-client privilege in order to ease the plaintiff's burden of proof.

The District Court's decision was in error.  It violated this Court's holdings in *Klein* and *Montrose*, which bar it from applying judicial estoppel where a more tailored sanction is available.  Such an alternative existed here, as the District Court could have simply estopped Eckert from denying POM's allegation that it represented a party adverse to POM in litigation.  JA129.  In so doing, the District Court could have left Parx's privilege intact.  Instead, the District Court—seemingly in an effort to facilitate POM's "pro[of of] its breach of fiduciary duty claim," JA128—chose to eviscerate the attorney-client privilege held by Parx, a non-party. The District Court thus selected the only available remedy that primarily targets and punishes a *non*-party rather than a party.  In *Montrose*, this Court held that such an application of judicial estoppel was inappropriate and reversed.  243 F.3d at 777-78 (holding that "judicial estoppel is an inappropriate sanction here because its effects would be borne not by any wrongdoers, but by innocent third parties.").  The Court

---

[6] Such statements, of course, are inaccurate insofar as whether POM can prove a breach of fiduciary duty claim based upon a concurrent conflict of interest with respect to the representations themselves does not rest on the substance or content of the communications between Eckert and another client.  Thus, POM does not need to review these privileged communications regardless.

should do the same here. Indeed, because it primarily punishes a non-party through the nullification of its (and only its) attorney-client privilege, the July 5 Order "create[s] rather than defeat[s] a miscarriage of justice," *id.* at 780 (footnote omitted), and is "unduly harsh and inequitable." *Ryan*, 81 F.3d at 365. Accordingly, the July 5 Order should be reversed.

The District Court's Order also constitutes an unduly harsh and inequitable application of judicial estoppel because it was imposed at an unreasonably early juncture in this litigation where none of the statements at issue were proven, tested, or otherwise raised beyond the pleadings. Moreover, the affirmative defense at issue has since been withdrawn, and the relevant statement in the Joint Case Management Plan is neither an admission nor is it intentionally misleading. Finally, at oral argument before the Magistrate Judge, counsel for Eckert explained exactly what was meant by the statements at issue and why there was no intent to be inconsistent or misleading. *See, e.g.*, JA439-450.

Similar to the factual circumstances present here, the Seventh Circuit's *Astor* decision (though not binding on the Court) explains why judicial estoppel is a particularly inapt tool to apply before any proof has been subjected to trial in at least one proceeding:

35

> [] Fed.R.Civ.P. 8(e)(2) allows a party to take inconsistent positions in a single suit. *Often a pleader cannot tell what the facts will show*. Courts allow a pleading of the sort "I never borrowed the lawn mower, it was broken when I borrowed it, and I returned it in perfect condition" because pleadings precede discovery and trial. *Until the last minute it may be hard to tell what the evidence will show*, and inconsistent pleadings allow a party to preserve its options. Inconsistency is acceptable because, at the end of the day, only one of these positions can obtain, and the pleader is limited to a single recovery no matter how many different (and conflicting) theories it offers.

910 F.2d at 1548 (emphasis added). This Court's decision in *U.S. v. Kepner*,

843 F.2d 755 (3d Cir. 1988), embraces the same logic:

> A party who has gained an advantage by characterizing the law or facts involved in a case should not later be able to contradict that characterization in order to obtain a further advantage. *See Scarano v. Central Railroad,* 203 F.2d 510, 513 (3d Cir.1953). *But that does not mean that a party cannot change its position about what it intends to argue in the future*, especially if the full implications of the decision are not yet known at the time of the statement.

843 F.2d at 760 (emphasis added).   This Court's decision in *Ryan* is consistent with

this logic.   *See* 81 F.3d at 359 ("A plaintiff who has *obtained relief* from an

adversary by asserting *and offering proof* to support one position may not be heard

later in the same court to contradict himself in an effort to establish against the same

adversary a second claim inconsistent with his earlier contention.") (emphasis

added) (citation omitted). *See also Stone Hedge Properties v. Phoenix Capital

Corp.,* (*In re Stone Hedge Properties*), 191 B.R. 59, 62-63 (Bankr. M.D. Pa. 1995)

(creditor was not "estopped from seeking to be classified as a general unsecured

creditor after it [] filed a proof of claim setting forth that its claim was secured").

In *Stone Hedge*, the Bankruptcy Court declined to estop the creditor that sought to reclassify its claim because the estoppel request was made prejudgment and therefore was premature:

> This court need not remind the parties that the case is not in the posture of a confirmed chapter eleven plan and, therefore, finds nothing prohibitive of the assertion of alternate positions in this hotly contested matter *until such time as the parties' positions concerning the valuation and the extent and status of the claim become final by either litigation in this court or by confirmation of a chapter eleven plan* which binds not only the Debtor but all creditors.

191 B.R. at 63 (emphasis added).

*Ryan, Kepner*, and *Astor* thus counsel against application of judicial estoppel where, as here, none of the purportedly inconsistent statements at issue has been subjected to testing at a hearing or trial, and where the parties' pleadings remain open. *See* DE:254 (Eckert's motion to dismiss the Second Amended Complaint, which remains pending). The Court should reverse the July 5 Order so that, following disposition of Eckert's motion to dismiss POM's Second Amended Complaint, the parties' proof—including the purportedly inconsistent statements at issue here—can be tested at trial. By choosing instead to nullify Parx's attorney-client privilege in order to lighten POM's burden, the District Court erred and abused its discretion.

## CONCLUSION

For the foregoing reasons, Eckert respectfully submits that this Court should reverse and vacate the July 5 Order and remand with instructions to grant Eckert's motion for a protective order barring disclosure of Parx's privileged communications with its counsel.

Dated:  February 16, 2023          Respectfully submitted,


ROBERT S. TINTNER, ESQUIRE (No. 73865)
PETER C. BUCKLEY, ESQUIRE (No. 92313)
FOX ROTHSCHILD LLP
2000 Market Street, 20th Floor
Philadelphia, PA 19103-3291
(215) 299-2090/2766 (telephone)
(215) 299-2150 (facsimile)

*Counsel for Defendants-Appellants,*
*Eckert Seamans Cherin & Mellott, LLC, Mark S.*
*Stewart and Kevin M. Skjoldal*

## **CERTIFICATE OF COMPLIANCE**

The undersigned counsel to Defendants-Appellants Eckert Seamans Cherin & Mellott, LLC, Mark S. Stewart, and Kevin M. Skjoldal hereby certifies that this Brief complies with the word limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), it contains no more than 8,625 words. The undersigned counsel further certifies that this Brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because it has been prepared using 14-point Times New Roman font. The undersigned further certifies, pursuant to Local Appellate Rule 31.1(C), that all hard copies of this brief filed with this Court will be identical to this electronic version.

The undersigned further certifies that this file was scanned by a virus-protection program—namely, CrowdStrike Falcon Endpoint Detection & Response/Next-Generation Anti-Virus software (agent version 6.33.14705.0)—and that no virus was detected.

Dated:  February 16, 2023                    Respectfully submitted,

_____

ROBERT S. TINTNER, ESQUIRE

## <u>CERTIFICATES OF BAR MEMBERSHIP</u>

I, Robert S. Tintner, Esquire, hereby certify that I am a member in good standing of the bar of this Court.

_____

ROBERT S. TINTNER, ESQUIRE

Dated:   February 16, 2023

I, Peter C Buckley, Esquire, hereby certify that I am a member in good standing of the bar of this Court.

_____

PETER C. BUCKLEY, ESQUIRE

Dated:   February 16, 2023

40

## CERTIFICATE OF SERVICE

I, Robert S. Tintner, Esquire, hereby certify that on February 16, 2023, the foregoing was filed with this Court and served on all parties by filing with the Court's CM/ECF system.

_____
ROBERT S. TINTNER, ESQUIRE

*Counsel for Defendants-Appellants*
*Eckert Seamans Cherin & Mellott, LLC,*
*Mark S. Stewart and Kevin M. Skjoldal*