# In the United States Court of Appeals for the Third Circuit

---

Docket Nos. 22-2445, 22-2446, 22-2902, 22-2958 & 22-2959

---

## PACE-O-MATIC, INC.

*vs.*

## ECKERT, SEAMANS CHERIN & MELLOTT, LLC; MARK S. STEWART; KEVIN M. SKJOLDAL

## APPEAL OF GREENWOOD GAMING AND ENTERTAINMENT, INC., d/b/a PARX CASINO

---

*On appeal from an opinion and order of the United States District Court for the Middle District of Pennsylvania dated July 5, 2022, certification of appeal granted August 11, 2022, at Docket No. 20-292, direct appeal filed August 4, 2022, at Docket No. 22-2446, and permission to appeal granted October 6, 2022, at Docket No. 22-2959*

---

## REPLY BRIEF OF GREENWOOD GAMING & ENTERTAINMENT, INC., d/b/a PARX CASINO

---

### GA BIBIKOS LLC

George A. Bibikos
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc.
d/b/a Parx Casino*

April 24, 2023

**TABLE OF CONTENTS**

I.   INTRODUCTION ................................................................. 1

II.  REPLY ARGUMENT ............................................................ 3

     A.   The Court has jurisdiction over Parx's direct and permissive appeals. ........................................................ 3

     B.   The Court's jurisdiction is not limited to the question certified by the district court under Section 1292(b). ............ 5

     C.   The Court should reject POM's arguments regarding judicial estoppel. ............................................................ 7

          1.   Parx and its law firms have an attorney-client relationship. ............................................................ 8

          2.   Parx did not make any inconsistent statements itself or through its law firms. ....................................12

          3.   The judicial estoppel "remedy" improperly punishes Parx as an innocent third party. ..................16

III. CONCLUSION ...................................................................19

# TABLE OF AUTHORITIES

**Cases**

*A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014)............................................................................ 6

*Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993)......................... 9

*Barbato v. Greystone All., LLC*, 916 F.3d 260, 264 (3d Cir. 2019)............................................................................................ 6

*In re Grand Jury Subpoena*, 745 F.3d 681, 686–87 (3d Cir. 2014).......................................................................................... 4

*Levy v. Senate of Pennsylvania*, 65 A.3d 361, 371 (Pa. 2013).................. 9

*Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009) ....................................................................................... 5

*Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001)..........................................................15

*Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998). ............................................................................. 5

*Perlman v. United States*, 247 U.S. 7 (1918) .......................................... 3

*United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948)..................12

**Rules**

Fed. R. Civ. Pro. 26(b)(1).................................................................13, 18

Fed. R. Civ. Pro. 45(d)(3)(A)(iii) .......................................................13, 18

Greenwood Gaming & Entertainment, Inc. d/b/a Parx Casino ("Parx") files its reply to the brief of Pace-O-Matic, Inc. ("POM").

## I.   INTRODUCTION

In its opening brief, Parx explained in detail that judicial estoppel is not an exception to or waiver of Parx's attorney-client privilege as a matter of law; the district court (and the magistrate judge) erred in applying that doctrine under the circumstances in this case; and this Court should reverse the district court's contrary ruling to protect Parx's privileged documents from disclosure to POM.

POM makes clear in its brief that it does not want this Court to resolve the appeal on the merits, devoting as much as two-thirds of its brief on jurisdictional arguments even though this Court's jurisdiction is not meaningfully in question. Despite POM's attempt to argue otherwise, the Court has jurisdiction over Parx's direct appeal and it assumed jurisdiction by granting permission to appeal.   POM's contrary arguments fall flat.

On the merits, POM's arguments – comprised mostly of hyperbole, misdirection, and counsel's *ipse dixit* – remain lacking in legal support and they are as thin as ever. To illustrate, POM argues that the district

court never applied judicial estoppel as an exception to or waiver of the privilege and instead held that the district court made a finding that Parx had no attorney-client relationship with its law firms. That argument is absurd and defies the record.

Likewise, POM argues that the district court made a finding that Parx itself somehow made inconsistent statements in bad faith based on one sentence cherry-picked from a pleading in an unrelated state court proceeding. But the Court here has the benefit of the entire record and may see for itself that Parx never made any inconsistent statements to any court, let alone in bad faith, either itself or through its law firms.

As described below, the Court should reject POM's arguments and resolve this appeal in Parx's favor. Simply put, the Court has jurisdiction over the order on appeal (not just the certified question); judicial estoppel is not an exception to or waiver of the attorney-client privilege as a matter of Pennsylvania privilege law; even if it is, the district court erred in its application to the undisputed record; and nothing in POM's brief compels any different conclusion.

Accordingly, the Court should reverse and vacate the district court's order and remand with instructions to grant the motions filed by Parx,

Eckert, and HMS to quash the subpoena and/or for a protective order to prevent the disclosure of Parx's privileged documents.

## II. REPLY ARGUMENT

Parx's opening brief adequately addresses and disposes of virtually all of POM's misguided arguments such that Parx will not repeat those points here. In addition, Parx agrees with and incorporates the reply arguments of Eckert and HMS that are common to all appellants and also will not repeat those points here. Parx submits this short reply to address several points.

### A. *The Court has jurisdiction over Parx's direct and permissive appeals.*

POM argues at length that the Court lacks jurisdiction over Parx's direct appeal under the *Perlman* doctrine, *Perlman v. United States*, 247 U.S. 7 (1918), because Parx failed to exhaust the "contempt" option – meaning Parx had the obligation to (a) take back privileged documents from its law firms; (b) defy the district court's order for disclosure; (c) suffer contempt; and (d) take an appeal from the contempt order. POM also argues that its law firms are not "disinterested" third parties and would themselves defy the district court's disclosure order to suffer

3

contempt and appeal any ensuing contempt order. *See* POM Br. at 17-24. POM is wrong.

Parx's opening brief establishes that the Court has jurisdiction on direct appeal from the district court's order compelling the disclosure of Parx's privilege documents. *See* Parx Op. Br. at 6-13. Despite POM's argument, the contempt option is unavailable and impractical. The district court ordered Parx's law firms (not Parx) to disclose its privileged documents. Moreover, there is no order *in effect* to defy. The district court consistently stayed every order in these proceedings calling for Parx's law firms to disclose its privileged documents pending resolution of appeals and then certified the same order to this Court for interlocutory review.

It is irrelevant that Parx's law firms have the documents in their possession. Lawyers and law firms having possession of privileged documents are always "interested" to some extent in protecting their client's privileged documents, but that does not *ipso facto* mean they would risk contempt for purposes of the *Perlman* doctrine. To the contrary, this Court has applied *Perlman* in situations similar to this case to give the holder of the privilege the right to pursue a direct appeal from an order compelling its lawyers to disclose privileged documents without

4

requiring that the lawyers first suffer contempt. *In re Grand Jury Subpoena*, 745 F.3d 681, 686–87 (3d Cir. 2014).

Accordingly, the Court should reject POM's arguments because this Court has direct-appeal jurisdiction to review the district court's order.[1]

### B.    The Court's jurisdiction is not limited to the question certified by the district court under Section 1292(b).

Lest there be any doubt, this Court granted permission to appeal the interlocutory order certified by the district court that compels Parx's law firms to disclose its privileged documents. Once granted, the Court has jurisdiction to review that order, whether or not the appellant had or exercised a direct-appeal option. *Pennzoil Prod. Co. v. Colelli & Assocs., Inc.*, 149 F.3d 197, 200 (3d Cir. 1998).

Despite that straightforward analysis, POM argues that the Court should eschew its jurisdiction under 28 U.S.C. § 1292(b) and ignore arguments on appeal regarding the application of judicial estoppel because (a) the district court's order somehow does not present the question of whether judicial estoppel is an exception to or waiver of

---

[1] Parx also explained in its opening brief how *Mohawk Industries, Inc. v. Carpenter*, 558 U.S. 100, 110-11 (2009), does not foreclose an appeal based on the collateral-order doctrine. *See* Parx Op. Br. at 11-13. POM's contrary arguments on this point wholly ignore Parx's analysis. Again, the point is academic because this Court assumed jurisdiction over the interlocutory appeal under Section 1292(b).

privilege (even though that is *verbatim* what the district court certified); and (b) applying the elements of that doctrine to the facts here is beyond the scope of the certified question. *See* POM Br. at 34 & 39-40.

Leaving the absurdity of POM's argument aside, this Court is not limited by the *question* certified. The Court has jurisdiction to review the *order* on appeal, not just the certified question. In *Calhoun v. Yamaha Motor Corp., U.S.A.*, 40 F.3d 622 (3d Cir. 1994), this Court explained the scope of issues on appeal under Section 1292(b):

> As provided in section 1292(b), we have before us an appeal from the challenged order, not just the certified question. Section 1292(b) requires not that we answer the certified question, but that we decide an appeal from an interlocutory order. We therefore are not bound by the district court's formulation of the question, and may address any issue that is necessary to decide the appeal before us.

*Id.* at 626. *See also Barbato v. Greystone All., LLC*, 916 F.3d 260, 264 (3d Cir. 2019); *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (appellate court "may consider all grounds that might require reversal of the order from which the parties appeal.").

*Calhoun* and other cases cited above confirm that the Court may review whether the district court erred by applying judicial estoppel as an "exception" to or a "waiver" of Parx's privilege or whether it erred

when applying the elements of that doctrine to the facts of this case. These questions stem from the district court's order compelling disclosure of Parx's privileged documents based solely on judicial estoppel.

In addition, all the arguments Parx propounded in its opening brief involve judicial estoppel, whether it operates as an exception to or waiver of the attorney-client privilege, and (if so) whether the district court erred in its application here. There is no question that this Court can and should consider these arguments on appeal. It is therefore incorrect for POM to say that this Court cannot review the question certified and must turn a blind eye to the application of the very doctrine Parx has questioned throughout these proceedings in both the district court and before this Court.

Accordingly, the Court should reject POM's arguments that the Court lacks jurisdiction under Section 1292(b).

### C.    *The Court should reject POM's arguments regarding judicial estoppel.*

On the merits, POM makes several arguments that warrant a response from Parx.

### 1. Parx and its law firms have an attorney-client relationship.

POM argues that the district court only applied judicial estoppel to disavow an attorney-client relationship between Parx and its law firms in the Commonwealth Court proceeding, not as an exception or waiver to privilege, having never used those precise terms and thereby rendering the question certified a "hypothetical" one that the Court should avoid. *See* POM Br. at 40-42. There are several problems with POM's position.

As a threshold matter, it is curious that POM would take that position so strongly here. POM's entire cause of action against Eckert rests on the premise that Eckert represented Parx and POM while those two clients had interests adverse to one another. If POM and the district court are correct that Parx has no attorney-client relationship, it stands to reason that POM's entire cause of action against Eckert for breach of fiduciary duty would seem to fail for lack of an essential element.

But that conundrum need not bother the Court here. There is no meaningful dispute that Parx and its law firms have an attorney-client relationship, even assuming (for purposes of argument only) that the law firms made statements qualifying the extent of their relationship (*i.e.*, whether Eckert acted as counsel of record or worked with a team of

lawyers behind the scenes for one of many clients including Parx). *See Atkinson v. Haug*, 622 A.2d 983, 986 (Pa. Super. 1993) (attorney-client relationship may be implied despite lack of express statement if client reasonably believes and relies on attorney-client relationship).

In other words, what matters is the client's perspective and its reliance on the attorney-client relationship, not necessarily the lawyer's perspective, so that the client has some assurance its privileged communications will receive maximum protection even if there is some question about the relationship. *See, e.g.*, *Levy v. Senate of Pennsylvania*, 65 A.3d 361, 371 (Pa. 2013) (the attorney-client privilege necessarily requires that "the attorney and client must be able to predict with some degree of certainty whether particular discussions will be protected.").

Viewing the record as a whole, there is no question that Parx and its law firms have an attorney-client relationship, and any purported conclusion to the contrary defies the record. There is no dispute that Parx acknowledged the attorney-client relationship with both Eckert and HMS before the district court and Commonwealth Court. The record here is replete with statements from Parx that both Eckert and HMS

9

represented Parx in various matters and have done so for many years. *See* JA870-JA872.

The answer to a motion to disqualify filed in Commonwealth Court, on which POM relies to claim that Parx made inconsistent statements through HMS, says that Eckert is not counsel in that case – a true statement. *See* JA640. In the same answer to the motion, HMS explained that "[t]he various Casino Intervenors' litigation filings in this case were drafted by a group of lawyers from Hawke McKeon, Ballard, and Eckert." *See* JA636, JA872. This is another true statement. As the holder of the privilege, all of Parx's consistent statements – that it has a longstanding attorney-client relationship with both Eckert (and HMS) – should carry weight even if its law firms qualified statements about the extent of their representation.

Furthermore, if the record contains undisputed facts that Parx and its law firms have long-standing attorney-client relationships and the documents at issue indisputably contain privileged communications, the only way the district court could order their disclosure is to apply judicial estoppel as an exception to or waiver of the privilege. In other words, the district court's use of judicial estoppel functioned as an exception to or

waiver of Parx's privilege given that the record is clear about Parx's attorney-client relationship with its law firms and the attorney-client privilege otherwise attached to the documents in possession of Parx's law firms. POM's contrary argument that the words "exception" or "waiver" never show up in the district court's rulings is curious, irrelevant, and misguided.

More importantly, both the magistrate judge and district court quashed the subpoena directed to Parx based on privilege to protect Parx's privileged documents. In addition, both the magistrate judge and district court concluded that documents in the possession of Parx's law firms contains privileged material. Despite these conclusions the magistrate judge and the district court did not apply the same privilege that protected Parx's documents from disclosure to the documents in the possession of HMS and Eckert based solely on judicial estoppel. The privilege should apply equally to documents in the possession of Eckert and HMS under these circumstances. Notwithstanding POM's arguments, the court below erred by purporting to estop Parx, Eckert, and HMS from claiming an attorney-client relationship.

11

Accordingly, the Court should reject POM's arguments and hold that judicial estoppel does not apply either to disavow an otherwise undisputed attorney-client relationship between Parx and its law firms or as an exception to or waiver of Parx's privilege.

### 2. Parx did not make any inconsistent statements itself or through its law firms.

Nevertheless, POM argues that Parx made its own inconsistent statements for purposes of applying judicial estoppel through HMS based on one sentence cherry-picked from a pleading filed by HMS on behalf of Parx in Commonwealth Court. *See* POM Br. at 44. From that flawed premise, POM claims that the district court made a finding that Parx made irreconcilably inconsistent statements in bad faith that this Court cannot disturb. Again, POM takes great liberties with the actual facts.[2]

It is well settled that a district court's findings must be based on the record and set aside if clearly erroneous. *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948) ("A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the

---

[2] Contrary to POM's claim, Parx never waived any argument that it should not be responsible for alleged inconsistent statements made by HMS while representing Parx in Commonwealth Court. Parx devoted an entire section to this point at Section VII.C.2 of its opening brief. POM's waiver argument is nonsense.

entire evidence is left with the definite and firm conviction that a mistake has been committed.").

At the outset, neither the magistrate judge nor the district court took evidence on judicial estoppel and, so, the district court never made any actual findings. The magistrate judge *sua sponte* raised that issue, the district court remanded to give the parties and non-parties the opportunity to brief that issue, and the magistrate judge scheduled additional briefing before reaching the same conclusion on judicial estoppel later adopted by the district court. That is the extent of the proceedings below on this critical issue.

The record and the timeline here are important. POM filed suit on February 18, 2020  In June 2020, POM had served a subpoena on Parx. Parx immediately represented to the district court that it had an attorney-client relationship with Eckert (and HMS) such that the rules preclude their disclosure to POM in the underlying litigation. *See* JA870-JA872; Fed. R. Civ. Pro. 26(b)(1) ("[p]arties may obtain discovery regarding any nonprivileged matter"); Fed. R. Civ. Pro. 45(d)(3)(A)(iii) (courts must quash a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies").

13

In an answer to a motion to disqualify HMS as counsel in Commonwealth Court filed months after Parx already made numerous, unequivocal statements to the district court confirming its attorney-client relationship with Eckert, *see* JA870-JA872, HMS stated that Eckert is not counsel to Parx in that litigation. *See* JA636. In the same answer to the motion, however, HMS explained that "[t]he various Casino Intervenors' litigation filings in this case were drafted by a group of lawyers from Hawke McKeon, Ballard, and Eckert." *See* JA636.

Now consider this lonely statement on which POM exclusively relies against the entire record. There can be no meaningful dispute that Parx consistently represented to the district court (and Commonwealth Court) that Parx had an attorney-client relationship with Eckert (and HMS), including in Commonwealth Court, *see* JA870-872, such that the privilege rightly attaches to Parx's documents in possession of Eckert and HMS regarding that litigation. In short, Parx never took any contrary position, and to "find" otherwise is clear error.

Therefore, to the extent the magistrate judge or district court relied on the statement in a state-court pleading in total isolation in order to make a purported finding that Parx made inconsistent statements,

14

without considering the rest of the pleading and record, that finding is the definition of "clearly erroneous" such that this Court should reject it. *See Gypsum Co., supra.*

More importantly, there is no evidence of "bad faith" to support any application of judicial estoppel against Parx. There is nothing other than the mere *ipse dixit* of POM's counsel throughout this case suggesting that Parx made inconsistent statements in bad faith or adopted allegedly inconsistent statements of Eckert or HMS in bad faith. Merely saying that does not make it so. Certainly, the *ipse dixit* of counsel in a brief is insufficient to support a conclusion that Parx engaged in bad faith with the intent to mislead the Court into thinking the attorney-client privilege should apply while allegedly disavowing Parx's attorney-client relationship with Eckert (and HMS) in Commonwealth Court.

Accordingly, the Court should reject POM's argument that the district court made a finding that Parx made irreconcilably inconsistent statements in bad faith that this Court somehow must honor despite the actual record.

### 3.    The judicial estoppel "remedy" improperly punishes Parx as an innocent third party.

Finally, POM argues that the district court's disclosure order is narrowly tailored to address the harm to the court because Parx is not an innocent party and the order compelling Parx to disclose its privileged documents deters future misconduct. *See* POM Br. at 48.  Again, POM's argument is misguided.

As a threshold matter, a judicial estoppel "remedy" must be narrowly tailored to address the harm to the court engendered by the alleged bad-faith inconsistent behavior and not necessarily fashioned to deter future misconduct. *Montrose Med. Grp. Participating Sav. Plan v. Bulger*, 243 F.3d 773, 780 (3d Cir. 2001). In other words, the doctrine itself and the prospect of harsh sanctions already serves as the deterrent, but only when it is absolutely clear that the doctrine should apply in the first place.  And, most importantly, judicial estoppel serves no good purpose whatsoever – deterrent or otherwise – when applied in a way that punishes an innocent third party.  *Id.* at 780.

The record here is clear, and no amount of spinning by POM changes the facts.  In this case, Parx received a subpoena in June 2020 calling for communications between Parx and Eckert. *See* JA237. Parx

16

acknowledged Eckert's pre-existing and longstanding representation. *See* JA870-JA873. Parx lodged objections to the subpoena based on privilege. *See* JA251.  Parx produced a privilege log.  *See* JA254. Parx briefed the privilege, work-product, and other legal issues involved in this discovery dispute. *See* JA131-JA154.  Parx argued before the district court and voluntarily submitted documents for in camera review as requested. *See* JA409-JA475.  The magistrate judge then quashed the subpoena directed to Parx. *See* JA717. There is no misconduct to deter.

Nevertheless, the magistrate judge and the district court then applied judicial estoppel to order the disclosure of privileged communications in the possession of Parx's law firms. But for this novel application of judicial estoppel to justify the disclosure of Parx's privileged documents, Parx would no longer be involved in this case. Far from deterring alleged misconduct, the judicial estoppel remedy championed by POM merely punishes an innocent third party by ordering the disclosure of its documents based on threadbare notions of inconsistent statements and zero evidence of bad faith. That decision *cannot* stand. *See Montrose, supra,* at 780.

17

By contrast, the lesser sanctions that Parx and others proposed address the alleged harm *to the court*. Indeed, having material facts deemed admitted against a party for summary judgment or trial is enough of a sanction to assure lawyers are cautious in their presentation of information to the courts. In turn, this alternative approach that the district court eschewed would prevent Parx from suffering the burden of having its privileged documents disclosed to an adversary in litigation in which Parx is not a party and would avoid the untenable windfall to POM despite knowingly serving document requests and subpoenas that on their face improperly call for privileged materials that the rules immunize from discovery. *See* Fed. R. Civ. Pro. 26(b)(1); Fed. R. Civ. Pro. 45(d)(3)(A)(iii).

Accordingly, the Court should reject POM's argument that the court narrowly tailored the judicial estoppel remedy.

## III.   CONCLUSION

WHEREFORE, the Court should reject POM's arguments, reverse and vacate the district court's order, and remand with instructions to grant the motions filed by Parx, Eckert, and HMS to quash the subpoena and/or for a protective order to prevent the disclosure of Parx's privileged documents.

April 24, 2023                              Respectfully submitted,

**GA BIBIKOS LLC**

/s George A. Bibikos
George A. Bibikos (PA 91249)
5901 Jonestown Rd. #6330
Harrisburg, PA 17112
(717) 580-5305
gbibikos@gabibikos.com

*Counsel for Greenwood Gaming & Entertainment, Inc., d/b/a Parx Casino*

# CERTIFICATIONS

In accordance with Fed. R. App. Pro. 32(a)(7)(B), I certify that the attached contains 4,215 words as calculated by the word-count feature of Microsoft Word. The text of the electronic brief and hard copies are identical. The electronic brief has been checked for viruses using Apple MacOS XProtect. The undersigned certifies that he is a member in good standing of the bar of this Court.

/s George A. Bibikos
George A. Bibikos

## CERTIFICATE OF SERVICE

I hereby certify that on April 24, 2023, I caused a copy of the foregoing to be served via ECF on the following counsel of record:

Robert S. Tintner, Esq.
Peter C. Buckley, Esq.
Abraham C. Reich, Esq.
Fox Rothschild LLP
2000 Market St., 10th Floor
Philadelphia, PA 19103
rtintner@foxrothschild.com
pbuckley@foxrothschild.com
areich@foxrothschild.com
*Counsel for Eckert, Seamans, Cherin & Mellot, LLC*

George W. Westervelt, Jr., Esq.
706 Monroe St
P.O. Box 549
Stroudsburg, PA 18360-0549
geowwest@ptd.net
*Counsel for Pace-O-Matic, Inc.*

Omobolanle A. Adeniran, Esq.
Jeffrey Jensen, Esq.
Michael Nolan, Esq.
Michael M. Sauter, Esq.
Husch Blackwell LLP
190 Carondelet Plaza, Suite 600
St. Louis, MO 63105
bola.adeniran@huschblackwell.com
jeff.jensen@huschblackwell.com
michael.martinich-sauter@huschblackwell.com
michael.nolan@huschblackwell.com
*Counsel for Pace-O-Matic, Inc.*

Dennis Whitaker, Esq.
Melissa A. Chapaska, Esq.
Hawke McKeon & Sniscak
100 North Tenth Street
Harrisburg, PA 17101
dawhitaker@hmslegal.com
machapaska@hmslegal.com
*Counsel for Hawke McKeon & Sniscak*

/s George A. Bibikos
George A. Bibikos